Case: 1:21−mj−00307
Assigned To : Faruqui, Zia M.
Assign. Date : 3/15/2021
Description: Complaint w/ Arrest Warrant

**STATEMENT OF FACTS**

Your affiant, Jeffrey F. Johannes, is a Special Agent assigned to the Federal Bureau of Investigation. I have been so employed since January 2004.  As a Special Agent with the FBI, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of violations of Federal criminal laws. Currently, I am a tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police ("USCP"), as others in the crowd encouraged and assisted those acts. Individuals in the crowd also encouraged and assaulted assisting police officers from the Washington D.C. Metropolitan Police Department ("MPD") who responded upon a call for assistance from the USCP.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Following the events described above, MPD conducted investigations and interviews of officers who were assaulted assisting the USCP inside and outside of the Capitol building. One such investigation involved the physical assault of an MPD Captain ("MPD Officer 4") who was stationed in the vicinity marked with a red oval in the overhead photograph of the U.S. Capitol below (Figure 1), specifically under a scaffolding. As discussed further below, the assault on MPD Officer 4 was committed by an individual later identified as JEFFREY MCKELLOP. The physical assault on MPD Officer 4 involved a blunt object, later identified as a flagpole, and resulted in a laceration near the left eye of MPD Officer 4. During the investigation, it was determined that three other MPD officers ("MPD Officer 1," "MPD Officer 2," and "MPD Officer 3"), stationed in the same vicinity annotated in Figure 1, were physically assaulted by the same subject involved in the assault of MPD Officer 4.

Figure 1.



The assaults on MPD Officers 1 through 4 were captured in recorded video footage of the events occurring outside the U.S. Capitol on January 6, 2021. As discussed further below, the

perpetrator of the assaults can be observed in footage recorded in the vicinity annotated in Figure 1 both during the assaults and before the assaults, beginning at approximately 1:00 pm EST. MPD published a Seeking Information/Be On the Lookout ("BOLO") showing photographs of this individual (Figure 2).

Figure 2.





The Metropolitan Police Department is seeking to identify the above individual in reference to a Felony Assault on a Police Officer w/ Armed that occurred on 1/6/2021, at approximately 1430 hours, on United States Capitol Grounds, regarding CCN 21002690. Note the two sided flag.

Any member with information is asked to stop and identify and contact Detective Brian McCarthy, 202-823-3616 or brian.mccarthy@dc.gov, or Detective Marcus Talley, 202-774-6363 or marcus.talley@dc.gov.

JSTACC: 202-727-9099                                      EMERGENCY: 911

In early February 2021, four additional photographs of the individual in Figure 2 were published on FBI's website with numbered identifiers, along with multiple other posters and photographs of individuals that were participants in the riot at the U.S. Capitol Building on January 6, 2021. Those additional photographs, labeled as "#215 – AFO," are still images captured in the same area of the Capitol grounds as the assaults and depict the only person sharing all the visual characteristics seen in the individual who assaulted MPD Officers 1, 2, 3, and 4 (Figure 3).

Figure 3.

(FBI Photograph# 215 – AFO A)                    (FBI Photograph# 215 – AFO B)





(FBI Photograph #215 – AFO C)          (FBI Photograph# 215 – AFO D)



Your affiant, conferring with other law enforcement personnel, observed the unique red and white patch located on the chest area of this individual's ballistic armor.  Your affiant has identified this patch to be the national flag of the country of Georgia.  Your affiant has circled the Georgian flag in red in Figure 4 below. Below the flag, also circled in red, is a green bag that is attached on the left leg and secured around the waist with a strap.  Your affiant knows from personal experience this is a U.S. military-type carrier bag used to hold a gas and/or a chemical protective mask to protect the wearer from harmful chemical irritants.

Figure 4.



Within approximately 48 hours after the issuance of Figure 3, the FBI received two online tips identifying the subject in Figure 3 as JEFFREY MCKELLOP.  The first individual, hereafter Witness 1, remained anonymous but indicated Witness 1 knew MCKELLOP from in-person contact for approximately 6 years and described him as a retired U.S. Army Special Forces soldier and a military contractor who, at times, works overseas, and resides in Fishersville, Virginia, which is located near Staunton, Virginia. The second individual, hereafter Witness 2 stated that MCKELLOP was a retired U.S. Army Special Forces soldier with whom Witness 2 served from 2001 to 2016.  Witness 2 further stated in the tip that MCKELLOP was a military contractor and that Witness 2 last saw MCKELLOP overseas in 2018. Witness 2 was interviewed and further stated they were "99 percent sure" the individual depicted in Figure 3 was MCKELLOP and they could "recognize McKellop in a crowd," "knew how McKellop carried himself," and was familiar with "McKellop's face and facial expressions."  Witness 2 added they recognized MCKELLOP'S hair, with "grey whispers around the ears." Witness 2 added the "kit," specifically the helmet and ballistic vest worn by MCKELLOP in the BOLO photographs (Figure 3), was the same gear Witness 1 saw MCKELLOP wearing in an overseas combat zone in 2018.

