**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **Case No. 21-mj-307** |
| | : | |
| | : | |
| **JEFFREY MCKELLOP,** | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Jeffrey McKellop, be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Crime of Violence) and 3142(f)(1)(E) (Dangerous Weapon). The defendant assaulted multiple sworn officers protecting the U.S. Capitol on January 6, 2021, with the apparent intent to facilitate the breach that imperiled not only the lives of public servants but the heart of this nation's democracy. The United States opposes release because, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e). The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

1

## FACTUAL BACKGROUND

### The Attack on the United States Capitol on January 6, 2021

The United States Capitol is secured 24 hours a day by the U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Then-Vice President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol Building, and U.S. Capitol Police ("USCP") were present and attempting to keep the crowd away from the U.S. Capitol Building and the proceedings underway inside. Officers from the

Metropolitan Police Department of the District of Columbia ("MPD") also responded to the U.S. Capitol to assist USCP in protecting the Capitol.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of both USCP and MPD, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, many individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. Other individuals stole items from officers protecting the Capitol – including pepper spray and riot shields – and turned those items into makeshift weapons to be used against the officers. During the course of the violent protest, over 100 law enforcement officers reported being assaulted or injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside the Capitol, as well as on the steps just outside the Capitol Building and throughout the grounds of the Capitol. The defendant, as detailed

below, is charged with assaulting federal officers with a dangerous weapon, civil disorder, obstruction of Congress, and other criminal violations for unlawfully entering the Capitol Grounds.

### Defendant's Violent Conduct and Officer Assaults on January 6, 2021

The defendant entered the Capitol grounds as early as 1:14 p.m. on January 6, 2021, wearing a tactical vest with a distinctive red-and-white flag decal and holding a flag affixed to a flagpole. Surveillance video captured his face; still images of this video footage, including the images in Figure 1, were later converted to a be-on-the-lookout flyer ("BOLO") that was used to identify the defendant as the perpetrator.

Figure 1

 

At approximately 2:26 p.m., as the crowd surged toward the U.S. Capitol building, the defendant was present in the grounds leading up to the Lower West Terrace.[1] By that time, the

---

[1] The Lower West Terrace is a widely recognizable area of the Capitol Building located directly in the front-center of the building, facing the Washington Monument. The Lower West Terrace is a very visible area of the Capitol Building that, in public perception, is often used for symbolic or patriotic events, such as presidential inaugurations or the "Capitol Fourth" concert that is annually held on the Fourth of July. On January 6, 2021, the Lower West

defendant was wearing a helmet, goggles, and a gas mask.[2] There, the defendant approached a line of MPD officers, including Officer 1 and Officer 3, and an officer in a lieutenant's uniform. Officer 1 was wearing a sergeant's uniform. Officer 3 and the lieutenant each appeared to be holding riot-control spray canisters.[3] The defendant then pushed Officer 1, Officer 3, and the lieutenant by swinging his arms downward, as seen in Figure 2. *See also* Exhibits 1 (video clip from Officer 1's body worn camera) and 2 (video clip from Officer 3's body worn camera).

---

Terrace was undergoing preparation for the inauguration of now-President Biden. Scaffolding had been erected for the media, and stairs, risers, and other flooring was in place to create the stage area upon which the inauguration would take place. It was near this scaffolding where the defendant assaulted Officers 1, 2, 3, and 4. This Court has described the Lower West Terrace as "one of the most dangerous, violent areas of the riot." *U.S. v. Klein*, 21-mj-269 (GMH), ECF No. 11 at *3 (D.D.C. March 16, 2021). Indeed, MPD and USCP officers were only able to hold their position on the grounds where McKellop attacked officers for less than one hour before being forced to retreat to the Lower West Terrace.

[2] Although the defendant wore items that obscured his face during his assaults on the multiple law-enforcement officers, he appears on video prior to the assaults wearing the same distinctive outfit but with his face visible. Multiple witnesses were able to identify the defendant by looking at still images of his unobscured face.

[3] The statement of facts filed on March 15, 2021, indicated that Officer 1 was holding a riot-control spray canister, but in fact while Officer 3 and the lieutenant—who were on either side of Officer 1—were holding canisters, Officer 1 did not appear to be holding a canister at the time of the assault.

Figure 2 (Perspective of Officer 3; Officer 1 to Officer 3's immediate right; Lieutenant to the right of Officer 3)



Shortly thereafter, Officer 1 stepped backwards and eventually retreated from the line. The defendant also appeared to try to grab a can of riot-control spray from the lieutenant's hand seconds later.

Figure 3 (perspective of Officer 3; Officer 1 no longer visible in this image)



The defendant then moved back to a group of rioters, at which point he picked up a bottle and threw it at the line of MPD and USCP officers.

Figure 4 (Perspective of Officer 3)



Figure 5



At approximately 2:27pm through 2:28pm, the defendant pressed forward toward the Capitol building—and the sworn officers protecting it—again, breaching the line of MPD and USCP officers to reach the bottom of the Inauguration scaffolding. There, the defendant pushed Officer 2, who, like Officer 1, was also wearing an MPD sergeant's uniform and attempting to deploy riot-control spray. *See* Exhibit 3 (video clip from an officer's body worn camera).

Figure 6 (Officer 2)



In the following still image, the defendant can be seen striking Officer 2 with what appears to be a closed fist.

Figure 7



Following this assault, the defendant assaulted Officer 3 by shoving her to the side as he walked behind the line of Officers. Officer 3 was wearing a marked uniform with neon-yellow sleeves.

Figure 8



Figure 9



Figure 10



The defendant once again pressed forward in his efforts to facilitate the breach of the U.S. Capitol. Just a few seconds later, still at approximately 2:28pm, the defendant assaulted Officer 4 while Officer 4 was positioned underneath the Inauguration scaffolding. Officer 4 was wearing an MPD Captain's uniform and was carrying a riot-control spray gun. As Officer 4 positioned himself with the riot-control spray aimed toward the defendant and the crowd, the defendant picked up a flagpole from the ground and struck Officer 4 in the face, causing him to reel backwards and causing a laceration to Officer 4's face. *See* Exhibit 4 (video clip from an officer's body worn camera).

Figure 11



Figure 12



The defendant did not stop there. He then threw the flagpole, as though it were a spear, at

Officer 4.

Figure 13



**Residential Search Warrants**

On or about March 17 and 18, 2021, law-enforcement officers conducted two searches of residences associated with the defendant pursuant to signed search warrants. One warrant was executed on a home in Fishersville, Virginia at which law-enforcement officers observed the defendant as recently as the evening before his March 17, 2021, arrest. The second was executed on a home in Gainesville, Virginia, at which law-enforcement officers observed the defendant as recently as the morning of his arrest,[4] as well as a vehicle registered to the defendant.

At the Fishersville home, officers found and recovered clothing and gear consistent in appearance with that the defendant wore at the Capitol, including a tactical vest with a red-and-

---

[4] The Gainesville home is believed to be principally occupied by an associate of the defendant, with the defendant staying there from time to time.

14

white flag patch, helmet, goggles, and a gas mask. The officers recovered a flashbang—a device that emits light and sound designed to stun or disorient targets within its radius of effect—in the defendant's kitchen.

Officers recovered several firearms from the Gainesville address and vehicle search, as well as a backpack with a Special Forces pin that was consistent in appearance with the backpack the defendant wore at the Capitol. Additionally, officers recovered from the vehicle a "go bag" containing, among other items, meal bars, water-purification equipment, clothing, and a firearm.

For his conduct on January 6, 2021, the defendant is now charged by Complaint with: (1) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (3) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority with a Deadly or Dangerous Weapon, with a Deadly or Dangerous Weapon in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A); (5) Engaging in Physical Violence in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A); and, (6) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F). He was arrested on March 17, 2021. At his March 18, 2021, initial appearance, this Court set a detention hearing for March 22, 2021. The United States is requesting detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (E).

## ARGUMENT

The government respectfully requests that the defendant be detained pending trial because there is no condition or combination of conditions that will ensure the safety of the community if the defendant were to be released. There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). The government submits that each of these factors weighs in favor of the defendant's detention.

## Nature and Circumstances of the Offenses Charged

The defendant's deliberate and violent assaults on multiple police officers who were trying to protect the Capitol weighs heavily in favor of detention. He perpetrated these assaults on uniformed officers. He committed multiple assaults on different officers over the course of several minutes. His conduct, especially in the context of the attack on the Capitol, evinces an intent to target law enforcement officers for harm and to disrupt the legitimate functioning of government. Specifically, the defendant's violence appears aimed at disabling or disarming sworn officers protecting the U.S. Capitol so the peaceful transfer of power could be disrupted. Notably, the defendant came prepared for battle: he was wearing military-style clothing, including a tactical vest, a helmet, goggles, and a gas mask to protect him from a tool often used by law enforcement to disburse riots.

These assaults on sworn officers ranged in severity from shoving, to punching, to culminating in the defendant violently striking a uniformed MPD Captain in the face with a

flagpole, and then throwing that flagpole like a spear at officers. The Captain's helmet was not enough to protect him from the defendant's blow; rather, the flagpole connected with the Captain's face, causing a laceration and bleeding.

More disturbing still, and as noted above, several of the defendant's victims appear to have been high-ranking officers who were deploying riot-control spray to control the violent crowd, including the defendant. Accordingly, his assaults on these officers also evince an intent to disrupt law-enforcement officers' ability to control the crowd, and thus to make it easier for the crowd to overrun the police line and enter the U.S. Capitol building.

The defendant's premeditated, targeted, and unflinching infliction of violence against officers protecting a lawful proceeding of Congress, for which he is charged with multiple serious and violent felonies weighs heavily in favor of detention. Not only was his individual conduct violent and dangerous, but his actions heightened the overall violence and dangerousness of the day. *See United States v. Chrestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. Feb. 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification."). Here, the defendant not only breached the police line but assaulted multiple officers in his apparent attempt to facilitate the breach at the U.S. Capitol.

## Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against the defendant is both strong and compelling. Significantly, the defendant was captured in multiple videos recorded by officers wearing body worn cameras that clearly show him violently engaging with the officers defending the Capitol that day. The

defendant's distinctive clothing and red-and-white flag patch is visible in multiple videos, making it clear that he was the assailant despite his use of a gas mask while assaulting officers.

In addition, two separate witnesses identified the defendant as the individual in a BOLO comprised of still shots from the video footage. Both witnesses had extensive in-person contact with the defendant prior to the January 6, 2021, attack on the Capitol.

Moreover, officers recovered from the search warrants clothing and gear that match what the defendant wore to the attack on the Capitol—including the distinctive red-and-white flag patch—further establishing his identity as the perpetrator of these assaults.

Thus, the evidence against the defendant is compelling, and the strength of the evidence weighs heavily in favor of detention.

<u>**Defendant's History and Characteristics**</u>

The defendant's history and characteristics further weigh in favor of detention, demonstrating that he would be a danger to the community if released. While the defendant's criminal history is limited, his actions on January 6, 2021, appear to be a considered decision to place himself above the law; not only did he demonstrate an unwillingness to follow lawful orders, but he also showed a blatant disregard for his commitments to those in authority.

Indeed, the defendant's conduct on January 6, 2021, demonstrated an utter disregard for the law and the legitimate functions of government, providing clear and convincing evidence that he is unwilling to follow lawful orders or defer to the legitimate authority of the government. When the defendant assaulted federal officers while participating in the attack on the Capitol, he did so in the presence of hundreds of USCP and MPD officers who were working to protect both the constitutionally-mandated Certification proceeding and the members of Congress duty-bound to

hold that proceeding. The defendant blatantly assaulted officers in full view of other law enforcement, without even the pretense of following the law. The presence of the USCP and MPD officers that day were no deterrent to the defendant's multiple violent outbursts against officers.

The dangerousness of the defendant's participation in the mob that day is only heightened by his military training and service. *See Klein*, ECF No. 11 at *4 (defendant's "government position and past military experience" gave him "reason to know the acts he committed were wrong," and his position of trust made his conduct "particularly troubling"). In that capacity, the defendant received extensive military and combat training—including close-quarters combat training—dating back to the 1990's. By law, persons enlisting in the U.S. armed forces take an oath of enlistment, swearing to "support and defend the Constitution of the United States against all enemies, foreign and domestic . . . ." 10 U.S.C. § 502. Yet, the defendant demonstrated his contempt for that oath, the legitimate functions of the government, and for the Constitution itself when he assaulted officers during the attack on the Capitol. Rather, the defendant's actions have established that he places himself and his will above the rule of law, to the extent that he will use violence in an attempt to halt the legitimate functions of the United States government. Such blatant disregard of the law and the authority of a lawful government, despite having held positions of trust and power in the United States government for many years, weighs in favor of detention. If the defendant is unwilling to obey orders while in full view of law enforcement, or to conform his behavior to the law when it does not suit him to do so, despite his oath to the Constitution, the Court cannot be assured he would adhere to its orders if released.

Lastly, it is concerning that the defendant kept a "go bag" that included a firearm in his car. The defendant clearly came to the Capitol prepared for violent action on January 6, and the

evidence recovered in his vehicle indicates that he remained prepared for whatever he may want to do next, including potential flight.

### **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The defendant's dangerousness is illustrated by his highly public assault of officers on the U.S. Capitol grounds and amplified by his military training and experience. *See Chrestman*, ECF No. 23, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"); *Klein*, ECF No. 11, at *4 ("The nature of this incident and [the defendant's] associated actions show his dangerousness to the broader community and thus detention is warranted.").

Moreover, it is concerning to the government that officers recovered a flashbang device from the Fishersville residence and multiple firearms from the Gainesville search. The possession of items such as the ones recovered here, especially when paired with the defendant's extensive military and combat experience, indicates an increased capacity to harm members of the community.

In sum, given his conduct on January 6, 2021, as well as the ongoing threat presented by his use of his training and experience against the very institutions he swore to uphold, the United States has no doubt as to his danger to the community, in particular to sworn officers and others protecting the government's most basic functions.

Given the above assessment of all four relevant factors, clear and convincing evidence establishes there are no conditions or combinations of conditions that can effectively ensure the

safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court grant the government's oral motion to detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Daniel Honold*
DANIEL HONOLD
Assistant United States Attorney
N.Y. Bar Number 5406715
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-6898
Daniel.Honold@usdoj.gov

By: */s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov