# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-268** |
| | : | |
| | : | |
| **JEFFREY MCKELLOP** | : | |

## ORDER

**AND NOW**, this           day of                    , 2021, upon consideration of the

Defendant's Motion to Revoke Detention Order and for Pretrial Release, it is hereby

**ORDERED** that the motion is **GRANTED**.

It is **FURTHER ORDERED** that Mr. McKellop shall reside at the address to be

provided to and approved by United States Pretrial Services.

It is **FURTHER ORDERED** that he shall be placed on home detention with location

monitoring with standard conditions regarding permissions to leave for religious services,

medical appointments and care, employment, and attorney appointments.  Any time outside the

approved residence must be preapproved by Pretrial Services.


**BY THE COURT:**


_____
**HONORABLE CARL J. NICHOLS**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **CRIM. CASE NO.: 21-268** |
| | : | |
| **JEFFERY MCKELLOP** | : | |
| | : | |
| | : | |

## MOTION TO REVOKE DETENTION ORDER AND FOR PRETRIAL RELEASE

Defendant Jeffery McKellop, by and through undersigned counsel, moves the Court, pursuant to 18 U.S.C. §§ 3145(b) and (c) and 3142(e), to revoke its April 5, 2021 order of detention and issue an order authorizing pretrial release with location monitoring and any other conditions deemed appropriate by the Court. The circumstances arising since Mr. McKellop's arrest have changed such that his release is now appropriate, and he does not pose a danger to his community nor is he a flight risk such that continued detention is warranted. GPS monitoring, along with other strict conditions of release, will reasonably assure Mr. McKellop's future appearances before this Court and the safety of other persons and the community.

## I.   PROCEDURAL HISTORY

Mr. McKellop was arrested on March 17, 2021 and subsequently charged with assault and related offenses stemming from his alleged conduct on January 6, 2021. Mr. McKellop is charged with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) (Counts One through Four), assaulting, resisting, or impeding certain officers while using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts Five and Six),

civil disorder (Count Seven), in violation of 18 U.S.C. § 231(a)(3), entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A) (Count Eight), disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A) (Count Nine), engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A) (Count Ten), and disorderly conduct and acts of violence on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Twelve). The government orally moved for pretrial detention on March 18, 2021, which was granted by Magistrate Judge Zia M. Faruqui who ruled Mr. McKellop is not a flight risk but granted pretrial detention on the basis of dangerousness. This Court deniedMr. McKellop's Motion to Review the Magistrate Judge's Order for Defendant's Pretrial Detention on April 5, 2021.

## II.    DISCUSSION

Mr. McKellop respectfully requests that this Court grant him pretrial release, as circumstances have changed since his March 2021 arrest and a current, individualized assessment indicates his release would not present an articulable threat to others. While the events of January 6, 2021 as a whole remain deeply concerning, courts overseeing these cases have explicitly declined to detain all defendants pretrial. *See United States v. Sabol*, No. 21-35-1, 2021 U.S. Dist. LEXIS 71836, at *28 (D.D.C. Apr. 14, 2021) ("Nonetheless, and despite the serious and chilling nature of the events that took place that day, the D.C. Circuit has made clear that detention is not appropriate in all cases involving Capitol Riot defendants.") (citing *United States v. Munchel*, 991 F.3d 1273, 1284-85 (D.C. Cir. 2021)). Pretrial detention is limited to serious cases where no restricting conditions upon release would provide sufficient safeguards.

*United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"); *see also United States v. Cua*, No. 21-107, 2021 U.S. Dist. LEXIS 44293, at *8-9 (D.D.C. Mar. 10, 2021) ("'The default position of the law . . . is that a defendant should be released pending trial.'" (citation omitted)). Mr. McKellop is eligible for pretrial release under 18 U.S.C. § 3145(c), as the circumstances surrounding his alleged actions on January 6, 2021 were both exceptional and his alleged conduct aberrant, and circumstances have meaningfully changed in the last six months such that his release pending trial is now appropriate.

Further, while the Bail Reform Act establishes eligibility for pretrial detention for a crime of violence, it also instructs the Court only to detain defendants such as Mr. McKellop if there is evidence that he is likely to flee or poses a danger to others. 18 U.S.C. §§ 3142(e) and (f). "'In common parlance, the relevant inquiry is whether the defendant is a "flight risk" or a "danger to the community."'" *Munchel*, 991 F.3d at 1279 (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In this case, an individualized assessment of Mr. McKellop's behavior indicates he is not a flight risk or a danger to the community, nor is he likely to attempt obstruction of justice. Mr. McKellop therefore respectfully submits that he can rebut the presumption of detention by showing the requisite "conditions of release that will reasonably assure [his] appearance [] as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(g); *see also United States v. Brown*, No. 20-cr-27-4, 2021 U.S. Dist. LEXIS 84332, at *14 (D.D.C. May 3, 2021) ("The defendant's burden of production is not heavy, but he must still introduce some relevant evidence").

    **A.  Mr. McKellop Should Be Granted Pretrial Release as Circumstances Since the Court Ordered Him Detained Have Since Changed, Exceptional Reasons Warranting His Release Exist, and He Does Not Pose a Danger to Others Warranting Further Detention.**

On its face, § 3145(c) refers to "appeal" of a release or detention order, but all the courts of appeals to have considered the provision agree that district judges also have the authority to order release for "exceptional reasons."  *E.g.*, *United States v. Garcia*, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003); *accord United States v. Meister*, 744 F.3d 1236, 1239 (11th Cir. 2013); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v. DiSomma*, 951 F.2d 494,496 (2d Cir. 1991); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991).[1]  The test is "a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"  *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004); *see Herrera-Soto*, 961 F.2d at 647 (exceptional reasons may appear when "a unique combination of circumstances" gives rise to "out of the ordinary" situation) (internal quotation marks omitted); *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) ("exceptional" in § 3145(c) means "clearly out of the ordinary, uncommon or rare").  Release may be warranted, for example, in the event that a defendant's loved one is terminally ill and near death or when a defendant's treatment for substance abuse would suddenly be interrupted.  *United States v. Kaquatosh*, 252 F. Supp. 2d 775, 778-79 (E.D. Wis. 2003); *see also United States v. Charger*, 918 F.Supp. 301, 303-04 (D.S.D. 1996) (finding exceptional reasons where young first-time offender was in need of guidance available to him at father's home and was participating in outpatient addiction treatment such that imprisonment "would be counterproductive…[and] would harm defendant and the interests of society.")  And certainly release may be warranted when continued custody poses "exceptional risks" to the defendant's wellbeing.  *Garcia*, 340 F.3d at 1020; *see also United States v. Winsor*, 890 F. Supp. 2d 1257, 1260 (D. Ore. 2012).

---

[1] The D.C. Circuit does not appear to have addressed the provision's construction.

4

This Court has held that a Section 3145(c) "exceptional reasons" analysis requires assessing the four "dangerousness and flight risk factors that Congress has prescribed in 18 U.S.C. § 3142(g)."[2] *Wiggins*, 2020 U.S. Dist. LEXIS 64941, at *15 (D.D.C. Apr. 10, 2020); *see also Harris*, 451 F. Supp. 3d at 71 (holding that to determine whether exceptional reasons "safety valve" can be used, "courts must weigh the relevant risk to the person detained, the community at large, and all other relevant circumstances," as well as risk of flight).

The Ninth Circuit provides additional guidance by establishing non-exclusive factors for the exceptional-reasons analysis, which include the defendant's criminal conduct being aberrational. *Harris*, 451 F. Supp. 3d at 70 (citing *United States v. Garcia*, 340 F.3d 1013, 1019-22 (9th Cir. 2003) for "factors to consider in determining whether 'exceptional reasons' exist under § 3145(c)"). The Ninth Circuit elaborated on its first factor.

> For example, one exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational. A defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance. Such a defendant may be guilty of a violent crime, and yet may not be the type of violent person for whom Congress intended the mandatory detention rule. Moreover, if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons.

*Garcia*, 340 F.3d at 1019.

The record in this case shows that Mr. McKellop's conduct was aberrational, further supporting a finding of exceptional reasons pursuant to Section 3145(c). The circumstances of

---

[2] "This is because section 3145(c) specifically references section 3143(a)(1), which, in turn, cross references the modes of releasing a defendant set forth in 18 U.S.C. §§ 3142(b) and (c). And it is well established that '[t]he factors that the court uses to determine 'whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community' under §§ 3142(b) and (c) are provided in § 3142(g).'" *United States v. Wiggins*, No. 19-cr-258, 2020 U.S. Dist. LEXIS 64941, at *15-16 (citation omitted) (quoting 18 U.S.C. § 3143(a)(1)).

January 6, 2021 were "unusually provocative," and unprecedented leading to the arrests of over 650 people to date.  Unlike many of those defendants, Mr. McKellop did not even attempt to enter the Capitol.  In a span of little more than two minutes, while emotions were running high and tension had been building for hours, Mr. McKellop allegedly assaulted, resisted, or impeded a number of Metropolitan Police Officers—the worst of which involved his throwing a flagpole at one officer thereby striking him in the face.  Prior to these alleged incidents, Mr. McKellop had no prior history of violence in his 55 years.  To the contrary, Mr. McKellop served his country in the United States Army for over 22 ½ years and earned a stellar reputation and service record prior to his retirement.  He served two tours in Afghanistan and two tours in Iraq following the September 11, 2001 terrorist attack on the United States.  For his heroism in active combat, he thrice earned Bronze Star Medals.  *See* awards attached hereto as Exhibit A.  In addition, he earned over 35 service awards during his military career, including the Meritorious Service Medal, five Army Commendation Medals, the National Defense Service Medal, and six Army Good Conduct Medals.  *See id.*  Mr. McKellop's distinguished military record proves he "led an exemplary life prior to his [alleged] offense." *Garcia*, 340 F.3d at 1019.  His friend of twenty years Scott Steiert, who invited Mr. McKellop to the rally, confirms his actions were aberrational. *See* Defendant's Memorandum in Support of Pretrial Release, Ex. B ("How Jeff acted during the protest is out of his character.")  In fact, were it not for Mr. Steiert's request to Mr. McKellop that he accompany Mr. Steiert that day, Ms. McKellop would not have even been present.  *Id.*  Moreover, the government has uncovered zero evidence that Mr. McKellop was a member of any of the identified extremist groups more systematically involved in the January 6, 2021 event and has not even identified social media posts or other information identifying radical sentiments by Mr. McKellop.

6

Since his March 2021 arrest, Mr. McKellop has for the first time in his life been incarcerated.  For more than six months, he has been unable to see his children, as they live in Colorado, and has been permitted to go outside only one day per month.  He has spent this time reflecting on his actions and feeling hopeless about what his future holds.  He has not even been able to properly prepare his case, as the facility where he is detained does not have an adequate number of computers on which inmates may review the massive electronic discovery productions provided by the government and, therefore, employs a "computer waitlist" on which Mr. McKellop has been indefinitely placed.  These conditions—particularly for a person like Mr. McKellop—are counterproductive and continue to take a significant toll on his mental and emotional wellbeing, and they constitute changed circumstances permitting this Court to revoke its prior detention order.  *See Wiggins*, 2020 U.S. Dist. LEXIS 64941, at *15-17.

**B. The Government Cannot Prove by Clear and Convincing Evidence that Mr. McKellop Presents an Articulable Threat to Public Safety Warranting Further Incarceration.**

Mr. McKellop should be released pretrial, because the record is devoid of evidence proving Mr. McKellop is a continued threat to any individual or the community. This inquiry demands an individualized assessment of Mr. McKellop's dangerousness. *United States v. Tanios*, No. 21-3034, 2021 U.S. App. LEXIS 23609, at *2 (D.C. Cir. Aug. 9, 2021) (ordering defendant released pretrial subject to conditions, because despite district court correctly applying presumption of detention, it "clearly erred in its individualized assessment of appellant's dangerousness" as record showed no past or subsequent criminal history, or ties to extremist organizations).

In determining whether Mr. McKellop must be detained on the basis of dangerousness, the Court considers the following factors: "(1) the nature and circumstances of the offense charged…;

(2) the weight of the evidence against the person; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). However, a defendant's case need not weigh against detention on all factors for release to be granted. *See e.g. Cua*, 2021 U.S. Dist. LEXIS 44293 (granting defendant's motion for release despite factors one and two favoring detention); *United States v. Taylor*, No. 1:21-cr-392-RCL-2, 2021 U.S. Dist. LEXIS 150500 (D.D.C. Aug. 11, 2021) (denying government's motion to revoke defendant's release despite only factors three and four favoring release); *United States v. Klein*, No. 21-236, 2021 U.S. Dist. LEXIS 69951 (D.D.C. Apr. 12, 2021) (ordering defendant's release despite factors one and two favoring detention, and third factor only "slightly" favoring release).

Here, upon weighing these four factors, Mr. McKellop does not pose the requisite "clearly identified" threat to public safety at this time. *Munchel*, 991 F.3d at 1283. Therefore, he cannot be detained pretrial on the basis of dangerousness. Additionally, as the prerequisite dangerousness and flight risk factors indicate Mr. McKellop should be released, this Court can also consider the Section 3145(c) "exceptional reasons" analysis.

###### *1.   Nature and circumstances of the offense charged.*

A close examination of the evidence supports Mr. McKellop's motion for pretrial release, as the nature and circumstances of the charged offenses are opportunistic, not planned. Courts in this district have established a series of factors to guide the assessment of the nature and circumstances of the offenses charged in relation to the events of January 6, 2021. *United States v. Chrestman*, No. 21-mj-218, 2021 U.S. Dist. LEXIS 36117, at *20-25 (D.D.C. Feb. 26, 2021). This analysis considers (1) the severity of the offense; (2) evidence of "prior planning"; (3) carrying or use of a dangerous weapon such as a firearm; (4) "[e]vidence of coordination" with

others; (5) the defendant taking a leadership role or encouraging others; (6) "a defendant's words and movements during the riot"; (7) whether the defendant entered the Capitol building; (8) whether the defendant injured others; and (9) whether the defendant "actively threatened or confronted federal officials or law enforcement." *Id.* The purpose of this framework is to identify intent and motive, which can suggest "danger . . . not just to the community in which [the defendant] resides, but to the American public as a whole." *Id.* at *22-23. Additionally, by considering "the extent of a defendant's disregard for the institutions of government and the rule of law" courts can assess "whether a defendant will comply with conditions of release meant to ensure the safety of the community," which is critical for the pretrial release analysis. *Id.* at *24.

Although the charges against Mr. McKellop are serious and include felony assault, upon closer examination using the *Chrestman* factors, the facts weigh against pretrial detention in this case. The record indicates that all of Mr. McKellop's alleged actions were opportunistic and occurred during a brief period when emotions were running high, not premeditated as the government contends. There is no evidence of prior planning, and although Mr. McKellop wore tactical gear, which he otherwise used in the performance of his job as a security contractor, he did not bring a firearm, bladed weapons, noxious gas agents, or clubs, and the gear was intended for protective purposes. Mr. McKellop is not part of any group or extremist organization and took no formal or de facto leadership roles, nor did he coordinate with or encourage others during the riot. Further, Mr. McKellop did not breach the Capitol building, nor is there any evidence he intended to do so.  The record indicates that any assaults Mr. McKellop allegedly perpetrated occurred within a 2-3 minute period, suggesting they were opportunistic and influenced by the surrounding circumstances rather than premeditated. Indeed, the "weapon" that

Mr. McKellop allegedly used to strike an officer was a flagpole, which he picked up off of the ground just moments before allegedly throwing it at the officer.

It is instructive to consider other Capitol riot cases where the nature of the defendant's offenses was serious but did not preclude pretrial release. In *United States v. Owens*, the defendant's motion for pretrial release was granted despite four felony offenses, a partial breach of the Capitol building, and evidence that the defendant struck an officer forcibly on the head and did not "exhibit any remorse or concern for his behavior," instead pointing "menacingly," and making "obscene gestures." No. 21-cr-286, 2021 U.S. Dist. LEXIS 101157, at *8 (D.D.C. May 28, 2021). Despite this record, upon assessing the *Chrestman* factors this Court held that the nature and circumstances of the offense factor weighed only "modestly" in favor of detention, underscoring that the defendant was not a member of an organized group, brought no "conventional dangerous weapon," and "made no threats of violence in person or in social media." *Id.* at *22-23, *27. "Taken together, this conduct raises 'grave concerns' about the defendant's 'disregard for the institutions of government and the rule of law.' *Nevertheless*, defendant's conduct is mitigated by other considerations, including the lack of record evidence that he engaged in any preparation, premeditation or coordination." *Id.* at *27 (emphasis added) (quoting *Chrestman*, 2021 U.S. Dist. LEXIS 36117 at *24); *see also Klein*, 2021 U.S. Dist. LEXIS 69951 at *20, *41-42 (ordering defendant's release after analyzing Section 3142(g) factors in part because government "proffered no evidence that [defendant's] prolonged confrontation with law enforcement or even his attempt to breach the Capitol building were premeditated"). In this case, like the defendant in *Owens* who was released pretrial, Mr. McKellop is similarly charged with allegedly striking an officer but is similarly not a member of an organized group, brought no conventional weapons to the Capitol, and made no threats of

10

violence. This demonstrates a lack of "preparation, premeditation or coordination," supporting Mr. McKellop's motion for pretrial release. *Owens*, 2021 U.S. Dist. LEXIS 101157, at *27. Indeed, the record supports Mr. McKellop's release arguably even more than Owens, who breached the Capitol building.

### 2.  *Weight of the evidence against Mr. McKellop.*

The assaults allegedly perpetrated by Mr. McKellop are captured on police-worn body cameras and span no longer than a total of three minutes.  To defense counsel's knowledge, Mr. McKellop has made no statements to police or other law enforcement indicating a malicious intent in going to the rally on January 6, 2021, and he did not post on social media about the event beforehand or afterward. Further, although Mr. McKellop is accused of striking an officer with a flagpole, the flag that appears in the images of this alleged assault is not the same as the flagpole Mr. McKellop appears to have brought to the rally.  And at no point is Mr. McKellop ever seen attempting to go inside the Capitol.  In sum, while the weight of the evidence against Mr. McKellop is not inconsequential, it is not the only factor the Court must consider in determining whether to release him pending trial, which is not yet scheduled and unlikely to take place in the near future.

### 3.  *History and characteristics of Mr. McKellop.*

The record of Mr. McKellop's history and characteristics weighs strongly in favor of pretrial release. This third factor requires consideration of "the history and characteristics of the person, including—the person's character, physical and mental condition, . . . past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Mr. McKellop has no criminal history and has over two decades of active service in the United States Army from which he retired on October 31, 2010.  His character and devotion to his country are evidenced by his numerous overseas tours to Iraq, Afghanistan, and numerous other countries, as well as his dozens of commendations, including three Bronze Star Medals. He is also a devoted father to two children and has strong family support.  Evidence such as this can weigh strongly in favor of pretrial release, especially when coupled with a lack of premeditation. *See United States v. Foy*, No. 21-cr-00108, 2021 U.S. Dist. LEXIS 123953, at *9-12 (D.D.C. July 2, 2021) (ordering pretrial release despite felony charges and alleged physical attack on law enforcement as well as breach of Capitol building, because defendant's "'history and characteristics' tip the scales—just barely—in favor of his release," highlighting no criminal record, honorable discharge after five years of military service, and no evidence of pre-planning or celebration after the fact").

Of significant note are Mr. McKellop's actions after the events of January 6, 2021. Despite having ample opportunity to flee, Mr. McKellop instead sought counsel and directed them to inform the United States Attorney's Office of his identity. Further, Mr. McKellop agreed to self-surrender and brought with him the cellphone he was using on January 6, 2021. This shows that Mr. McKellop not only recognizes the severity of the charges against him but also respects the rule of law. "Even if there is no evidence of [defendant's] 'remorse' per se, unlike other cases before this Court, the record suggests that [the defendant] 'understands the severity of the charges against him' and will act accordingly." *Taylor*, 2021 U.S. Dist. LEXIS 150500 at *13, *16, *19 (citation omitted) (denying government's motion to revoke pretrial release despite serious felony charges including physical struggle with law enforcement, defendant carrying a knife, and allegations that defendant organized "a group of 'fighters' to travel with weapons,"

because third and fourth factors favored release). Unlike the defendant in *Taylor*, who was granted release, Mr. McKellop did not have a bladed weapon or encourage or coordinate with others to enact violence. Mr. McKellop's actions after January 6, 2021 and lifelong conduct beforehand, therefore, show a strength of character that weighs strongly in favor of pretrial release.

   *4.  Nature and seriousness posed by Mr. McKellop's release.*

   The record offers no evidence that Mr. McKellop would be a danger to the community if he was released. The final factor in assessing a defendant's dangerousness is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). This analysis carries particular weight. *Cua*, 2021 U.S. Dist. LEXIS 44293, at *14. "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Id.* Further, this Court recently underscored that the threat of the defendant endangering others "must be clearly identified" especially "now that the specific circumstances of January 6, 2021 have passed." *Munchel*, 991 F.3d at 1283-84. "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community . . . a court may disable the arrestee from executing that threat." *Salerno*, 481 U.S. at 751.

   The Court need not find that the defendant is certain not to pose *any* danger in the future, as stringent release conditions can be imposed to mitigate such risk. *See e.g. Klein*, 2021 U.S. Dist. LEXIS 69951 at *37 ("[The defendant] does not pose no continuing danger, as he contends, given his demonstrated willingness to use force to advance his personal beliefs over legitimate government objectives. But what future risk he does present can be mitigated with supervision and

other strict conditions on his release."); *Taylor*, 2021 U.S. Dist. LEXIS 150500 at *26 ("[The defendant] may pose *some* continuing danger . . . but . . . the Court finds that the government has failed to show by clear and convincing evidence" the requisite articulable threat); *Owens*, 2021 U.S. Dist. LEXIS 101157, at *40 ("This falls short of demonstrating that defendant poses the kind of dangerousness requiring pretrial detention since the risk he poses to the safety of the community and others may be cabined by tailored release conditions."). Additionally, the defendant's history and characteristics inform the analysis of dangerousness to the community. *See e.g. Foy*, 2021 U.S. Dist. LEXIS 123953, at *13-14 ("the gravity and unsettling nature of [the defendant's] actions must be considered in the context of his long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence.").

Although the allegations against Mr. McKellop are serious, the courts overseeing these cases have cautioned against "reliance on a categorical distinction" wherein those who assaulted law enforcement are dispositively deemed a danger to the community. *Owens*, 2021 U.S. Dist. LEXIS 101157, at *34-37 (critiquing "those who actually assaulted police officers and broke through windows . . . and those who aided, conspired with . . . or coordinated such actions, are in a different category of dangerousness") (quoting *Munchel*, 991 F.3d at 1284). In *Owens*, the defendant "actually assaulted" an officer, but the Court underscores its "'grave constitutional obligation to ensure that the facts and circumstances of each case warrant' the 'exceptional treatment' of detention. . . . Thus, defendants are entitled to an individualized determination of dangerousness." *Owens*, 2021 U.S. Dist. LEXIS 101157, at *35 (citing *Munchel*, 991 F.3d at 1285). Pursuant to this Court's caution in *Owens* against categorical distinctions, an individualized assessment of Mr. McKellop's alleged actions does not support pretrial detention.

Further, like the defendant in *Foy*, who was released despite an attack on law enforcement, Mr. McKellop's motion for pretrial release is supported by his "long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence." *Foy*, 2021 U.S. Dist. LEXIS 123953, at *13-14.

In assessing whether Mr. McKellop poses a concrete threat to the community, his charges cannot be divorced from the exceptional circumstances of January 6, 2021. Although Mr. McKellop is charged with felonies, the evidence suggests that "'the presence of the group was critical' to defendant's ability to assault a police officer." *Owens*, 2021 U.S. Dist. LEXIS 101157, at *36 (citing *Munchel*, 991 F.3d at 1284). There is no evidence that Mr. McKellop will engage in the same type of conduct in which he allegedly engaged on January 6, 2021. Absent a coordinated and highly politicized rally during a simultaneous electoral college vote tally, Mr. McKellop poses no risk of any danger to the community. Admittedly, "[t]his decision is not an easy one, but, in the absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, this Court must apply the default rule favoring liberty'" which weighs firmly in favor of Mr. McKellop's release. *Klein*, 2021 U.S. Dist. LEXIS 69951 at *38 (citing *Cua*, 2021 U.S. Dist. LEXIS 44293, at *22).

### C. Mr. McKellop Cannot Be Detained on Obstruction of Justice Grounds Because the Government Cannot Present Evidence That There Is a Serious Risk That He Will Obstruct or Attempt to Obstruct Justice.

The government cannot meet its burden to demonstrate that there is a serious risk that Mr. McKellop is likely to commit obstruction of justice if he is released, so he cannot be detained on these grounds. The Court is required to hold a hearing if a case involves "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure or intimidate, or attempt

15

to threaten or intimidate a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). However, the relevant consideration is not an existing charge for obstruction, but a risk of future obstruction. *United States v. DeGrave*, No. 21-0090, 2021 U.S. Dist. LEXIS 92102, at *23 (D.D.C. May 14, 2021). "This danger does not arise whenever a defendant is charged with obstructive conduct; it instead arises from the risk that the defendants will obstruct the judicial proceeding or its integrity." *Id.*

In this case, Mr. McKellop's actions since January 6, 2021 have demonstrated that he respects the rule of law and is willing to comply with government processes, re-enforcing that he presents no risk of obstructing justice. When Mr. McKellop became aware that the FBI posted his image online, he immediately sought counsel to engage in discussions with the FBI or United States Attorney's Office and directed counsel to inform them of his identity. There is also no indication that Mr. McKellop attempted to conceal or destroy any evidence. In fact, he brought with him the cellphone he used on January 6, 2021 when he self-surrendered. The government cannot use the existing obstruction charge as the sole basis to detain Mr. McKellop on obstruction grounds, so the lack of any evidence that he is at risk of obstructing justice supports Mr. McKellop's motion for release.

### D. The Government Cannot Prove by a Preponderance of the Evidence That Mr. McKellop Poses a Serious Risk of Flight.

As was already determined by Magistrate Judge Faruqui, Mr. McKellop's actions since January 6, 2021, as well as his stellar history of military and government service, demonstrate that there is no serious risk that he will attempt to flee if released pretrial. Mr. McKellop had multiple opportunities to flee following January 6, 2021 but chose instead to identify himself to the authorities and to self-surrender. Notably, there were several days between conversations regarding self-surrender began and its scheduled date when Mr. McKellop was certain that

16

charges were being brought, but he made no attempt to flee or conceal evidence. Mr. McKellop has no criminal history and therefore no arrests for failing to appear to court, further supporting his motion for pretrial release. *Cf. Klein*, 2021 U.S. Dist. LEXIS 69951 at *27 (ordering defendant's release pretrial despite criminal history including one arrest for failure to appear). Mr. McKellop also has concrete ties as he owns his home in Fishersville, Virginia, is extremely close with and supported by his uncle in California, and has two children in Colorado with whom he maintains close, regular contact.

## III.    CONCLUSION

For the foregoing reasons, defendant Jeffery McKellop, respectfully requests the Court grant the instant motion and issue an order for pretrial release, including conditions at the Court's discretion.

Respectfully submitted,

*/s/ Catherine Henry*
CATHERINE HENRY
Senior Litigator

*/s/ Katrina Young*
KATRINA YOUNG
Assistant Federal Defender

## <u>CERTIFICATE OF SERVICE</u>

We, Catherine Henry, Senior Litigator, and Katrina Young, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we caused a copy of the Defendant's Motion to Revoke Detention Order and for Pretrial Release to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing ("ECF") upon Mary Dohrmann and Daniel Honold, Assistant United States Attorneys, United States Attorney's Office for the District of Columbia, 555 4th Street NW, Washington, D.C. 20530.

*/s/ Catherine Henry*
CATHERINE HENRY
Senior Litigator

*/s/ Katrina Young*
Katrina Young
Assistant Federal Defender

DATE:  September 27, 2021