**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **Case No. 21-CR-268 (CJN)** |
| | : | |
| | : | |
| **JEFFREY MCKELLOP,** | : | |
| | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER AND FOR PRETRIAL RELEASE

The defendant, Jeffrey McKellop, who is detained due to his dangerousness, seeks for the third time to be released pending trial. Nothing has changed to reduce the danger he poses to law enforcement, nor the legal basis for this Court's earlier analysis of the 18 U.S.C. § 3142(g) factors. Accordingly, the government respectfully requests the defendant's Motion to Revoke Detention Order and for Pretrial Release, ECF No. 36 ("Def.'s Mot.") be denied.

## BACKGROUND

The defendant, a former member of the United States Special Forces, weaponized his extensive military training and experience to attack the U.S. Capitol and the officers sworn to protect it during Constitutional proceedings on January 6, 2021. While wearing a gas mask and other military-grade gear, the defendant repeatedly assaulted sworn officers defending the Capitol, with the apparent intent to facilitate the breach of the Capitol by disabling the primary defense

against the mob—riot-control spray.  The defendant's actions included stabbing an officer in the face with the end of a flagpole.[1]

The defendant was arrested on March 17, 2021, after being charged by Complaint with: (1) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (3) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority with a Deadly or Dangerous Weapon, with a Deadly or Dangerous Weapon in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A); (5) Engaging in Physical Violence in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A); and, (6) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

At the defendant's March 18, 2021, initial appearance, the United States requested detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (E), on the ground that the defendant had been charged with both a crime of violence and a felony involving a dangerous weapon. Magistrate Judge Faruqui set a detention hearing for March 22, 2021, which continued into March 23, 2021.  After reviewing the government's memorandum in support and attached video exhibits, the defendant's memorandum in opposition, and hearing arguments, Magistrate Judge Faruqui

---

[1] The government hereby incorporates by reference its Memorandum in Support of Pre-Trial Detention, docketed at ECF No. 16, and its Opposition to the Defendant's Motion for Revocation or Review of Pretrial Detention Order, ECF No. 18, as well as all accompanying exhibits.

determined that no condition or combination of conditions would protect the community from the defendant's dangerousness.  *See* Order of Detention Pending Trial, ECF No. 19.

On March 29, 2021, the defendant requested review and revocation of that Order.  ECF No. 17.  In its opposition, ECF No. 18, the government highlighted the defendant's training and experience and the chilling strategy apparent in the defendant's conduct, which appeared to be to disable or disarm law enforcement officers wielding riot-control spray.



The government also emphasized the egregious and callous nature of the defendant's conduct, which involved committing multiple violent acts against multiple officers, including stabbing an officer in the face with a flagpole, then throwing the flagpole like a spear as the officer retreated.



On April 5, 2021, after a hearing, this Court denied the defendant's March 29, 2021, motion.  In discussing the § 3142(g) factors, specifically "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," the Court found the nature of the danger was that of future violence against and physical altercations involving law enforcement, and that the danger was serious given the defendant's increased capacity, combat training and experience, and demonstrated disregard for the law.

Meanwhile, on March 31, 2021, a grand jury had indicted the defendant on twelve counts, including two counts of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(b)(1).  ECF No. 20.  Since then, significant discovery has been provided, and on July 9, 2021, the government extended a plea offer by letter, which remains pending the defendant's consideration.  Most recently, January 6-wide discovery has commenced, including the dissemination, via a defense instance of evidence.com, of thousands of files of Capitol CCTV and Metropolitan Police Department Body Worn Camera videos.

The defendant filed the instant Motion on September 27, 2021, and the government hereby opposes.

## **ARGUMENT**

The government submits that the legal standard applicable to the defendant's motion is codified at 18 U.S.C. § 3142(f), which provides that:

> [A detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).[2]

Accordingly, the critical question is whether new, material information exists and, if so, whether it bears on this Court's consideration of the 18 U.S.C. § 3142(g) factors. The Court has specifically asked the government to address whether recent case law alters the analysis as to the defendant's dangerousness. As detailed below, the defendant has not proffered new facts that mitigate his dangerousness, while the government has identified additional information that further supports detention. Moreover, intervening decisions do not change the necessary analysis under the § 3142(g) factors.

---

[2] The defendant's citation to the "exceptional circumstances" standard in 18 U.S.C. § 3145(c) is inapposite. That statutory provision provides a mechanism for release for defendants who are "subject to detention pursuant to section 3143(a)(2) or (b)(2) [of Title 18], and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1)." But 18 U.S.C. §§ 3143(a)(2) and (b)(2) deal with defendants who have been convicted and are detained pending sentencing or detained pending appeal, respectively. The defendant fits neither category, and so 18 U.S.C. § 3145(c) does not apply to him by its plain text. And the defendant has not provided any authority for the proposition that it does. Rather, the cases that he cites (see Def.'s Mot. at 4-5 & n.2) deal with defendants who have already been convicted.

A. *Additional Facts Support Detention, Not Release*

In his Motion, the defendant asserts several purported changed circumstances indicating he should be released: first, that his conduct on January 6, 2021, was aberrational, as demonstrated by his long and decorated service in the military, and, relatedly, that he now realizes the seriousness of his actions; and second, that incarceration itself is somehow categorically inappropriate for the defendant, stating that its "conditions are . . . counterproductive," "particularly for a person like Mr. McKellop." Def.'s Mot. at 5–6, 7, 12. None of these arguments is availing.

As an initial matter, the defendant's prior military service is not new information "that was not known to the movant at the time of the hearing," 18 U.S.C. § 3142(f); on the contrary, both parties and this Court were well aware of his service during the detention hearings and this Court took it into account in making its detention decision. Simply reiterating the fact of his service and providing exhibits of various awards the defendant earned does not constitute new information that would warrant a new hearing on detention.

In any event, the defendant's conduct on January 6, 2021, while shocking given the defendant's history of national military service, is not wholly an aberration. For one, the defendant's only prior known arrest, in 1986, was for obstructing and resisting a law enforcement officer. The matter was not charged. Nevertheless, it provides further support for this Court's prior finding that the defendant poses a specific and ongoing threat to law enforcement officers.

Also troubling, the defendant has displayed a short fuse in his appearances before this Court. For example, on June 14, 2021, before the case was called telephonically, the defendant indicated he had a lot of questions for his attorney before hanging up the phone. After then speaking to his attorney separately, still before the case was called, the defendant indicated that he

was going back to his cell; however, apparently he remained on the line during the hearing.  On July 14, 2021, also before the case was called, the defendant made insulting comments about the staff at the Department of Corrections and indicated that he needed a different judge and a different venue for his case.  The defendant ultimately left the room in the middle of the hearing.  *See* Min. Entry, dated July 14, 2021 ("Defendant departed room and was not present for the remainder of the call.").  This recent conduct should heighten the Court's concern for the danger the defendant poses.  It reflects a concerning impulsiveness and disregard for social norms, i.e., either an inability of an unwillingness to conform his behavior to the most basic requirements of society, even when it is in his interest to do so.

The defense contends that, both presently and at the time the defendant surrendered on the arrest warrant, he understood the seriousness of the charges against him.  *See* Def.'s Mot. at 12.  The evidence suggests otherwise.  As his initial appearance, the defendant expressed disbelief that he would have to remain in jail pending an initial detention hearing, and during his detention hearing, he became so overcome that the matter was adjourned. Coupled with his erratic and disrespectful more recent behavior in court, this background shows a lack of appreciation for the seriousness of his conduct on January 6, 2021—let alone remorse.

The defense also emphasizes that the defendant provided his cell phone to investigators at the time of his arrest.  *See* Def.'s Mot. at 12, 16.  Yet, new evidence suggests that the defendant destroyed evidence of his crimes contained in the phone beforehand.  As mentioned in previous filings in this case, the FBI issued a Be On the Lookout ("BOLO") featuring the defendant's face and indicating he was wanted for "AFO" (Assault on a Federal Officer).  That BOLO was released on February 5, 2021, and shortly thereafter the defendant identified himself through an attorney as

7

the individual in the BOLO.  When the arrest warrant was issued, the defendant was instructed to surrender and D.C. and bring his cell phone with him.  The cell phone and a related iCloud account have since been searched pursuant to warrant.  In reviewing the results of the search warrant, investigators observed there were no photographs, messages, emails, or other information dated on or related to January 6, 2021, but significant data for dates before January 6, 2021, and on and after February 7, 2021—just two days after the release of the BOLO featuring the defendant. Deleting electronic evidence relating to his conduct on January 6, 2021, upon learning of the BOLO shows the defendant's consciousness of guilt, as well as his intent to evade the consequences of his reprehensible criminal conduct.

The defendant's Motion suggests that conditions of confinement, including separation from his family, COVID protocols, and having to wait to use a computer, "particularly for a person like Mr. McKellop," warrant his release.  Def.'s Mot. at 8.  The government is puzzled as to how this reasoning fits within the § 3142(g) factors but not surprised that the defendant has concluded his comfort ranks higher than the community's safety.  With respect to his conditions of confinement, the defendant's Motion does not even state a basis for facility transfer, let alone release.

The defense has stressed that the defendant's attacks on police officers took only a few minutes.  *See* Def.'s Mot. at 9, 11.  The government would submit that the time needed for the defendant to accomplish his violence against law enforcement officers has limited relevance to his future dangerousness.  Moreover, and as noted above, the defendant's preparation for those events, apparent deletion of inculpatory information after the fact, and continued defiance at court hearings shows that his conduct on January 6 was not a momentary lapse.

The officers attacked by the defendant will suffer lifelong consequences.  Indeed, time has demonstrated that the officer whom the defendant stabbed in the face will likely have a permanent scar.  An image of the wound shortly after the attack is pictured below (Figure 1).



For all these reasons, the defendant's attempt to premise his argument for release on new facts must fail.  To the contrary, additional evidence adds to the weight of the § 3142(g) factors against release.

*B.  Intervening Decisions in other January 6 Cases do not Dictate Releasing Defendant*

In his Motion, the defendant rehashes the § 3142(g) factors and cites to several other detention decisions involving January 6, 2021, defendants arguing that they favor release.  The government's prior filings, which have been incorporated by reference here, directly rebut many of the defendant's factual assertions and characterizations.  The government turns now to addressing the relevant case law.

As an initial matter, the U.S. Court of Appeals for the D.C. Circuit has emphasized the individualized nature of each detention decision. *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).   Accordingly, "[w]hatever potential persuasiveness the government's failure to seek detention in another case carries in the abstract, every such decision by the government is highly dependent on the specific facts and circumstances of each case, which [we]re not fully before [the Court]."   *Id.*[3] This Court has consistently undertaken an individualized analysis of the defendant's history, alleged conduct, and the weight of the evidence against him in making its detention determinations, and the government submits that even contrary detention decisions in other cases decided by fellow District Courts would have no direct bearing on the appropriateness of detention here.

---

[3] In *Munchel*, appellants had failed to raise an argument about the government's detention requests in other cases before its reply brief, and so the Court did not consider it.  *See id.*  Nevertheless, the Court emphasized the individualized nature of such requests.

Importantly, the government's request to detain the defendant pending trial is in line with its subsequent detention requests. Of the more than 70 people currently detained pending trial in connection with the January 6, 2021, attack on the U.S. Capitol, over 20 are accused—like the defendant—of engaging in violent conduct on the Western Front of the Capitol. And many, like the defendant, have few or no previous contacts with the criminal justice system. *See, e.g.*, *United States v. Brown*, 21-mj-565 (ZMF) (ECF No. 14 at 1, 14) (defendant with one expunged high school conviction and steady employment confronted law enforcement officers and deployed pepper spray against them) (*United States v. Dempsey*, 21-cr-566 (RCL) (ECF No. 1-1 at 6-12) (defendant struck at officers with multiple objects, deployed pepper spray); *United States v. Fairlamb*, 21-cr-120 (RCL) (ECF No. 31 at 4-5, 15) (defendant, a trained MMA fighter with two prior assault convictions, struck officer in the helmet with his bare fist); *United States v. Fitzsimons*, 21-cr-158 (RC) (ECF No. 36 at 3-4) (defendant with no prior convictions grabbed at and shoved several officers, and pulled one officer's helmet to the side while another r rioter deployed pepper spray); *United States v. Padilla*, 21-cr-214 (JDB) (ECF No. 24 at 1-5, 9-15) (defendant, a military veteran with no prior convictions, posted about the possibility of violence at the Capitol but came without tactical gear; assaulted several officers, including with makeshift weapons). The defendant's history and alleged conduct—a military veteran assaulting multiple officers, both with his fists and with a flagpole, while equipped with tactical gear, causing significant harm to several officers and disrupting their ability to manage a violent mob—fall squarely within the ambit of cases in which courts have agreed with the government's hold requests.

The cases the defendant cites are not to the contrary.  In *United States v. Owens*, No. 21-cr-286 (BAH), 2021 U.S. Dist. LEXIS 101157 (D.D.C. May 28, 2021), the district court released the defendant, a 21-year-old college student with a "spotless criminal record," dressed in casual clothes, who was alleged to have struck only one officer and attempted to strike a second officer, albeit both times with a skateboard.  *Id.* at *22-*23, *31.  Moreover, in that case, the government lacked evidence of causation of injury from Owen's conduct.  *Id.* at *29-*30.  By contrast, the government presented strong evidence that the defendant caused pain to Officer K.K when he punched him, and caused the laceration to Officer D.A. when he struck him in the face with the flagpole. *Owens* was simply a weaker case for detention compared to the defendant's.

Likewise for *United States v. Klein*, No. 21-cr-236 (JDB), 2021 U.S. Dist. LEXIS 69951 (D.D.C. Apr. 12, 2021).  There, the defendant was alleged to have "repeatedly pressed a stolen riot shield against [officers'] bodies and shields police-issued riot shield he had found."  *Id.* at *22.  Klein was not alleged to have injured—or even intended to injure—any officer. *Id.*  He was not dressed in tactical gear. *Id* at *20. In short, Klein's assault on law enforcement on January 6 was less severe than the harms the defendant inflicted on multiple officers and illustrated less planning or preparation compared to the defendant.

Moreover, *Owens* and *Klein* involved district court review (and revocation) of a magistrate judge's detention order, and thus were subject to *de novo* review.  *See Klein*, 2021 U.S. Dist. LEXIS 69951, at *8.  It is not clear that the same results would have obtained if—as here—the district courts in those cases had already reviewed the matter and determined detention was warranted.

*Foy* also does not control here. In *Foy*, the district court revoked its own detention order, but only after determining that it had incorrectly employed a statutory presumption in favor of detention in its first decision. *See United States v. Foy*, No. 21-cr-00108 (TSC), 2021 U.S. Dist. LEXIS 123953, at *8 (D.D.C. July 2, 2021). No such legal change is present in this case; rather, this Court detained the defendant without the use of presumption. And though Foy "thr[ew] a projectile and aggressively and repeatedly sw[ung] a hockey stick towards law enforcement officers," the court did not find that Foy had actually injured any officers, *see id.* at *3, much less cause lasting injuries like the defendant did. Even then, the court found that Foy's military service and lack of criminal record "just barely" favored release. *Id* at 10. Defendant's more serious conduct tips the balance in favor of detention.

## **CONCLUSION**

The defendant moves this Court to revoke its own well considered detention order without bringing any new material information to the Court's attention. Instead, the defendant attempts to rehash the same arguments he brought to the Court in April. But detention was justified then, and it remains so today; no intervening factual or case-law developments have undermined the Court's determination.

WHEREFORE, the United States respectfully requests that the Court deny the defendant's Motion to Revoke Detention Order and for Pretrial Release.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov

By: */s/ Daniel Honold*
DANIEL HONOLD
Assistant United States Attorney
N.Y. Bar Number 5406715
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-6898
Daniel.Honold@usdoj.gov