# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-cr-268 (CJN) |
| | : |
| JEFFREY MCKELLOP, | : |
| | : |
| Defendant. | : |

## MOTION *IN LIMINE* TO PRECLUDE CLAIMS OF SELF DEFENSE

On January 6, 2021, the defendant, Jeffrey McKellop, assaulted multiple high-ranking law enforcement officers who were protecting the U.S. Capitol from a riotous mob. The United States of America respectfully moves *in limine* to preclude him from raising any claim of self-defense. The facts, as a matter of law, do not support a claim of self-defense because they show that the defendant was the initial aggressor during his barrage of assaults on law enforcement, or, at a minimum, the defendant's multiple uses of force were both objectively unreasonable and greater than necessary. In the alternative, the government requests that the defendant provide a pre-trial proffer of facts to allow the parties to argue, and the Court to decide, whether the defendant is entitled as a matter of law to assert self-defense.

## INTRODUCTION

In Counts One, Two, Three, and Four of the indictment, the defendant is charged with four counts of assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1). Superseding Indictment, ECF No. 43. In Counts Five and Six of the indictment, the defendant is charged with two counts of assaulting, resisting, or impeding a federal officer using a dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b). *Id.*

On January 6, 2021, the defendant entered the restricted grounds of United States Capitol equipped with, among other items, flagpoles, a helmet, tactical vest, protective eye wear, and gas

mask.  Early in the attack on the west side of the Capitol, sometime before 1:15 p.m., the defendant volleyed a bottle at a group of officers who were just arriving at the southwest scaffolding in an effort to secure the area against the rioters, causing one officer to duck to avoid being hit by the defendant's projectile.  The defendant remained in the area despite police presence, flash bangs, and other efforts to disperse the crowd, including an audible dispersal order that was played on a continuous thirty-second loop on a large amplifier placed at the front of the north end of the police line, starting at 2:03 p.m.[1]

At approximately 2:26 p.m., as the crowd surged toward the U.S. Capitol building, the defendant was pressing toward the police line near the southwest scaffolding.  By that time, the defendant was wearing a helmet, goggles, and a gas mask.  There, the defendant approached a line of MPD officers, including Officer 1 and Officer 3, and an officer in a lieutenant's uniform. Officer 1 was wearing a sergeant's uniform. Officer 3 and the lieutenant each appeared to be holding riot-control spray canisters. The defendant then assaulted officers by swinging his arms downward.

Shortly thereafter, Officer 1 stepped backwards and eventually retreated from the line.  The defendant lifted both arms and hands and motioned inward a couple of times, as though he was beckoning the officers towards the crowd.  The defendant also appeared to try to grab a can of riot-control spray from the lieutenant's hand seconds later. The defendant then moved back to a group of rioters, at which point he picked up a bottle and threw it at the line of MPD and USCP officers.

---

[1] The specific audio consists of three loud blasts and the following announcement:

> This is area is now a restricted access area pursuant to D.C. Official Code § 22-1307(b).  All people must leave the area immediately.  Failure to comply with this order may subject you to arrest and may subject you to the use of a riot control agent or impact weapon

Next, he raised the middle finger of his right hand at the officers. The defendant then opened his right hand and motioned his hand inward a couple of times, as though indicating for the officers to "come here." The officers did not accept the defendant's invitation to leave the police line and venture further into the crowd.

At approximately 2:27 p.m. through 2:28 p.m., the defendant pressed forward toward the Capitol building—and the sworn officers protecting it—again, breaching the line of MPD and USCP officers to reach the bottom of the Inauguration scaffolding. There, the defendant pushed Officer 2, who, like Officer 1, was also wearing an MPD sergeant's uniform and equipped with riot-control spray. The defendant then struck Officer 2 with what appears to be a closed fist. Following this assault, the defendant assaulted Officer 3 by shoving her to the side as he walked behind the line of Officers. Officer 3 was wearing a marked uniform with neon-yellow sleeves.

The defendant then appears possibly to assist an officer who fell the ground before once again pressing on in his efforts to facilitate the breach of the U.S. Capitol. Just a few seconds later, still at approximately 2:28 p.m., the defendant assaulted Officer 4 while Officer 4 was positioned underneath the Inauguration scaffolding. Officer 4 was wearing an MPD Captain's uniform and was carrying a riot-control spray canister. As Officer 4 positioned himself with the riot-control spray aimed toward the defendant and the crowd, the defendant picked up a flagpole from the ground and struck Officer 4 in the face, causing him to reel backwards and causing a serious laceration and scarring to Officer 4's face. The defendant then threw the flagpole, as though it were a spear, at Officer 4.

Then, still at approximately 2:28 p.m., the defendant, attacked Officer 5, who had his back towards the defendant and was attempting to contain other advancing rioters. The defendant continued to press forward against the police line until at least 2:35 p.m.

Below is a chronological series of still shots depicting the defendant's activities on January 6, 2021. If the image is from body-worn camera footage, the date and time stamp can be seen in the upper right corner of the still shot.[2]



*(Figure 1: Defendant making physical contact with Officer 1)*

---

[2] The government also incorporates by reference Exhibits 1–4 to the government's Memorandum in Support of Pre-Trial Detention, ECF No. 16. Those exhibits are video clips from officer body-worn camera footage showing some of the defendant's conduct on January 6, 2021.

4



*(Figure 2: Defendant grabbing at a lieutenant's riot-control spray)*



*(Figure 3: Defendant making physical contact with Officer 2)*



*(Figure 4: Defendant shoving Officer 3 away from him)*



*(Figure 5: Defendant stabbing Officer 4 in the face with a flagpole)*



*(Figure 6: Defendant grabbing Officer 5 from behind)*

## ARGUMENT

A pretrial ruling on the availability of the defendant's proposed affirmative defenses is appropriate here. "If . . . an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it, even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980); *see also United States v. Lebreault-Feliz*, 807 F.3d 1, 4 (1st Cir. 2015) ("[W]hen the proffer in support of an anticipated affirmative defense is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely." (citation omitted)); *United States v. Portillo-Vega*, 478 F.3d 1194, 1197-98 (10th Cir. 2007) ("A defendant must carry his burden on each of the elements [of the affirmative defense]; if the evidence is insufficient on even one element, the trial court and jury need not be burdened with testimony supporting other elements of the defense." (internal quotation marks omitted)).

1. **Defendant Cannot, as the Initial Aggressor in His Attacks Against Officers on January 6, 2021, Assert Self-Defense**

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). "A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault."); *United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011) (an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault).

The proffered evidence demonstrates that the defendant was the initial aggressor in these assaults on law enforcement officers. As officers worked to contain the advancing mob, the defendant, unprovoked, forcibly rushed the police line in an apparent effort to disable, disarm, or disorient them, or even lure them away from their posts defending the line preventing rioters from advancing upon the U.S. Capitol building. He then advanced past the police line and assaulted multiple officers attempting to contain the rioters. During the assaults, the officers were simply engaged in the commission of their lawful duties. Accordingly, as the instigator, the defendant cannot, as a matter of law, defeat the Section 111 charge by asserting self-defense.

Even if the defendant took offense to the manner and means used by officers to endeavor to contain the riot, that fact would not bear on the elements of self-defense. Defendant may have

objected to law enforcement's presence at the U.S. Capitol or their effort to prevent other rioters from progressing closer to law enforcement officers and the Capitol.  None of that matters.  *See Urena*, 659 F.3d at 907 (observing that "harsh words from another, insulting words, demeaning words, or even fighting words" does not provide license to "stab the offending speaker in the neck, bash their skull with a baseball bat, send a bullet to their heart, or otherwise deploy deadly force in response to the insult").  Because the defendant "was the attacker" in these instances, *id*., he cannot advance a self-defense theory.

### 2. Even Assuming Excessive Force by the Officers, the Defendant Cannot Assert Self-Defense

To raise a valid claim of self-defense to a charge of assault under Section 111 where excessive force is alleged to have been used, the defendant must show (1) that he reasonably believed the use of force was necessary to defend himself or another against an immediate use of excessive force by a federal law enforcement officer; and (2) he used no more force than appeared reasonably necessary in the circumstances.  *Urena,* 659 F.3d at 906-07 (quoting *United States v. Biggs,* 441 F.3d 1069, 1071 (9th Cir. 2006)); *United States v. Middleton,* 690 F.2d 820, 826 (11th Cir. 1982) ("[S]elf defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger.").

The evidence shows that the defendant was illegally within a restricted area of the U.S. Capitol and charged at multiple officers who were positioned to prevent rioters from further approaching the U.S. Capitol building.  At this point, law enforcement had probable cause to arrest the defendant for violations of federal criminal law.  *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor

committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

The officers' responses to the relentless attacks on law enforcement were a reasonable display of force given the circumstances. *See United States v. Drapeau*, 644 F.3d 646, 653-654 (8th Cir. 2011) (defining excessive force as "force that was unreasonable or unnecessary under the circumstances, *i.e.*, greater than the amount of force that was objectively reasonable"). Despite the defendant's numerous attacks on law enforcement, and those of other rioters, at no point did a law enforcement officer threaten the defendant with anything approaching deadly force or a deadly weapon. On the other hand, the defendant's attack on Officer 4 with a flagpole left Officer 4 with a bloody facial wound that left a scar. The methods used by officers to control the riotous mob assaulting them and attempting to move closer to the U.S. Capitol building reflected a more than "reasonable[] [display] of force based on the facts and circumstances." *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011) (internal quotation marks, brackets, and citation omitted).

Even if it was objectively reasonable for the defendant to respond with some force against any officer, any claim of self-defense still fails because he responded with greater force than necessary to protect himself. *See Waters*, 896 F.3d at 570 (self-defense not applicable "if [the defendant] and his co-conspirators used excessive force to repel Hargrove's attack"). Indeed, the defendant could simply have retreated from officers at any time.

For each of these reasons, any self-defense assertion fails as a matter of law in this case. The defendant therefore should be precluded from presenting evidence or testimony regarding self-defense for each of the assault charges, and from referencing or suggesting self-defense in statements to the jury.

## CONCLUSION

For these reasons, the United States respectfully moves the Court to preclude the defendant from raising a claim of self-defense or, in the alternative, require the defendant to make a pre-trial proffer of facts that would permit the Court to decide whether he is entitled as a matter of law to assert self-defense.

Dated March 28, 2022.

                              Respectfully submitted,

                              MATTHEW M. GRAVES
                              United States Attorney

By:    */s/ Mary L. Dohrmann*
        MARY L. DOHRMANN
        Assistant United States Attorney
        N.Y. Bar Number 5443874
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        (202) 252-7035
        Mary.Dohrmann@usdoj.gov

        */s/ Maria Y. Fedor*
        MARIA Y. FEDOR
        Attorney, detailed to the
        United States Attorney's Office for the
        District of Columbia
        D.C. Bar No. 985823
        555 Fourth Street, N.W.
        Washington, DC 20530
        Maria.Fedor@usdoj.gov