IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | **Crim. No. 21cr268-CJN** |
| | ) | |
| JEFFREY MCKELLOP, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO DISMISS INDICTMENT FOR SELECTIVE PROSECUTION AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, the defendant, Jeffrey McKellop, by counsel, and respectfully moves the Court, to dismiss the charges against him due to his selective prosecution.

### I.      BACKGROUND

On January 6, 2021, a large group of protesters gathered on the Capitol grounds. Eventually a substantial number—though not Mr. McKellop—breached and entered the Capitol building.  Most of the January 6 defendants were vocal supporters of then-President Donald Trump, a Republican, and were protesting Congress's certification of Democrat Joe Biden as the winner of the November presidential election.  Mr. McKellop and the rest of the January 6 defendants are being prosecuted by a Democratic administration.  Specifically, Mr. McKellop has been charged with  with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C § 111(a)(1) (Counts 1, 2, 3, and 4); assaulting, resisting, or impeding certain officers using a dangerous weapon, inflicting bodily injury, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts 5 and 6); civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 7); entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and 9b)(1)(A) (Count 8); disorderly and disruptive conduct in a

1

restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count 9); engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count 10); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 11); and act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count 12).

      The treatment of Mr. McKellop and other January 6 defendants can be compared with the Government's treatment of another group of protestors:  The Portland Protestors.

      In summer of 2020, protestors surrounded the Federal Courthouse in downtown Portland, Oregon.  According to the government, the protests in Portland:

> Were followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault.  One violent event impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov cocktail. The Mark O Hatfield Courthouse has experienced significant damage to the façade, glass, and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen.  The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000.  Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

*United States v. Bouchard,* case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF 1-1 at 4-5.

      And yet, despite the Government's own acknowledgement of the severity of the Portland Protestor's actions, the government only charged the Portland Protestors with misdemeanors, and, in many instances, subsequently dismissed the charges.  *See*, *e.g.*, 3:20-mj-00165

(Defendant placed officer in a headlock; charged with a misdemeanor, which the government moved to dismiss); 3:20-mj-00170 (defendant "used a homemade shield to strike the officer in the face"; charged with a misdemeanor, which the government moved to dismiss); 3:20-mj-00169 (defendant "struck DUSM VICTIM 1 in the face with a shield and then punched DUSM Victim 1 in the face with a closed fist"; charged with a misdemeanor, which the government moved to dismiss.).

These dismissals and resolutions have occurred under the same Democratic administration that continues to prosecute Mr. McKellop. Based on the charging decisions and outcomes sought by the government in Mr. McKellop's case, Mr. McKellop has a claim of selective prosecution when contrasted with the government's charging and prosecutorial decision-making in violent riots in Portland, Oregon in 2020.

## II.    ANALYSIS

While the government has "broad discretion" in "enforc[ing] the Nation's criminal laws," that discretion is, nevertheless, "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations omitted). "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment" is that the government cannot pursue criminal charges against a citizen that amounts to a "'practical denial' of equal protection of law." *Id.* (citations omitted).

The primary way in which discriminatory law enforcement can be exhibited is using the prosecutorial prerogative itself to discriminate against those whose constitutionally protected views or activities are not popular with the government. *United States v. Banks*, 368 F. Supp. 1245, 1251 (D.S.D. 1973). Such discrimination is selective prosecution.

To show selective prosecution, a defendant must show that (1) the prosecution had a discriminatory effect and (2) that the prosecution was motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 465.

### 1.     Discriminatory Effect

To establish a discriminatory effect, a defendant must show that "similarly situated" individuals were not prosecuted. *Id.* Similarly situated requires "some degree of commonality among the indictable group, such that the defendant challenging his indictment may make a supportable demonstration that those unindicted persons are, in fact, similarly situated, and consequently, there must be an improper motive behind the selected individual's prosecution." *United States v. Blackley*, 986 F. Supp. 616, 619 (D.D.C. 1997).

Mr. McKellop is similarly situated to the individuals protesting at the federal courthouse in Portland.  In another January 6 case, the government has argued that the allegations are not comparable, citing courts' statements of the "*sui generalis* nature of this criminal conduct." *See U.S. v. Miller,* 1:21-cr-00119 (D.D.C. July 22, 2021, ECF no. 39 at 8-9.[1]  However, the standard merely requires the individuals simply be "similarly situated," not "identically situated."  Both Mr. McKellop and the Portland defendants were alleged to have committed violence against federal officers in circumstances where a large crowd was attempting to breach a federal building.

The discriminatory effects in this case can be seen in the outcomes between different groups.  Many protestors supporting left-leaning causes in Portland who assaulted officers in the attempted breach of a federal building have received dismissals.  Mr. McKellop was at a protest

---

[1] Mr. McKellop's case resembles the circumstances of the Portland allegations more broadly than that of Mr. Miller.  Mr. McKellop never entered the Capitol building and never "articulated plans to track and potentially kill a U.S. Capitol police officer" as Mr. Miller is alleged to have done.

associated with right-leaning causes and support of President Trump, and charges against him have not been dismissed.

### 2.      Discriminatory Purpose

A defendant may establish discriminatory purpose either with direct evidence of discriminatory intent or with statistical disparities or other indirect evidence regarding the unequal application of the law.  *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

The discriminatory purpose here is to punish right-leaning protesters.  This purpose is illustrated by the disparate outcomes in large numbers of prosecutions both in Portland in 2020 and in Washington in 2021.

### III.      CONCLUSION

For these reasons, Mr. McKellop moves that the charges against him be dropped for selective prosecution.

Respectfully submitted,

JEFFREY MCKELLOP

By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonagaa.com

Counsel for Jeffrey McKellop

Certificate of Electronic Service

I hereby certify that on March 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.


_____/s/_____

John C. Kiyonaga