# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 21-cr-268-CJN** |
| | : | |
| **JEFFREY MCKELLOP** | : | |
| **Defendant.** | : | |
| | : | |

## OPPOSITION OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS FOR SELECTIVE PROSECUTION

The United States of America respectfully opposes Defendant Jeffrey McKellop's Motion to Dismiss for Selective Prosecution (ECF No. 57).  McKellop alleges that the government selectively targeted him for prosecution due to his political beliefs.  This Court rejected similar allegations advanced by the defendant in *United States v. Miller*, 1:21-cr-199 (D.D.C. Dec. 21, 2021) (ECF No. 67), and the same outcome is warranted here.  Because McKellop's motion does not satisfy the rigorous standard for dismissal based on selective prosecution, this Court should deny it.

## Factual Background

The government charged McKellop with two counts of assaulting, resisting, or impeding officers using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) and four counts of assaulting, resisting, or impeding officers, in violation of 18 U.S.C. § 111(a)(1). Superseding Indictment, ECF No. 43.  McKellop has also been charged with civil disorder, in violation of 18 U.S.C. § 231(a)(3); entering and remaining on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); disorderly and disruptive conduct on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); engaging in physical violence on restricted grounds with a

deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); disorderly conduct within the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and engaging in physical violence within the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F). *Id.* Each charge stems from McKellop's conduct at the U.S. Capitol on January 6, 2021.

*Events at the U.S. Capitol on January 6, 2021*

On January 6, a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election. At 1:30 p.m., the House and Senate adjourned to their respective chambers to resolve an objection. Vice President Michael Pence presided over the joint session and, later, the Senate proceedings.

As the proceedings continued, a large crowd gathered outside the U.S. Capitol. Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building. Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol by, among other things, breaking windows and by assaulting officers as others in the crowd encouraged and assisted those acts. In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.

At all relevant times, the United States Capitol building and its grounds—including the Lower West Terrace on the West Front—were closed to members of the public.

*McKellop's Actions at the U.S. Capitol on January 6, 2021*

On January 6, 2021, McKellop entered the restricted grounds of the U.S. Capitol equipped with flagpoles, a helmet, tactical vest, protective eye wear, and gas mask. On the west side of the Capitol, sometime before 1:15 p.m., McKellop volleyed a bottle at a group of officers who had arrived at the southwest scaffolding, causing one officer to duck to avoid being hit. McKellop

remained in the area despite police presence, flash bangs, and an audible dispersal order played on a continuous thirty-second loop starting at 2:03 p.m. from a nearby amplifier.

At approximately 2:26 p.m., as the crowd surged toward the U.S. Capitol building, McKellop pressed toward the police line near the southwest scaffolding.  He wore a helmet, goggles, and a gas mask.  There, McKellop approached a line of MPD officers, including Sergeant K.M., Officer H.L., and an officer in a lieutenant's uniform.  Officer H.L. and the lieutenant each appeared to have riot-control spray canisters.  McKellop then assaulted officers by swinging his arms downward.  McKellop also tried to grab a can of riot-control spray from the lieutenant's hand.

McKellop then walked backwards, away from the officers, towards the crowd.  McKellop lifted both arms and hands and motioned inward a couple of times, as though he was beckoning the officers towards the crowd.  McKellop then picked up a bottle and threw it at the line of officers. Next, he raised the middle finger.  McKellop then motioned his hand inward, as though indicating for the officers to "come here."  The officers did not, however, leave the line.

At 2:27 p.m., McKellop pressed forward toward the Capitol building, breached the line of MPD and USCP officers, and reached the bottom of the Inauguration scaffolding.   There, McKellop pushed and struck Sergeant K.K.  McKellop then assaulted Officer H.L. by shoving her to the side.  Both officers wore marked uniforms.

McKellop then appeared to possibly assist an officer who fell to the ground.  A few seconds later, McKellop assaulted Captain D.A.—who wore a captain's uniform—underneath the Inauguration scaffolding.  He picked up a flagpole and struck Captain D.A. the face, causing him to reel backwards and suffer a serious laceration and scarring.  McKellop then threw the flagpole, as though it were a spear, at Captain D.A.

At 2:28 p.m., McKellop attacked Officer H.F. from the back as he attempted to contain other rioters.  McKellop continued to press forward against the police line for several more minutes.

## Argument

McKellop alleges the government selectively targeted him for prosecution based on his political beliefs.  In particular, McKellop alleges that he is similarly situated to those who rioted in the streets of Portland in the summer of 2020 but were not prosecuted.  As this Court held in *Miller*, these allegations fail to establish selective prosecution.

**I.     To obtain dismissal based on selective prosecution, a defendant must adduce clear evidence of both discriminatory effect and discriminatory purpose.**

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake."  *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).  The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive function."  *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (citation omitted).  That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465.  "[T]he standard is a demanding one."  *Armstrong,* 517 U.S. at 463.  "[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'"  *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossoti*, 211 F.3d 137, 144 (D.C. Cir. 2000)).[1]

## II.    McKellop fails to proffer evidence on either selective-prosecution prong.

McKellop's motion fails each prong of the selective-prosecution inquiry.  It neglects to identify any evidence (much less clear evidence) of discriminatory effect or purpose.

### A.    McKellop fails to show that the government singled him out for prosecution.

With respect to *Armstrong*'s first prong, McKellop must adduce clear evidence that "there exist persons who engaged in similar conduct and were not prosecuted."  *United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997).  An individual may be similarly situated if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to

---

[1] The Supreme Court has imposed a "correspondingly rigorous standard for discovery in aid of such a claim."  *Armstrong*, 517 U.S. at 468.  A defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution— "discriminatory effect and discriminatory intent"—before he can demand inspection of the government's files that "might corroborate or refute the … claim."  *Id.* (citation omitted).  Since McKellop's motion does not seek discovery, the government will not address this standard.

the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Stone*, 394 F. Supp. 3d at 31 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

McKellop fails this showing.  Notably, his proffered examples involve Portland cases that were previously submitted by other January 6 defendants in motions to compel discovery based on selective prosecution.  ECF No. 57, at 2-3; *See. United States v. Miller*, 1:21-cr-199 (CJN) (D.D.C.) (ECF No. 32), *United States v. Judd*, No. 1:21-cr-40 (TNM) (D.D.C) (ECF No. 138).

As this Court observed in *Miller*, "[t]he circumstances between the riots in Portland and the uprising in the Nation's capital differ in kind and degree, and the Portland cases (and the government's prosecutorial decisions) are therefore not sufficiently similar." *Miller*, 1:21-cr-199 (D.D.C. Dec. 21, 2021) (ECF No. 67), slip op. 3.  *Miller's* proffered examples, which included the three cases proffered by McKellop, "did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power." *Id*.  Moreover, as another member of this Court explained, "January 6 rioters attacked the Capitol in broad daylight" with "hundreds of legislators" and "[t]housands of congressional staffers" present. *United States v. Judd*, No. 1:21-cr-40 (D.D.C. Dec. 28, 2021) (ECF No. 203), slip op. 10.  "Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters" who roamed the Capitol's corridors. *Id*.  The Portland defendants, by contrast, "attacked at night" and "raged against a largely vacant courthouse." *Id*.

These situational differences represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in McKellop's case. *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)); *see also Price v. U.S. Dep't of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017) (observing that a prosecutor may legitimately consider "concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of a defendant's cooperation" in plea negotiations) (brackets and citation omitted).

After reviewing similar allegations of discriminatory effect in *Miller*, this Court held that the defendant had failed to show an entitlement to discovery under *Armstrong*'s first prong. McKellop's motion, which implicates *Armstrong*'s higher standard for dismissal, necessary fails for the same reason.

**B.    McKellop fails to show that the government harbored an improper motive in prosecuting him.**

Even if McKellop could identify similarly situated individuals, he must also adduce clear evidence of a discriminatory purpose in the government's prosecution. This second prong requires proof "that her prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. 3d at 35 (citing *Branch Ministries*, 211 F.3d at 144). McKellop has failed to adduce any evidence that improper motives undergird his prosecution. Rather, McKellop summarily alleges that the government is punishing right-leaning protesters which evidenced by the disparate outcomes between the Portland prosecutions and the January 6 prosecutions. ECF No. 57, at 5. While McKellop cited to three Portland cases, *Miller* identified thirty dismissed cases, including those referenced by McKellop, and other cases likely resulting in a future dismissal, and yet, this Court held that the government's charging decisions in Oregon "d[id] not without more show the federal government [was] pursuing its claims against Miller and others like him because of a

difference in politics." *Miller*, slip. op 4.  That observation applies equally here.  McKellop "points to no evidence of discriminatory intent other than 'personal conclusions based on anecdotal evidence.'"  *Id*. (citation omitted).  He has accordingly failed his burden on *Armstrong*'s second element.

The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that McKellop's political views played no role in his office's charging decisions in this case.

### Conclusion

Because McKellop has failed to carry his burden, the Court should deny his motion to dismiss based on selective prosecution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov

*/s/ Maria Y. Fedor*
MARIA Y. FEDOR
Attorney, detailed to the
United States Attorney's Office
D.C. Bar No. 985823
555 Fourth Street, N.W.
Washington, DC 20530
Maria.Fedor@usdoj.gov