IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| UNITED STATES, ) | |
| ) | |
| v. ) | Crim. No. 21cr268 |
| ) | Hon. Carl J. Nichols |
| JEFFREY McKELLOP, ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S MOTION FOR RECONSIDERATION OF PRETRIAL RELEASE

Comes now Defendant Jeffrey McKellop, by counsel, and moves the Court to reconsider its earlier denial of his pre-trial release. By affirmatively prolonging the accomplishment of its discovery obligation while simultaneously insisting on pretrial confinement, the government forces a choice between two fundamental rights to which Defendant is equally entitled, his right to discovery and his right not to be punished pretrial.

1. **The Government has Unilaterally Created an Impermissible Delay in the Trial of January 6th Cases.**

In its pursuit of January 6th defendants, the Government has taken the apparently unprecedented step of reversing the normal order of prosecution. It has indicted and arrested before investigating. The consequent rolling disclosure of discovery - with no reliable end date - prompted another Judge of this Court to observe.

> "[M]y sense is there's just this tremendous kind of universe
> of discovery out there… and if that means, you know, at the
> end of the day that something gets missed before trial, then
> we might have to deal with that afterwards.
> And maybe that's a *Brady* issue…

*United States v. Robert Morss*, DDC 21cr40 (Hon. Trevor N. McFadden), Transcript of March 4, 2022 Status Hearing ("*Morss* Tr I"), at 9.

This circumstance – entirely of the Government's creation – presents defendants confined pretrial with the untenable choice between surrendering their due process right to discovery by expeditious resolution of their cases or languishing for however long it takes the Government to make up the time it should have expended prior to bringing the charges. The practical effect is no different from the indefinite confinement suffered by terrorism detainees found to be impermissible by this very Court.

The Supreme Court considered the case of several detainees held for six years as "enemy combatants" and affirmed their right to seek *habeas* relief, remanding to this Court which granted same and released them.

> "The several answers to the charge of triumphalism might start with a basic fact of Anglo-American constitutional history: that power, first of the Crown and now of the Executive Branch of the United States, is necessarily limited… After six years of sustained executive detentions in Guantanamo, subject to *habeas* jurisdiction but without any actual *habeas* scrutiny, today's decision is no judicial victory, but an act of perseverance in trying to make habeas review, and the obligation of the courts to provide it, mean something of value both to prisoners and to the Nation.

*Boumediene v. Bush*, 553 U.S. 7233, 800-01 (2008) (Souter, concurring).

Albeit he is charged in an Article III court, Defendant McKellop's pre trial detention (12 months and counting at this point), through the unilateral choice of the Executive Branch to reverse the appropriate order of investigation and arrest, promises to be no less onerous than that deemed impermissible for men who were believed by the Government to have made the killing of Americans their life's work. Must the vindication of Defendant's rights be left to another despairing "act of perseverance" by the Supreme Court?

2

**2.  Defendant's Pretrial Detention is Punitive**.

The unprecedented and uniquely troubling provenance of Defendant's extended pretrial detention aside, its particulars taken in concert squarely contravene the precedents establishing the requisites of pretrial detention.

Pretrial detention is by necessity not meant to be punitive.  *See, e.g.*, *United States v. Salerno*, 481 US 739, 747-48 (1987).   Nonetheless, the pre trial detention of Defendant unquestionably is by virtue of:

    a.  The duration of his detention;

    b.  Its practical effect of contravening his due process right to discovery, and

    c.  The abusive circumstances of his detention.

**(a) Duration of Pretrial Detention**

Pretrial detention is constitutional, provided it is administrative rather than punitive. *See Salerno*, 481 U.S. at 746-51; *Bell v. Wolfish*, 441 U.S. 520, 535-40 (1979). Whether detention is punitive rather than regulatory turns on "whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose." *Wolfish*, 441 U.S. at 538.  Even valid pretrial detention that serves a regulatory purpose "assumes a punitive character when it is prolonged significantly." *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986).

To determine whether pretrial detention has become excessively prolonged thereby violating due process, a court must assess the facts and circumstances of the individual case, "for the [due process] clause establishes no specific limit on the length of pretrial confinement." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989)  While there is no clear demarcation for when prolonged pretrial detention becomes punitive, due process considerations

unquestionably come into play where a defendant has been detained pretrial for a year and is expected to be detained for considerably longer.  *See*, *e.g.*, *United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir. 1986) ("Detention that has lasted for 14 months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process."); *United States v. Zannino*, 798 F.2d 544, 548 (1st Cir. 1986) (stating "... we shall assume that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement").

### (b) Discovery Production Schedule Precludes Required Access to Discovery

Defendant's continued detention undeniably has a punitive component given the government's discovery production schedule.

The government in another January 6th case, *United States v. Morss*, DDC 21cr40, acknowledged that its failure timely to provide discovery to January 6th defendants is born of an "imperfect" system that has left the government "just not certain how long" the complete disclosure of discovery will take.  *Morss* Tr at 18.  As the Court recognized in *Morss*, this circumstance has been created by "an ongoing investigation that may go on indefinitely."  *Id.* at 18.  Judge McFadden, presiding over *Morss*, later reiterated the point:

> "They [the government] will probably be turning things
> over well after trial… just an unfortunate feature of these
> January 6th trials.

*United States v. Robert Morss*, DDC 21cr40, March 22, 2022 Status Conference.[1]

This court in this case has alluded to the problem if not expressly acknowledged it.

---

[1] Undersigned has not yet received a transcript of the above-referenced Status Conference, but transcribed the foregoing verbatim during same.  Undersigned has moved Judge McFadden for the relief sought herein on the grounds proffered herein on behalf of defendants Robert Morss and Geoffrey Sills, both charged in the same indictment in DDC 21cr40.

The defense noted during the hearing on the last motion to revisit Defendant's pretrial

detention,

> "[T]here's a significant change of circumstances that I
> don't think any of us really predicted and that is how
> long these cases are likely to go on.  And that's because,
> entirely because of the delay in getting out all of the
> discovery.

October 25, 2021 Transcript ("Tr") at 5.

This Court agreed:

> "[T]here seems to be a lot of pressure being placed on
> the system where we are both detaining defendants and
> not getting them all the discovery the government says it
> needs to produce and, as a result, delaying trials.

Tr at 8.

The defense for Defendant McKellop then followed by noting the reversal of the

normal order of a prosecution (i.e, by indicting before investigating) as an explanation.  Tr

at 9.

This Court acknowledged its concern.

> "[The case is] languishing.

> "There is a presumption against pretrial detention.

> "But it doesn't seem to me that I can even make a
> reasonable prediction about when this trial will happen.

Tr at 27.

Finally, this Court noted,

> "That is not to say that I believe this to be a
> sustainable state of affairs.

Tr at 42.

It most definitely is not – and yet it has endured for more than six additional

months.

Asked to articulate its obligation relative to the mass of data it has collected, the government refuses even to acknowledge the extent of its *Brady* obligation.

> "I'm hesitant to take a specific position with respect
> to this particular defendant.

Tr at 32.

> "Again, I'm not sure…

Tr at 33.

Whether or not it cares to admit it, the government is accountable under *Brady* for every last shred of information in its possession (15,000 hours of video and counting at this point). *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). This case is currently set for trial on July 7th, but there is no question that Defendant would (and yet may) seek more time were he not presently detained. He is utterly unable as of now to account for the mammoth discovery already produced – not to mention the unknown terabytes of data still somewhere in the government's collection, review and dissemination chain. The fact of his current detention is the only factor impelling what could very likely be a prejudicially premature trial.

As a consequence of the government's decision to indict before its investigation, defendants who proceed first to trial will not receive all the evidence the government has or will have assembled. This quandary might impel a defendant to delay trial until all the government's evidence has been provided. Indeed, a co-defendant at liberty in the Morss case raised such a prospect to the Court at the March 4th hearing. March 4 Transcript at 23. However, a defendant subjected to pretrial detention, like Defendant McKellop, must make this choice knowing that

delay means even more time incarcerated.  Burdening a defendant's choice in this manner further enhances the punitive character of his pretrial detention.

### (c) Conditions of Confinement

Defendant has spent 14 months in the DC Jail's Central Detention Facility ("CTF"). Judge Royce Lamberth of this Court held in civil contempt the Warden of the D.C. Jail and the Director of the D.C. Dept. of Corrections [*United States v. Worrell*; DDC 21cr292, Doc. 106] "I find that the civil rights of this defendant have been abridged… this matter should be referred to the Attorney General of the United States for a civil rights investigation into whether the DC Department of Corrections is violating the civil rights of January 6[th] defendants… " *Jail Violated Rights of January 6th Defendant, U.S. Judge Says,* Sarah N. Lynch, Reuters, October 13, 2021. [2]

Beyond the generally awful conditions (e.g., consignment to filthy cells befouled with the human filth of previous occupants), the past year of confinement for Defendant has been an unending catalogue of petty (and not so petty) abuses by the CTF staff against him and the January 6th detainees generally: racially motivated diatribes, unjustified targeted harassment in the form of repeated cell searches and arbitrary restrictions, etc.  Apparently, the only publication made available by the CTF staff to the detainees free of charge is the Nation of Islam's *The Final Call*.  Nation of Islam leaders are described by the Southern Poverty Law Center as "deeply racist, antisemitic and anti-LGBT… [earning the organization] a prominent position in the ranks of organized hate."  https://www.splcenter.org/fighting-hate/extremist-files/group/nation-islam.

Undersigned's own frustration with the CTF staff vindicates Judge Lamberth's concerns. As undersigned has told the Court orally, the CTF staff months ago took Defendant's discovery from him.  Undersigned has seen no documentation to justify this seizure.  Defendant's repeated

---

[2]  Undersigned is aware of no news report of any investigation by the Department of Justice.

demands that it be returned were ignored.  Undersigned twice tried to deliver replacement discovery to Defendant, only to be turned away by the CTF staff.  Finally, after raising the issue in open court, undersigned sent the discovery as per the specific guidance of the government.  It still took the staff more than two weeks to deliver it.  Finally, when undersigned attempted on May 10th to review the discovery with Defendant at CTF, an officer interrupted the attorney-client meeting to remove Defendant's digital tablet containing the discovery for which Defendant had been made to wait months.  It bears noting that Defendant had three times orally requested (and received) permission to take the tablet in to his meeting with his counsel.  Undersigned reiterated the request upon entering the facility.

The Court, however, need look no further than its personal observations to confirm the systematic abuse by the CTF staff of Defendant's most elementary rights.  The Court will recall that Defendant disappeared in the middle of his last Status Conference (by Zoom) before the Court on May 3rd.  CTF staff physically removed Defendant from the CTF video conference room while his microphone was on mute – preventing the Court from hearing his protests that the Court's proceeding was still underway.  CTF's derision of the Court's own authority utterly eviscerates any presumption of professional regularity or good faith in its treatment of Defendant.[3]

The conditions of Defendant's detention are clearly unrelated to any "legitimate goal" and are consequently "arbitrary" implying "that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."  *Wolfish*, 441 U.S. at 539.

### 3.  Violation of Speedy Trial Right

---

[3] It bears noting further that CTF detainees until recently, were reportedly made to share the digital tablets bearing their particularized discovery – in flagrant disregard of the Protective Orders restricting the dissemination of discovery.

### (a) Violation of STA

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, is designed "to protect a defendant's constitutional right to a speedy ... trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993). The Act generally provides that the government must bring a criminal defendant to trial no more than 70 days after the date on which the criminal defendant first appears before a judicial officer of the court in which the charge is pending. 18 U.S.C. § 3161(c)(1).   A pretrial detainee, however, like Defendant, must be tried within ninety days after he is first detained. 18 U.S.C. § 3164(b); *United States v. Hines*, 694 F.3d 112, 114 (D.C. Cir. 2012); *see also* Speedy Trial Plan for US District Court for the District of Columbia, § B.9.  No detainee shall be "held in custody pending trial after the expiration of such ninety-day period." 18 U.S.C. § 3164(c).

In calculating the 70 and 90 day periods, the Act excludes certain time periods, including those related to the filing and resolution of pretrial motions. *See Id.*; 18 U.S.C. § 3161(h)(1)-(9). The Act permits the Court to grant a continuance upon a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).  The Court can consider the complexity of the case, as one factor amongst others, in determining whether the ends of justice warrant a continuance.  *Id.* at (B)(ii).

While the Court designated the case as complex, that designation, by itself, does not resolve speedy trial issues. Indeed, "the length of an exclusion for complexity must be not only limited in time, but also reasonably related to the actual needs of the case." *United States v. Gambino*, 59 F.3d 353, 358 (2d Cir. 1995)(*citing United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1198 (2d Cir. 1989)).  Here, the voluminous discovery production bears more appropriately on the cases of defendants charged with more complicated facts – e.g., conspiracy.

Defendant Morss, however, faces no such charge nor is he alleged to have coordinated or collaborated in any way with anyone else.  The logistical challenges freighting the discovery disclosures are superfluous to him.

Per §3164(C), Mr. Sills should be released from confinement forthwith.

### (b) Violation of Sixth Amendment Right to Speedy Trial

Irrespective of the Speedy Trial Act, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." VI Amendment, U.S. Const.  "Excessive delay in prosecuting a defendant after he is indicted or arrested violates this Sixth Amendment right."  *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006)

A delay that does not violate the Speedy Trial Act may still violate the Sixth Amendment's guarantee of a speedy trial.  *United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999).  The factors relevant to evaluating constitutional delay are (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice caused by the delay.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  An examination of the *Barker* factors strongly indicates Defendant's constitutional right to a speedy trial has been violated.

The first factor entails a double inquiry.  *Doggett v. United States*, 505 U.S. 647, 651 (1992).  First whether the delay has crossed the threshold from ordinary to presumptively prejudicial sufficient to trigger judicial examination of the claim.  *Id.*  Second whether the delay extends beyond the bare minimum needed to trigger review.  *Tchibassa*, 452 F.3d at 547 – 48 (quoting *Doggett*)("the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.").

With regard to the second factor, the Court addresses "whether the government or the criminal defendant is more to blame for that delay." *Tchibassa*, 452 F.3d at 923 (*quoting Doggett*, 505 U.S. at 651). "[A] reviewing court must carefully examine several issues, specifically focusing on the intent of the prosecution." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009). The government's conduct herein has rendered unavoidable the undeniably foreseeable delay.

The third *Barker* factor is whether the Defendants made a timely assertion of their speedy trial rights. A "defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (quoting *Barker,* 407 U.S. at 531–32). Defendant has repeatedly and consistently asserted his speedy trial rights.

With regard to the final factor, the prejudice inquiry, a court is to consider: (1) whether the defendant's pretrial incarceration was oppressive; (2) the defendant's anxiety and concern; and (3) the possibility that the delay hampered the defendant's ability to prepare his defense. *Doggett v. United States,* 505 U.S. 647, 654 (1992). Defendant's pretrial incarceration has clearly been oppressive. Moreover, his confinement has vastly complicated his dialogue with his counsel, particularly any conjoint review of discovery.

In sum, the balance of the *Barker* factors compels the conclusion that that the Defendant's Sixth Amendment right to a speedy trial has been violated.

## Conclusion

By forcing Defendant to choose between two rights to which he is equally entitled, the government merely reinforces the compelling reasons for his release adduced in earlier pleadings (incorporated herein). The Court should also note Defendant's comportment in confinement.

His sense of responsibility has impressed a CTF supervisor whose consideration stands in sharp contrast to the comportment of most of his CTF colleagues and whose written endorsement accompanies this pleading.

Respectfully submitted,

JEFFREY McKELLOP
By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonagaa.com

Counsel for the Defendant

<u>Certificate of Electronic Service</u>

I hereby certify that on May 16, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

_____/s/_____
John C. Kiyonaga