**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-268 (CJN)** |
| | : | |
| | : | |
| **JEFFREY MCKELLOP,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR**</u>
<u>**RECONSIDERATION OF PRETRIAL RELEASE**</u>

The defendant, Jeffrey McKellop, who is detained due to his dangerousness, seeks for the fourth time to be released pending trial.  Defendant's Motion for Reconsideration of Pretrial Release ("Def.'s Mot."), ECF No. 72.  Yet, nothing has changed to reduce the danger he poses to law enforcement, nor the legal basis for this Court's earlier analysis of the 18 U.S.C. § 3142(g) factors.  Rather, since the last time the defendant sought release pending trial, the defendant has been indicted on six additional counts of 18 U.S.C. § 111(a)(1).  *See* Second Superseding Indictment, ECF No. 86.  Moreover, an investigation stemming from evidence that the defendant violated 18 U.S.C. §§ 401 (Contempt) and 1030 (Computer Fraud) is ongoing.  Accordingly, the factors now weigh more heavily in favor of detention.

The government incorporates by reference here all previous filings, as well as any accompanying exhibits, regarding the defendant's detention, including: ECF No. 16 (Memorandum in Support of Pretrial Detention); ECF No. 18 (Opposition to the Defendant's Motion for Revocation or Review of Pretrial Detention Order); and ECF No. 40 (Opposition to the Defendant's Motion

1

to Revoke Detention Order and for Pretrial Release).  For the reasons set forth below, the government

respectfully requests the defendant's Motion be denied.

## **ARGUMENT**

The legal standard applicable to the defendant's motion is codified at 18 U.S.C. § 3142(f),

which provides that:

> [A detention] hearing may be reopened, before or after a determination by the
> judicial officer, at any time before trial if the judicial officer finds that information
> exists that was not known to the movant at the time of the hearing and that has a
> material bearing on the issue whether there are conditions of release that will
> reasonably assure the appearance of such person as required and the safety of any
> other person and the community.

18 U.S.C. § 3142(f).

Accordingly, the critical question is whether new, material information exists and, if so,

whether it bears on this Court's consideration of the 18 U.S.C. § 3142(g) factors.  The defendant's

motion is devoid of new facts that mitigate his dangerousness.  Indeed, it provides no analysis of

the factors set out in 18 U.S.C. § 3142(g).[1]  In contrast, the government has identified additional

information that further supports detention.

*A.  New Charges Reflected in the Second Superseding Indictment Further Support Detention*

The nature and circumstances of the offense charged and the weight of the evidence, both

factors to consider under 18 U.S.C. § 3142(g), have only strengthened since the defendant's last

motion for pretrial release.  On May 25, 2022, a grand jury indicted the defendant on seventeen

---

[1] Without engaging the § 3142(g) factors, the defendant's Motion cites his "comportment" during pretrial detention
as a basis for his release and attaches a two-page document titled "DC Department of Corrections, Work
Performance Rating – Inmate."  Def.'s Mot. at 11–12, Attachment, ECF No. 72-1.  That document, dated September
1, 2021, indicates that at that time, a supervisor at the DOC rated the defendant's performance of his work duties as
"excellent."  Yet, as discussed further below and in previous filings, such a commendation cannot overcome the
defendant's dangerousness and demonstrated disregard for Court orders.

counts, which included the addition of six counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1).[2]  Two of these counts involved separate instances of the defendant making physical contact with Metropolitan Police Department officers attempting to protect the Capitol from the defendant and his fellow rioters.  The other four counts encompassed four separate instances of the defendant throwing projectiles at the officers protecting the Capitol.  While earlier-identified evidence placed defendant's assaultive behavior within an approximately two-minute timeframe, additional video evidence has revealed assaults occurring from approximately 1:02 p.m. until approximately 2:32 p.m.  *See* ECF No. 86.

The totality of the defendant's actions on January 6, 2021, place him among some of the most serious offenders presently charged.  The defendant strategically assaulted multiple law enforcement officers, with his hands, a flagpole, and various projectiles, all while dressed in military-grade tactical gear.  The defendant also wore a gas mask that protected him from riot-control spray, which was being deployed by multiple officers, some of whom were victims of his assaults.  All of these activities are captured in images and videos from January 6, 2021.

In *United States v. Munchel,* 991 F.3d 1273 (D.C. Cir. 2021), the D.C. Circuit considered the § 3142(g) factors in the context of the January 6, 2021, attack on the Capitol, stating, "those who actually assaulted police officers . . . are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way."  991 F.3d at 1284. The defendant's prolific assaultive conduct places him squarely in the increased dangerousness category described in *Munchel*, and nothing since his prior applications for release has changed

---

[2] One misdemeanor charge, designated Count Eleven of the prior two Indictments in this case, Disorderly Conduct in a Capitol Building, in violation of 50 U.S.C. § 5104(e)(2)(D), was not re-presented to the grand jury when the government presented the Second Superseding Indictment.  *Compare* Indictment, ECF No. 20, First Superseding Indictment, ECF No. 43, *with* Second Superseding Indictment, ECF No. 86.

that calculus in his favor.  Rather, the addition of six new counts of violations of 18 U.S.C. §111(a)(1), all of which are supported by video and photographic evidence, further supports continued detention.

### B.  The Defendant's Violation of a Court Order Further Supports Detention

During the pendency of this case, significant January 6-wide discovery and defendant-specific discovery has been disclosed to the defense.  As of March 1, 2022, pursuant to a protective order entered by the Court and a written acknowledgment signed on the defendant's behalf by his counsel, the defendant was given access to the evidence.com video repository for inmates housed in D.C. Department of Corrections, which contains approximately 24,000 files consisting of body-worn-camera and closed-circuit video footage from multiple law enforcement agencies with defense counsel in Capitol Siege cases.  *See* ECF Nos. 49 and 50.  As this Court and counsel are aware from other litigation in this case, recently obtained evidence shows the defendant sharing access to the repository in apparent intentional violation of the protective order and the terms of use for the tablet on which access was provided.  The defendant's conduct in violation of the protective order is further evidence demonstrating an unwillingness or inability to abide by Court orders and provides further motive for him to flee.  Consequently, it supports his continued detention.

### C.  The Defendant's Detention is Not Unconstitutionally Excessive

When reviewing a pretrial detention decision under the Bail Reform Act, "[a] district court is not required to consider the length of pretrial detention when making its initial detention decision."  *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006).  However, "at some point due process may require a release from pretrial detention or, at a minimum, a fresh

4

proceeding at which more is required of the government than is mandated by section 3142." *Id.* (quoting *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986)); *see also, e.g., United States v. Colombo*, 777 F.2d 96, 101 (2d Cir. 1985). "To determine whether the length of pretrial detention has become unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, i.e., the evidence of risk of flight and dangerousness." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000). "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and 'will rarely by itself offend due process.'" *Id.* (quoting *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993)).

With respect to the first factor, at present, the length of the detention for the defendant is less than 15 months long. Courts considering due process's limits on pretrial detention eschew any bright line analysis of the length of detention. *See, e.g., United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993) ("[T]he due process limit on the duration of preventive detention requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." (internal quotation marks omitted)); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986) ("Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial."). Rather, courts consider all the factors described above, including the timeline of events in a given case. *See United States v. Bikundi*, 599 F. App'x 4 (D.C. Cir. 2015) (summarily affirming district court's finding that detention period of around eleven months did not violate due process); *United States v. Bikundi*, No. 14-cr-30, Mem. Op. and

5

Order, ECF No. 91 (D.D.C. Jan. 21, 2015) (original order denying defendant's motion and explaining timeline of events)); *United States v. Williamson*, 584 F. App'x 2 (D.C. Cir. 2014) (summarily affirming district court's finding that detention period of approximately four months did not violate due process); *United States v. Williamson*, No. 14-cr-151, Order, ECF No. 52 (D.D.C. Sept. 11, 2014) (original order denying defendant's motion); *id.*, Order, ECF No. 5 (D.D.C. July 7, 2014) (original pretrial detention order explaining original detention timeline)); *United States v. Ali*, 459 F. App'x 2, 3 (D.C. Cir. 2012) (summarily affirming district court's finding that period of seven months, and ultimate pretrial detention of twelve months considering trial date, did not violate due process); *United States v. Ali*, No. 11-cr-0106, 2011 WL 6748503, at *1 (D.D.C. Dec. 21, 2011) (explaining timeline)).   Accordingly, courts to consider due process limitations on pretrial detention have upheld periods of detention of significantly greater length than in this case.  *See, e.g., United States v. Briggs,* 697 F.3d 98, 103 (2d Cir. 2012), *as amended* (Oct. 9, 2012) (concluding twenty-six month detention, though a "close call," did not violate due process); *Millan*, 4 F.3d at 1049 (2d Cir. 1993) (acknowledging pretrial detention period "between thirty and thirty-one months without a formal finding of guilt" was suggestive of due process violation but nevertheless reversing district court's release of defendants on that ground).  In this case, the length of the defendant's detention is neither dispositive nor presumptively impermissible.

The second factor, the extent of the prosecution's responsibility for delay of the trial, weighs in favor of continued detention in the present case. The defense incorrectly argues that the government bears the greatest responsibility for the delay of the trial. *See* Def.'s Mot. at 5–6.  At the same time, the defendant apparently agrees that a prosecution involving over 800 defendants

encapsulates a unique level of complexity and extensive discovery.  The government has provided the defendant with both January 6-wide discovery and case-specific discovery.  This case was set for trial on May 9, 2022, and while the government was prepared to proceed, the trial was continued at the defense's request.  Accepting as true the defendant's statement that "there is no question that Defendant would (and yet may) seek more time were he not presently detained," Def.'s Mot. at 6, that assertion does not shift responsibility for the delay to the government, nor does it provide a basis for the defendant's release—particularly where the defendant has had three separate defense teams in this matter, with current counsel joining the case in mid-January.  Moreover, as further discussed herein, the defendant has had access to discovery, but has misused it.  The law does not permit the defendant to challenge his pretrial detention on the basis of his own decisions to retain counsel of his choice, misuse the discovery access provided to him, and continue the trial.  Notably, cases stemming from the January 6, 2021, attack on the Capitol have been proceeding to trial since March 2022.  *See, e.g., United States v. Guy Reffitt,* 21-cr-32 (DLF).

The last two factors to consider—the gravity of the charges and the strength of the evidence upon which detention was based—have been discussed above and in the government's three prior filings in support of pretrial detention.  As has been amply demonstrated, those two factors strongly support continued detention.    Accordingly, the defendant's detention in this case is not unconstitutionally excessive.

### D.  The Defendant's Other Arguments Do Not Warrant Pretrial Release

In his Motion, the defendant makes several arguments related to the Speedy Trial Act.  These arguments bear no relevance to the § 3142(g) factors, nor do they otherwise bear on his release.  In any event, those arguments lack merit.  First, no time has elapsed on the Speedy Trial clock for

the current indictment.  Further, since defendant's initial indictment on March 31, 2021, every continuance has been excluded by the Court from calculation under the Speedy Trial Act based on consideration of the statutory factors.  Second, current counsel is the defendant's third counsel and first appeared in this matter on or about January 13, 2022, after the case had been set for trial on May 9, 2022, and while a plea offer was still under consideration by the defendant.  ECF Nos. 45 and 46.  On February 25, 2022, the defendant, through counsel, rejected the plea offer on the record in Court.  On April 7, 2022, at the request of defense counsel and with the defendant's consent, the trial was continued to July 7, 2022.  ECF No. 60.  Furthermore, the defendant, through his counsel, has been provided discovery.  Any lack of access to discovery arises from his inability or unwillingness to follow rules and orders governing that access, which are hardly factors in favor of release.  In November 2021, defendant violated the rules governing his use of a discovery laptop while in DOC custody, resulting in temporary revocation of access to the discovery (which, on information and belief, the defendant had been able to access since August 2021).  As of March 2022, defendant was given direct access to evidence.com.  Due to the defendant's actions in violation of the protective order and the terms of use for the tablet on which he accessed evidence.com, that access was revoked.[3]  As a result of that conduct, the defendant may be charged with additional crimes that could increase his potential sentence.  In sum, none of the defendant's purported bases for this Court to find a Speedy Trial Act violation are availing.

The defendant further argues for pretrial release by challenging the conditions of his confinement.  Def.'s Mot. at 7.  As support, the defendant cites a civil contempt Order, dated October 13, 2021, in *United States v. Christopher Worrell*, 21-CR-292 (RCL), ECF No. 106.  Yet,

---

[3] His attorney, however, has continued access to a separate instance of evidence.com that has been made available to legal defense teams.

the defendant has provided no context for how that Order relates to his request for release.  Simply put, it does not, as it relates to highly case-specific matters including a serious medical condition of defendant Worrell.  Moreover, the docket in the same case reflects that the U.S. Marshals Service "conducted an unannounced inspection" of the DOC's facilities the week of October 18, 2021.  *Id.*, ECF No. 123.  The report of the USMS states that its inspection of the facility where the defendant is detained "did not identify conditions that would necessitate the transfer of inmates from that facility at this time."  *Id.*  Notably, the defendant cites no case propounding release, as opposed to transfer to a different facility, as the appropriate relief based on conditions of confinement for a defendant who should otherwise be detained under the § 3142(g) factors.

## <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that the Court deny the defendant's Motion for Reconsideration of Pretrial Release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     /s/ Mary L. Dohrmann
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov

 /s/ Maria Y. Fedor
MARIA Y. FEDOR
Attorney, detailed to the
United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823

9

601 D Street, N.W.
Washington, DC 20530
Maria.Fedor@usdoj.gov