UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-00268 (CJN) |
| v. | : | |
| | : | |
| JEFFREY McKELLOP, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF PROPOSED FILTER PROTOCOL AND OPPOSITION TO DEFENDANT'S PROPOSAL FOR ADJUDICATING PRIVILEGED MATERIAL

The United States respectfully submits this memorandum in support of our proposal for a protocol to document, review, segregate, maintain, and disclose materials seized pursuant to a search warrant issued and executed on May 16, 2022, in Case No. 22-SW-141 (under seal).[1] Further, for the reasons stated below, the United States opposes the defendant's proposal for adjudicating privileged material (ECF No. 89).

**I.  Background**

On May 16, 2022, Special Agent Jeffrey Johannes of the Federal Bureau of Investigations (the "FBI") presented an affidavit in support of a search warrant for the jail cell, mail, and personal property of the defendant, Jeffrey McKellop. United States Magistrate Judge Robin M. Meriweather authorized the government to execute the requested search, having found probable cause to believe (among other things) that the defendant violated the protective order in this case (ECF No. 27) by intentionally disseminating discovery materials that he knew were subject to a protective order, in violation of 18 U.S.C. § 401; and further that he provided other individuals his

---

[1] The government has not moved to unseal the warrant because it provides details about the nature and facts of an on-going criminal investigation that could be seriously jeopardized by a public disclosure of such details.

unique American Prison Data Systems login credentials so that they could access the contents of an evidence.com video repository without authorization to do so, in violation of 18 U.S.C. § 1030.

The warrant was executed the same day by three agents of the Federal Bureau of Investigations ("FBI") and a United States Attorney's Office investigator. In recognition of the fact that documents seized would need to be filtered for attorney-client privilege and work product protection before any of the federal prosecutors, law enforcement agents, and staff conducting the investigation (the "prosecution team") could review them, no members of the prosecution team were present during execution of the warrant. The executing agents packaged the documents and submitted them into evidence at the FBI. On May 27, 2022, one of the executing agents caused a search warrant return to be filed with the Court. The return generally categorized the nature of the seized documents as including:

- Jail mail[2]
- Documents containing:
  - List of Body cam times
  - officer names
  - log on info
  - summons packet
  - Misc Notes
  - List of Sentences.

Based on a discussion with one of the executing agents, the FBI collected approximately 50-100 documents from the defendant's cell, and about 10-15 letters (incoming and outgoing) from his mail. The agent estimated the seized materials could be reviewed in totality within two to three hours.

After the warrant was executed, a prosecutor assigned to the defendant's case emailed a copy of the warrant to defense counsel, and further requested counsel to identify any individuals

---

[2] On or about May 4, 2022, the government requested the DOC place a mail cover on the Defendant's incoming and outgoing mail.

2

whose information ought to be relayed to a filter review team ("filter team") that would review the seized documents for the purpose of segregating attorney-client communications. Defense counsel responded that the seized materials could also be subject to work product protection and requested the government cease any review of the documents until the parties formulated an appropriate approach to filtering. The prosecutor replied that no filter review would begin until the filter team was provided with additional guidance and requested defense counsel to provide responsive information.

In response, the defendant filed an emergency motion for relief (ECF No. 73) with this Court (and not the magistrate judge who issued the warrant).[3] As is pertinent here, the defendant sought a hearing to determine "[t]he best means of accomplishing a review of the seized documents for purposes of safeguarding Defendant's privileges and Fourth Amendment rights (e.g., the appointment of a panel of individuals not currently employed by or serving in the government to conduct a review under the Court's auspices, said cadre to include [defense counsel]." At the conclusion of a hearing held on May 19, 2022, the Court ordered the parties to meet and confer

---

[3] The defendant has repeatedly complained that the warrant was presented to a magistrate judge as opposed to this Court. There was nothing inappropriate about the government's decision to present a search warrant to a magistrate judge (though the government has no objection to this Court taking up the matter of appropriate filter protocols). First, as anticipated by both the Federal Rules of Criminal Procedure and the Local Rules of the U.S. District Court for the District of Columbia, United States magistrate judges in this District are expected to handle the presentation of search warrant requests. See Fed. R. Crim. P. 41(b)(1); D.D.C. LCrR 57.17. Second, the facts underlying the search warrant do not arise from the same events that gave rise to the defendant's pending indictment, so it was not in any way obvious that the warrant should be presented to this Court as an initial matter. Third, the government made the magistrate court aware of the defendant's pending case through the search warrant affidavit. Thus, the magistrate court was empowered to alert this Court as to the existence of the requested warrant before it was issued if it deemed necessary. Finally, the government clearly did not intend to keep this Court in the dark about the facts giving rise to the search warrant, having alerted this Court to the facts underlying this investigation through its (still sealed) evidence.com audit trail motion (ECF No. 70) before ever seeking the warrant at issue.

concerning appropriate filter protocols and set a briefing schedule in anticipation of the likelihood that no agreement would be reached. The Court also ordered the government to continue to suspend its review of the seized materials until the filter protocol issue was resolved, which the government has done.

On May 26, 2022, the parties discussed a filter review protocol proposed by the United States without reaching agreement. On May 31, 2022, defense counsel provided an alternative proposal, and again, no agreement was reached. Consistent with the Court's briefing schedule, on June 1, 2022, the defendant submitted a substantially similar filter protocol proposal and a memorandum in support thereof to the Court (ECF No. 89).

Attached hereto as Exhibit A is the government's proposed filter protocol (the "filter protocol"). This protocol is substantially similar to the one that was discussed with defense counsel on May 26, 2022, though it has been refined, in part in an effort to make it absolutely clear that the filter team will seek defense counsel's input to assist in identifying potentially privileged materials.[4] Our proposed protocol contains robust protections to ensure the prosecution team does not inadvertently or improperly obtain materials for which a valid privilege may exist while also ensuring that the government can effectively conduct its criminal investigation.

Pursuant to the government's proposed filter protocol, the filter team will be composed of attorneys, federal agents, and support staff who are not on the prosecution team. Filter team members will be generally familiar with the legal elements of the attorney-client privilege, the work product doctrine, and related client-agent legal principles. They will be managed by a federal

---

[4] As the heart of disagreement between the government and counsel relates to control over the filter process, we do not expect any adjustments to resolve the issues before the Court.

prosecutor who will have final decision-making authority on matters within the purview of the filter team, including questions of disclosure.

The filter team will conduct their review for privileged and potentially privileged materials, specifically pertaining to attorney-client and work-product, in accordance with the filter protocol. The filter protocol generally requires the filter team to undertake the following steps to document, review, segregate, maintain, and disclose privileged and potentially privileged materials:

- First, the filter team will conduct a review of the seized materials to identify and segregate documents containing privileged or potentially privileged information, so that non-privileged materials may be released to the prosecution team. The initial review will be assisted with search terms that include specific names and other identifying information provided by defense counsel. It will also be assisted by defense counsel's description of any documents that were prepared by or at the direction of counsel. Filter team members will err on the side of caution and treat any questionable item as potentially privileged material.[5]

- Second, the filter team will segregate the documents identified into three sub-categories:
    - Category One (privileged and cannot be redacted);
    - Category Two (privileged and can be redacted);
    - Category Three (potentially privileged).

- Third, for all materials designated as either Category Two or Category Three, the filter team will do one of the following:
    - Disclose the materials to the potential privilege holder or counsel therefor, request a privilege log if the potential privilege holder asserts privilege and disputes whether an exception or waiver applies, and seek a ruling from the court regarding the material if the parties cannot reach agreement;
    - In cases where disclosure to the privilege holder or counsel could seriously undermine the government's investigation, the filter team will apply *ex parte* to the court for a determination whether the material is privileged and/or whether any exception to or waiver of protection exists;[6] or

---

[5] The filter team may determine whether any of the material is potentially responsive to the search warrant and may segregate and not disclose to the prosecution team any material that is unambiguously not responsive to the search warrant.

[6] An *ex parte* application might be appropriate, for example, if seized materials demonstrate that a member or agent of the legal defense team was complicit in a plan by the defendant to publicly disclose protected materials. Obviously, to the extent the court does not agree that a document should be considered *ex parte*, it can invite defense counsel to any hearing.

- o Defer seeking court intervention and instead segregate the material in a manner that makes it inaccessible to the prosecution team.

While the filter team may obtain information from and consult with the prosecution team to the extent necessary to facilitate the accurate and efficient review of the materials, as well as to make informed and practical determinations on disclosure issues, filter team members will never disclose the contents of any privileged or potentially privileged material to any member of the prosecution team.

II. **The Government's Proposed Filter Protocol Appropriately Balances the Government's Investigative Needs with the Defense's Interest in Protecting Privileged Materials.**

This court should not deviate from a well-established, nationwide practice of using government filter teams, particularly since competing public policies and relevant factors considered by courts weigh in favor of using one here.

Ten circuits explicitly or implicitly have approved the use of government filter teams. *See In re Sealed Search Warrant ("Korf")*, 11 F.4th 1235, 1242, 1249 (11th Cir. 2021) citing *S.E.C. v. Rajaratnam*, 622 F.3d 159, 183 & n.24 (2d Cir. 2010); *Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 530 (3d Cir. 2015); *United States v. Myers*, 593 F.3d 338, 341 n.5 (4th Cir. 2010); *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017); *United States v. Proano*, 912 F.3d 431, 437 (7th Cir. 2019); *United States v. Howard*, 540 F.3d 905, 906 (8th Cir. 2008); *United States v. Christensen*, 828 F.3d 763, 799 (9th Cir. 2015); *United States v. Ary*, 518 F.3d 775, 780 (10th Cir. 2008)).[7] Notably, government filter teams previously have been used to perform privilege reviews in high-profile,

---

[7] In *Korf*, the approved filter protocol allowed the privilege holders "to conduct the initial privilege review." *Id.* at 11 F.4th at 1249. The facts in *Korf* are distinguishable, in that the privilege holders were intervenors in a proceeding ancillary to the criminal investigation. For the reasons discussed further below, we do not believe such a procedure is warranted or appropriate here.

6

complex cases in this District as well. *See, e.g.*, *Matter of Search of Info. Associated With [Redacted] & [Redacted] Which Are Stored at Premises Controlled By Google*, 2017 WL 11140350, at *1 (D.D.C. Nov. 9, 2017) (Howell, C.J.) (DOJ filter team used for attorney-client review apparently connected to 1MDB scandal); *United States v. Manafort*, 314 F. Supp. 3d 258, 270 (D.D.C. 2018) (mentioning letter from prosecution team to defense that described privilege review team as "a separate taint team of agents and prosecutors."); *Hicks v. Bush*, 452 F.Supp.2d 88, 101-103 (D.D.C. 2006) (approving government filter team to review documents seized from noncitizen detainees held as enemy combatants at United States Naval Base at Guantanamo Bay, Cuba, in connection with investigation of three apparently coordinated suicides).

Although the attorney-client privilege is essential to the proper functioning of our adversary system, *see United States v. Zolin,* 491 U.S. 554, 562 (1989), its protections are not absolute. *See United States v. Stewart,* No. 02 CR. 396 JGK, 2002 WL 1300059, at *5 (S.D.N.Y June 11, 2002). Rather, the attorney-client privilege must be balanced against competing public policies, including the public's interest in the enforcement of the criminal law. *Id.* Similarly, "[t]he work product privilege balances the needs of the adversarial system, weighing the need to protect trial preparation material against the general interest in revealing all true and material facts relevant to the resolution of a dispute." *The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 48-49 (D.D.C. 2009) (internal quotations and citations omitted).

In this case, law enforcement, the public, and this Court have an interest in enforcing laws and orders that enable the free and efficient flow of voluminous discovery involving sensitive materials. Based on the limited information listed in the search warrant return, it is very possible that documents seized will be relevant to a breach of the protective order and of APDS's terms of use, and that they will be subjected to legitimate work product protection challenges. For example,

7

the defense may argue that lists of officer names and camera times are work product created in anticipation of litigation at the direction of counsel. A filter team attorney may argue that the defendant waived his right to work product protection because that information was found in a letter addressed to an individual whom the defendant had no reason to believe would keep it confidential or appended to a memorandum providing instructions about how to access the inmate-only D-FPD video repository. A filter team attorney might also argue the crime-fraud exception should apply because communications show the defendant intended for the recipient to publicly disclose protected footage that was included on the list. Federal prosecutors familiar with the facts of the underlying investigation, and not (costly) third-party non-governmental attorneys, are in the best position to recognize whether there are legitimate facts in support of disclosure. "[T]he Government should be allowed to make fully informed arguments as to privilege if the public's strong interest in the investigation and prosecution of criminal conduct is to be adequately protected." *United States v. Grant*, No. 04 CR 207BSJ, 2004 WL 1171258, at *2 (S.D.N.Y. May 25, 2004).

Moreover, common factors courts consider when assessing the use of a government filter team that generally weigh in favor the use of a government filter team in this case. First, as here, "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially privileged documents . . . . In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *United States v. Jackson*, No. CR.A.07-0035(RWR), 2007 WL 3230140, at *5 (D.D.C. Oct. 30, 2007)

(citing *In re Grand Jury Subpoenas* 04-124-03 and 04-124-05, 454 F.3d 511, 522-23 (6th Cir. 2006) (citing *United States v. Abbell*, 914 F.Supp. 519 (S.D.Fla.1995))).

Second, "use of a government taint team appears to be viewed more favorably when the lawfulness of the acquisition of the documents to be reviewed was not initially challenged." *Jackson*, 2007 WL 3230140 at *5, citing *United States v. Neill*, 952 F.Supp. 834, 837 n. 4 (D.D.C.1997) (observing, as is pertinent here, that no litigation directly resulted from the filter team's review because the defendants never filed any motions for an order requiring the government to return or destroy seized records under Rule 41); and *United States v. Winters*, No. 06 CR. 54 SWK, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006) ("The documents in question were gathered during the execution of a search warrant whose lawfulness and manner of execution have not, to this point, been challenged.  The Government, having lawfully conducted the initial seizure of evidence, possesses a strong interest in prosecuting crimes revealed by the same."). Here, the documents in question were gathered during the execution of a search warrant whose validity and manner of execution has not been challenged via a Rule 41(g) motion for the return of property.  A magistrate judge has already found there was probable cause to believe that the defendant's jail cell would contain evidence relevant to crimes under investigation.  The government (and this Court) possess a strong interest in prosecuting crimes that may be revealed by recovered documents.  Thus, the government should have the ability to mount meaningful challenges to any assertions of privilege.  Defense counsel's inability to recognize the potential relevance of documents located within the defendant's cell, as illustrated by his contention that only outgoing mail could contain any relevant evidence (ECF No. 89 at 5), only serves to demonstrate that a panel of non-governmental attorneys is more likely than a governmental filter

9

team to make uninformed privilege determinations and will be ill-suited to recognize the applicability of any privilege exceptions.

Third, "courts appear to be more willing to approve the use of government taint teams when there is a more extensive number of documents at issue." *Jackson*, 2007 WL 3230140 at *5, citing *Hicks v. Bush*, 452 F.Supp.2d at 103 n. 12.  Notwithstanding the fact that the documents seized here do not seem to be voluminous, this factor does not ultimately tip the balance against the use of a government filter team given the in-depth understanding of investigation facts that will be required to make fully-informed arguments as to privilege.

Finally, "courts have given at least some consideration to the filter team's effect on the 'appearance of fairness.'" *Jackson*, 2007 WL 3230140 at *5 (citing *Neill*, 952 F.Supp. at 841 n.14).  While this factor can never be made to weigh in favor of the government, the government has undertaken many steps to counter an appearance of unfairness here.  These steps include designing written (and now public) protocols pursuant to which a filter team composed of individuals unaffiliated with this case will be established; the prosecution team will be walled off from potentially privileged materials; and the filter team will seek input from defense counsel, err in favor of the defendant in categorizing documents, provide defense counsel an opportunity to object (except when disclosing materials could seriously undermine the government's investigation); and obtain this Court's approval before disclosing any potentially privileged documents to the prosecution team.

### III. This Court Should Reject the Defendant's Proposed Filter Protocol Because it Fails to Adequately Balance the Government's Investigative Needs with the Defense Needs for Protection.

Pursuant to the defendant's proposed filter protocol: (1) defense counsel will review all seized materials and turn over to the government any material he deems non-privileged; (2) a

Court-appointed filter team will segregate any material deemed by it to be privileged or outside the ambit of the warrant; and (3) the remainder of the material will be filed *ex parte* with the Court with a copy to defense counsel, so that the Court may adjudicate the disclosure of any materials to the government after giving defense counsel an *ex parte* opportunity to be heard. The defendant's proposed protocol ought to be rejected, in that it fails to account for the interests of the public, law enforcement, and this Court in the enforcement of criminal law and would add unnecessary time and expense to the government's investigation. Further, the cases cited by the defendant in favor of such an approach are distinguishable.

First, counsel claims that his performance of the initial review will ease the workload of the filter team. With all due respect, the government is not requesting the defense's assistance in carrying out its investigation. Moreover, given the small volume of materials involved, and the fact that the government's protocol also does not require an adjudicatory process for the disclosure of non-privileged materials, any efficiency gained by obtaining defense counsel's agreement at the outset is questionable—particularly since there is a strong likelihood that any relevant materials will be subject to a classification of potential privilege and require further litigation.

Second, citing cases to the effect that government filter team attorneys are more likely to make mistakes, the defendant proposes that a team of non-government attorneys review the remainder of the materials and segregate material it deems privileged or outside the scope of the warrant. The cited cases are not persuasive on the facts present here. In *In re Grand Jury Subpoenas,* 454 F.3d at 516, the Sixth Circuit was presented with the question as to whether counsel for a potential privilege holder or the government had the right to conduct a privilege screen of documents responsive to a grand jury subpoena issued to a third party. While the Court expressed concerns that a government filter team might have an overly restrictive view of

11

privilege, the Court also explicitly distinguished cases like this one, where the government has already obtained physical control of potentially-privileged documents through the execution of a search warrant. In those situations, the Court noted that use of a filter team was actually respectful of the protection of privilege. *Id.* at 522-23.

The defendant's reliance upon *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 177 (4th Cir. 2019) is also misplaced. There, federal agents obtained a search warrant for a physical law office, at which roughly 20 attorneys worked, seeking files related to one criminal attorney's representation of a single client—who, besides being the target of a criminal investigation, also was an attorney. *Id.* at 165, 168. The warrant permitted the agents to seize approximately 52,000 emails from the criminal attorney's firm email account, of which—unbeknownst to the issuing magistrate judge at the time of the warrant's issuance—only 116 (0.2%) were responsive to the warrant as being to, from, or about the particular client. *Id.* at 168. Further, attorneys at the law firm—including the attorney whose emails were seized—were involved in the criminal defense of third-party defendants who were being investigated or prosecuted by the same U.S. Attorney's Office conducting the investigation that spawned the search warrant. *Id.* at 168-69. Finally, the filter protocol permitted the filter team to contact firm clients on an *ex parte* basis to seek waiver of their attorney-client privileges. *Id.* at 166. The search here is wholly distinguishable, in that it involved the defendant's jail cell and mail, not the physical premises of a law firm, and so there is very little likelihood that unresponsive privileged materials subject to no applicable exceptions were obtained. Further, only a small volume of materials was seized, and based on the search warrant return, there is ample reason to believe those materials will contain information that is both responsive to the search warrant and subject to legitimate and fact-intensive arguments around privilege issues.

In support of his request that a team of non-government attorneys review the remainder of the materials, the defendant also relies upon cases in which courts have appointed special masters to conduct a filter review. In criminal cases, special masters are appointed by courts "pursuant to Federal Rule of Civil Procedure 53(a)(1)(C) and pursuant to their inherent and equitable powers and authority." *In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *1 (S.D.N.Y. Dec. 8, 2021) (internal quotation omitted). In pertinent part, Rule 53 stipulates that a special master may be used if warranted by "some exceptional condition" or to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1).

That special masters represent an option in some rare circumstances does not mean that they represent a reasonable balance of interests here. The cases cited by the defendant in favor of using non-government attorneys all involved searches of law firms and the recovery of substantial nonresponsive privileged information associated with clients wholly unrelated to the government's investigation. Thus, they do not tip the balance in favor of the defendant's suggested approach. *See Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 961 (3rd Cir. 1984) (finding that the government's search of a law firm "completely disregarded any concept of the attorney-client privilege" and "potentially or actually invaded the privacy of every client of the Klitzman firm," the government having taken "not one stop to minimize the extent of the search or to prevent the invasion of the clients' privacy guaranteed by the attorney-client privilege"); *Stewart*, 2002 WL 1300059, at *8 (concluding that case involving search of defendant's law office "presented a number of extraordinary circumstances that favor the appointment of a Special Master to perform an initial review of the materials for privilege and responsiveness"); *United States v. Gallego*, 2018 WL 4257967 (D. Ariz. 2018) (noting "the Government has not identified any cases approving use

of taint teams in situations like the one presented here, where materials—including active case files—have been seized from the law office of a criminal defense attorney).

For the reasons already elaborated in Part II above, the reasonable balance here weighs in favor of using a government filter team to perform the initial review of materials, while providing the defendant a chance to raise objections to disclosure with the Court. "In most cases, so long as the putative privilege holder (or its designee) has notice and the opportunity to raise objections with the court before potentially privileged materials are disclosed to members of the prosecution team, it offends neither the law of privilege nor the Fourth Amendment to allow the Government to make the first pass." *United States v. Avenatti*, 559 F. Supp. 3d 274, 284 (S.D.N.Y. 2021). A team of non-government attorneys, possibly without a prosecutorial background, and unfamiliar with the protective order in this case, the hearings and correspondence in which the defendant's access to evidence.com was discussed, the contents of the defendant's extensive text messaging from jail, and any other evidence the government may develop, simply cannot be trusted to identify materials that may be relevant to the government's investigation or to make full-throated arguments in support of waiver or application of the crime-fraud exception. Given the nature of the investigation, a team of such individuals could easily and understandably misclassify relevant documents that should be subjected to vigorous argument about waiver and/or the crime-fraud exception as privileged materials. Notably, under the defendant's proposal, such documents would never be subjected to any further review, even by the Court, and thus the loss of evidence seized by the government pursuant to a valid search warrant would be known to no one but the defense.[8]

---

[8] To the extent the defendant further suggests (without citing any cases) that the team of non-government attorneys would also segregate material it deemed outside the scope of the warrant, his proposal should be rejected in its entirety. The purpose of the filter protocol is to adjudicate privilege issues. The defendant is not the government's partner in its investigation of him and cannot determine at the outset what information is responsive to the warrant. "Ensuring that a search is reasonably executed within the strict bounds of the warrant's terms is generally a judicial

Third, regarding the defendant's proposal that the Court should resolve any disputes over work-product and attorney-client-privilege issues, we agree. However, for all the reasons previously discussed, we do not agree that defense counsel should be heard *ex parte*. Notably, the cases cited by the defendant in favor of judicial adjudication also stand for the proposition that the government is entitled to be heard. In *Korf*, although the approved filter protocol allowed the intervening privilege holders to conduct the initial privilege review, the intervenors were required to provide a privilege log to the government's filter team, who could then challenge any privilege designation on that log. *Korf*, 11 F.4th at 1243, 1249-50. Likewise, in *United States v. Avenatti*, 559 F. Supp. 3d 274, 283 (S.D.N.Y. 2021), the Court, citing *Grant*, 2004 WL 1171258, at *2, held that the Government should be allowed to make fully informed arguments as to privilege when documents have been lawfully seized pursuant to a valid warrant.

---

task on review of a suppression motion, rather than an *ex ante* consideration injecting judicial management on law enforcement's execution and subsequent handling of any information or items seized and retained as a result of the search." *See Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions That Are Currently in the Possession of L. Enf't In Washington D.C.,* No. 21-SW-233 (GMH), 2022 WL 998896, at *14 (D.D.C. Mar. 14, 2022) (citing *Dalia v. United States*, 441 U.S. 238, 257 (1979) ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant ....")). If the defendant believes the government has seized materials outside the scope of the warrant, he has remedies that include motions for return of property and to suppress evidence pursuant to Federal Rules of Criminal Procedure 41(g) and (h).

### IV. Conclusion

Overall, the government's proposed filter protocol appropriately balances significant investigative needs against the important, but not impervious, attorney-client privilege and work product doctrine. The judiciary's role in issuing search warrants—and its ability to attach conditions to the issuance of those search warrants to ensure that the resulting searches are reasonable—allows it to protect attorney-client confidences and attorney work product while also appropriately accounting for other important societal interests. Here, the government's proposed filter protocol is a reasonable, and reasoned, exercise of this Court's authority and should be authorized.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: _/s/ E. A. Miller_

Emily A. Miller
Chief, Discovery Unit
Capitol Siege Section
D.C. Bar No. 462077
601 D Street, N.W.
Washington, D.C. 20530
202-252-6988
Emily.Miller2@usdoj.gov