Your affiant has confirmed the identification of the individual in the four photographs in Figure 3 as MCKELLOP.  Specifically, your affiant has reviewed a copy of the photograph from MCKELLOP's Virginia State Driver's License and the physical description contained in the driver's license information, and they appear consistent with the photographs and description of the individual in FBI BOLO# 215 (Figure 3). Further, law enforcement responded to the reported

residence of MCKELLOP in Fishersville, VA, and observed at the reported residence an individual matching both the driver's license photograph for MCKELLOP and the photographs in Figure 3.

During the course of the investigation, your affiant identified additional footage from social media platforms depicting MCKELLOP in the vicinity of the Capitol on January 6, 2021. The first time MCKELLOP comes into view is in the background of the recorded video (Figure 6). Like in Figures 2 and 3, in Figure 6 MCKELLOP is carrying flagpole that has at least two different types of flags attached: a "Blue Line National Flag," and a thirteen-star "Betsy Ross" flag with the words "Trump.  Keep America Great" printed on it.  The same social media video recording captures close ups of MCKELLOP'S face (Figures 7 and 8).

Figure 6.          Figure 7.                                      Figure 8.





In the same social media video, visible on MCKELLOP'S backpack is a unique patch, which your affiant has identified as the symbol of the U.S. Army Special Forces (Figure 10).

Figure 10.



During this investigation, your affiant has also reviewed video from the U.S. Capitol on January 6, 2021, including outside security camera footage of the Capitol Building facing the National Mall. On two separate security camera videos, MCKELLOP can be seen in the crowd (Figures 14 and 15).

Figure 14.



Close up of Figure 14.



Figure 15.



Close up of Figure 15.



The investigation also revealed video showing that at approximately 1:14pm, MCKELLOP moved closer to the Capitol Building, at which time he was captured on an MPD BWC video (Figure 16).  I also observed that MCKELLOP put on a helmet and a gas mask, which match the helmet and gas mask seen in Figure 2 through Figure 4. These are also the items which Witness 2 described as MCKELLOP'S military kit.  Despite having obscured his face with the gas mask, the individual observed in the video is identifiable as MCKELLOP because he wears the same clothing, ballistic vest, gas-mask bag, and patch of the country of Georgia seen in Figures 2 through 15.  Your affiant, after reviewing numerous videos and photographs related to this and other similar investigations, and discussions with multiple members of law enforcement, has not observed or learned of any other individuals wearing this same clothing or gear at the Capitol on January 6, 2021.

Figure 16.



At approximately 2:26pm, MCKELLOP is captured on another MPD officer's BWC video outside of the Capitol Building.  In it, MCKELLOP can be seen approaching the line of MPD officers and using his hands to push officers back, to include MPD Officer 1, who was

wearing an MPD sergeant's uniform and deploying a canister of what appears to be riot-control spray against the advancing crowd.  MCKELLOP is still wearing the gas mask.  BWC video from MPD Officer l and other MPD officers captures MCKELLOP'S movements and physical assaults on MPD Officer 1 and are included as Figure 17 through Figure 20 below.

Figure 17.



Figure 18.



Figure 19.



Figure 20 (Note:  MCKELLOP is recorded pushing MPD Officer 1)



Figure 21 (Note:  MCKELLOP is attempting to grab the riot control spray canister of this MPD officer in a lieutenant's uniform)



After pushing MPD Officer 1, MCKELLOP briefly moved back to a group of rioters, at which point he picked up a bottle and threw it at the line of MPD and USCP officers, as shown in Figure 22 through Figure 24.

Figure 22.



Figure 23.



Figure 24.



At approximately 2:27pm through 2:28pm, MCKELLOP is again recorded on MPD BWC videos at which time he has breached the line of MPD and UCSP officers and is near the bottom of a scaffolding.  One of the MPD BWC videos belongs to MPD Officer 2 and includes footage of MCKELLOP pushing MPD Officer 2, who was also wearing an MPD sergeant's uniform and attempting to deploy riot-control spray. This incident was captured on Officer 2's BWC, as well as the BWC of other officers. I have captured several screen shots of the incident between MCKELLOP and MPD Officer 2 and have labeled them Figure 25 through Figure 30 below. I indicate the sources of the BWC footage in notes accompanying the figures.

Figure 25 (Note: BWC footage from another MPD Officer recording the altercation with MPD Officer 2)



Figure 26.



Figure 27 (Note:  this is the BWC footage from MPD Officer 2 recording the altercation from Figure 25 and 26 above).



Figure 28



Figure 29 (Note: footage of MPD Officer 3 recording MCKELLOP assaulting MPD Officer 2)



Figure 30.



Shortly after pushing MPD Officer 2, MCKELLOP is then recorded by the BWC belonging to MPD Officer 3.  MCKELLOP then proceeds to push MPD Officer 3 out of his way and off to the side.  This altercation between MCKELLOP and MPD Officer 3 is also recorded on another MPD Officer's BWC footage. I have captured several screen shots of the incident between MCKELLOP and MPD Officer 3 and have labeled them Figure 31 through Figure 34 below. I indicate the sources of the BWC footage in notes accompanying the figures.

Figure 31 (Note:  view of MCKELLOP from MPD Officer 3's BWC).



Figure 32 (Note:  BWC footage from another MPD Officer; arrow pointing at MPD Officer 3).



Figure 33 (Note: arrow pointing at MPD Officer 3's arm being grabbed by MCKELLOP).



Figure 34 (Note: arrow pointing at MPD Officer 3 as being pushed away by MCKELLOP).





A few seconds later, still at approximately 2:28pm, MCKELLOP is captured on MPD Officer 4's BWC.  MPD Officer 4 was wearing an MPD captain's uniform carrying a riot-control spray gun. Officer 4 took a position under the scaffolding near where MCKELLOP had pushed MPD Officers 2 and 3.  MPD Officer 4's BWC records a confrontation between MCKELLOP and MPD Officer 4.  During this confrontation, as MPD Officer 4 positions himself with the riot-control spray aimed toward MCKELLOP and the crowd, MCKELLOP picks up a flagpole from the ground and shoves it into the face of MPD Officer 4.  MCKELLOP then throws the flagpole, similar in fashion to throwing a spear, at MPD Officer 4. MCKELLOP'S actions caused a laceration to MPD Officer 4's face. This confrontation was also recorded by another MPD officer's BWC; this Officer was standing to the right of MPD Officer 4 at the time of the assault. Screenshots of MCKELLOP'S assault on MPD Officer 4 are Figures 34 through Figure 41 below.

Figure 34 (View from MPD Officer 4's BWC).



Figure 35.



Figure 36 (Note: this is a screen shot from MPD Officer 4's BWC; arrow is pointing when MCKELLOP is recorded retrieving a flag and flag pole from the ground).



Figure 37 (View from MPD Officer 4's BWC; arrow pointing at the flag being thrust into the face of MPD Officer 1).



Figure 38 (MPD Officer 4 is depicted wearing a white shirt and black helmet).



Figure 39.



Figure 40.



Figure 41.



Based on the foregoing, your affiant submits that there is probable cause to believe that JEFFREY MCKELLOP violated 18 U.S.C. § 1752(a)(1), (2), and (4), and (b)(1)(A), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds, or to attempt or conspire to do any of the foregoing. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance. Subdivision (b)(1)(A) includes an enhancement for violating this provision while using or carrying a deadly or dangerous weapon.

Your affiant submits there is also probable cause to believe that JEFFREY MCKELLOP violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that JEFFREY MCKELLOP violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Finally, your affiant submits there is probable cause to believe that JEFFREY MCKELLOP violated 18 U.S.C. § 111(a)(1), which makes it crime to forcibly assault, resist, opposes impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties. For purposes of Section 1114 of Title 18, a designated person means any officer or employee of the United States while engaged in the performance of official duties, or any person assisting such an officer or employee in the performance of such duties. Your affiant further submits that there is probable cause to believe that MCKELLOP violated 18 U.S.C. § 111(b), which makes a violation of 18 U.S.C. § 111(a) a crime punishable by up to 20 years imprisonment where the person, in the commission of any acts described in § 111(a), uses a deadly or dangerous weapon or inflicts bodily injury.

_____

Jeffrey F. Johannes
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 15th day of March 2021.

_____

ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE