```
 1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2

 3      United States of America,      ) Criminal Action
                                       ) No. 21-cr-268
 4                     Plaintiff,      )
                                       ) TELEPHONIC
 5      vs.                            ) MOTION HEARING
                                       )
 6      Jeffrey McKellop,              ) Washington, DC
                                       ) May 18, 2022
 7                     Defendant.      ) Time:  3:00 p.m.
        _____
 8
                        TRANSCRIPT OF MOTION HEARING
 9                            HELD BEFORE
                    THE HONORABLE JUDGE CARL J. NICHOLS
10                     UNITED STATES DISTRICT JUDGE

11      _____

                          A P P E A R A N C E S
12
        For Plaintiff:      Mary Lyle Dohrmann
13                          Emily Miller
                            Maria Fedor
14                          John Crabb
                            U.S. ATTORNEY'S OFFICE FOR D.C.
15                          555 4th St, NW
                            Washington, DC 20530
16                          (202) 252-7035
                            Email: Mary.dohrmann@usdoj.gov
17                          Email: Emily.miller2@usdoj.gov
                            Email: Maria.fedor@usdoj.gov
18
        For Defendant:      John C. Kiyonaga
19                          JOHN C. KIYONAGA LAW OFFICE
                            600 Cameron Street
20                          Alexandria, VA 22314
                            (703) 739-0009
21                          Email: Jkiyonaga@earthlink.net

22      _____

23      Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                                 Official Court Reporter
24                               United States Courthouse, Room 6523
                                 333 Constitution Avenue, NW
25                               Washington, DC  20001
                                 202-354-3267
```

1          THE COURTROOM DEPUTY:  Good afternoon, Your Honor.

2     This is criminal case year 2021-268, *United States versus*

3     *Jeffrey McKellop*, who is not present on the phone.

4          Counsel, please introduce yourselves for the record,

5     beginning with the government.

6          MS. MILLER:  Good afternoon, Your Honor.  This is

7     Emily Miller for the United States.

8          MR. KIYONAGA:  Good afternoon, Your Honor.  This is

9     John Kiyonaga for Mr. McKellop.  Thank you for docketing this

10    matter so quickly.

11         THE COURT:  Ms. Leslie, is the public line open or is

12    this a sealed hearing right now?

13         THE COURTROOM DEPUTY:  The public line is open.  I

14    wasn't aware that you wanted it to be sealed.  I can disconnect

15    the public line, if you need me to.

16         THE COURT:  Well, I have -- I have a public motion

17    from Mr. Kiyonaga, but then there are some sealed materials

18    from the government.

19         Ms. Miller, does the government believe that it would

20    be prudent to seal this hearing, at this time at least?

21         MS. MILLER:  Your Honor, at this point, we're over

22    with the defendant, so I don't actually have a problem with the

23    hearing being unsealed.  But I would request that we not unseal

24    the actual motion at this point because we would need to submit

25    a copy with redactions for both the warrant affidavit and for

1    the -- potentially also for the other motion, for the audit

2    trail.  We've disclosed both to the defense.

3              THE COURT:  Very well.  We can proceed.  My concern

4    was not the general topics, but anything that might be specific

5    in them.  So I think so long as everyone speaks generally, I

6    think we'll be fine.  So for present purposes, we'll continue

7    with the hearing in a public manner.  We will maintain those

8    papers under seal unless and until redacted versions are filed.

9              So, Mr. Kiyonaga, your motion really seeks a hearing

10   to talk about three things:  A, is how and why of the

11   government's decision and a request that the government be

12   ordered immediately to disclose the affidavit tendered in

13   supported of the application for the search warrant.  You agree

14   that you now have those, correct?

15             MR. KIYONAGA:  I do, Your Honor.  And I've had a

16   chance to review it.  Thank you.

17             THE COURT:  So it seems to me that the principal and

18   perhaps only issue that we should be discussing today is

19   whether and to what extent the government is taking steps to

20   safeguard any attorney-client, work product-related material.

21   Is that fair?

22             MR. KIYONAGA:  Your Honor, I also refer to such other

23   relief as the Court might deem appropriate.  I do believe the

24   way the government has gone on about this is sanctionable, and

25   I would like to explain why.

1          MS. MILLER:  Your Honor, before Mr. Kiyonaga goes on,

2     I want to make sure that the Court is aware there were other

3     government attorneys on the line.  I thought they might jump

4     in.  So the Court is aware, I'm here with Mary Dohrmann, Maria

5     Fedor, and John Crabb, as well.

6          THE COURT:  Thank you for that.  Let's start first,

7     Mr. Kiyonaga, with the question of -- before we get to

8     discussion of sanctions, which seems to me quite premature --

9     but, let's at least have a discussion around your position that

10    the government is obligated to review the materials that have

11    been seized in a particular manner.  I think -- I understand

12    your point.

13          Why don't we ask first, Ms. Miller, what the

14    government's view is on that question?  And what, if anything,

15    the government intends to do as a result.

16          MS. MILLER:  Yes, Your Honor.  We do object to that

17    proposal and we intend to move forward with a filter team, as

18    is our standard practice in the search warrant case.  Typically

19    we would appoint a filter attorney.  We have a filter agent and

20    a filter supervisor to oversee the filter team.  And these

21    materials were received and were sequestered immediately

22    because we always have the intent of having a filter team to

23    ensure that filtered materials are -- or, potentially filtered

24    materials could be segregated.

25          So nobody has begun reviewing them yet.  We are happy

 1    to take Mr. Kiyonaga's input on those protocols.  In fact, my

 2    understanding -- or, I've seen, the trial team has reached out

 3    to him and requested the names of any members of the legal

 4    defense team.  And he gave some, but we requested any that were

 5    not already on our list.  And, of course, to the extent that

 6    there are specific types of materials that Mr. Kiyonaga

 7    believes we should be on the lookout for, we would have a

 8    discussion to filter attorneys protocols to ensure that those

 9    materials could be segregated and then, pursuant to the

10    protocols, generally speaking, that we would propose,

11    generally, typically segregated and not reviewed beyond the

12    need for the filter team to determine if they were in fact

13    privileged.

14            And materials, if there is a question as to whether

15    they are privileged, would be shared with defense counsel so

16    that he could have an opportunity to object.  And that matter

17    could be heard outside of, you know, hearing of the trial team,

18    just with the filter team, either before this Court or before

19    the magistrate judge, at this Court's discretion.

20            THE COURT:  So, Ms. Miller, thank you for that.  Is

21    it the government's position that -- or, would the government

22    agree that it would not review any materials seized from

23    Mr. McKellop's jail cell unless and until Mr. Kiyonaga at least

24    has an opportunity to consult with the government and we can

25    litigate, if necessary, any issues around the filter team

1    protocols?

2              MS. MILLER:  Exactly, Your Honor.

3              THE COURT:  So, Mr. Kiyonaga, the government has now

4    represented that it is not presently reviewing any materials

5    and will not review any materials until the filter team

6    protocols can be worked out, first, through consultation with

7    you, and then to the extent that there are any remaining

8    issues, then through litigation before me.

9              So, why isn't all that, at least at this time,

10   sufficient to satisfy you that I don't need to do anything --

11   although I'm of course here -- to resolve any disputes about

12   this whole scheme?

13             MR. KIYONAGA:  Your Honor, first of all, I'm assuming

14   that the scenario the government describes would entail an

15   opportunity for me to review all the documents that the filter

16   team envisions as passing to the line prosecutors.  That said,

17   the government describes the use of a filter team as standard

18   practice.  There's nothing standard about these cases, Your

19   Honor; they're unprecedented in their size and their scope and

20   their number.  Everything about them is unprecedented, so I'm

21   not sure we need to be governed by standard practice as it's

22   defined by the government.

23             But, I'm also concerned that the matter be left to

24   the unilateral discretion of the filter team at this juncture,

25   since the filter team is going to be an attorney or several

1      attorneys who are employed by the Department of Justice.  And I

2      have a concern -- I'm not seeking specific sanctions at this

3      juncture, Your Honor -- but I do have a very pronounced concern

4      about the way the government went about this.

5              The government apprised Your Honor of its concern

6      about a possible breach of the protective order in its March

7      sealed ex parte pleading regarding the defender service.  So

8      the Court was fully apprised of the government's concern and

9      its general allegations, and yet the government chose, rather

10     than seeking a search warrant from Your Honor, who has had

11     responsibility of this case for about a year, still back to a

12     magistrate to seek it.  And, of course, I had no clue that this

13     was happening, and presumably neither did the Court.

14             But, that is concerning to me.  And I'm -- I'm

15     reluctant, primarily because I don't see that a search of a

16     cell is reasonably likely to produce evidence pertaining to a

17     breach.  The government adduces in the search warrant

18     affidavit, which is sealed, but it adduces with a fair amount

19     of particularity the instances of breach and goes into a

20     specific number of IP addresses of unauthorized users and a

21     number of instances of breach.  It even has the temerity to

22     suggest a reporter and fund raiser may have committed some sort

23     of misconduct, which is ludicrous, since we would want it

24     subject to any manner of protective order from this Court.

25             I think the matter of fact is that the spirit in

1    which the government has gone about this is very troubling.

2    And if you -- if you can appreciate the nature of this

3    discovery, it's extremely confusing.  I've been doing this for

4    30 years.  We've got global discovery that's close to done on a

5    couple of government websites, you need to be credentialed to

6    get in, the credentials keep changing.  In fact, I've hired a

7    young attorney specifically and exclusively to get control of

8    discovery because I can't.

9         But, this discovery is divided between global, for

10   everybody, also 650-plus defendants, and individualized.  Both

11   tranches include sensitive and highly sensitive documents.  And

12   my understanding is that the jail commingles all these

13   documents on tablets that are made available to all the inmates

14   in the J-6 pod at in CTF.  And they review those in a common

15   area, so they're able to look over each other's shoulders,

16   wittingly or not, as things are being reviewed and passcodes

17   are being entered.

18        So the notion of a firewall between individual

19   defendants and their respective defense teams as pertains to

20   this discovery is wholly unrealistic, and I think augurs

21   against any conclusion, any reliable conclusion on the part of

22   the Court that Mr. McKellop acted in bad faith.  If the Court

23   remembers -- I don't want to go into too much detail as to the

24   search warrant affidavit, but he says in a text, which appears

25   to be a candid exchange with somebody else, that he was

1    confused and he's very sorry.  And given the way that the jail

2    manages that discovery, that's not an unreasonable conclusion

3    for an individual to draw.

4           I can tell the Court, I've never been able to confirm

5    the way the discovery is stored, reviewed or made available in

6    the jail because they won't let me.  When I finally got

7    discovery in to Mr. McKellop, after three attempts, we were

8    interrupted two minutes into our meeting when they came in and

9    removed the tablets that we were supposed to use to review it,

10   and they did not offer a satisfactory explanation.  I reference

11   that in my motion for reconsideration of bond.

12          The practical fact is discovery in this case is a

13   mess.  The staff at CTF makes it even more of a mess.  And

14   regardless of what was disseminated or not by Mr. McKellop,

15   it's extremely unlikely, in my view, to find in an inmate's

16   cell evidence of dissemination a violation of a protective

17   order because all -- any dissemination would be outgoing,

18   either in the form of text, a phone call, or letter.  That's

19   all gone.

20          They don't keep carbon copies in their cells of

21   what's already gone out.  What they do keep are notes that they

22   take by hand and that Mr. McKellop took by hand on my

23   instruction, based on his review of the discovery, so that we

24   could review them together and formulate our defense

25   accordingly.  That, to me, is the most likely product of a

1    search of his cell.  That's what's in the government's

2    possession right now and that is what's unsettling because that

3    is the most foreseeable product of the search and it calls into

4    question, in my view, the government's motives in doing this.

5              THE COURT:  Mr. Kiyonaga, I understand all those

6    points.  I also understand the timing of the application to me

7    and the warrant application, but we're really not here at this

8    time to litigate either the question of whether the warrant was

9    appropriately procured or whether, at the end of the day,

10   Mr. McKellop violated a protective order or some other statute.

11             We are here principally -- maybe even only -- to

12   decide whether, in the near term, the procedure that the

13   government has said it intends to follow is sufficiently

14   protective of any potential work product or attorney-client

15   privileged communication that I don't need to otherwise order

16   additional relief on that question.  As I understand it, the

17   government has represented that no one from the government will

18   review any materials seized from Mr. McKellop's cell until two

19   things happen:  One, they confer with you regarding any

20   thoughts, changes, recommendations or objections you have to

21   their protocol.  And then, two, assuming that there are

22   continued objections, those objections get resolved by me.  And

23   in light of those representations from the government, I ask

24   you again, what more at this time on this question do you think

25   I should be doing?

1          MR. KIYONAGA:  Your Honor, it's certainly a help that

2     I would have the opportunity to review any documents to be

3     disclosed to the prosecuting attorneys and to discuss with the

4     filter attorney or team --

5          THE COURT:  Mr. Kiyonaga, I don't know whether that

6     is part of the government's plan.  I don't know for sure.

7          MR. KIYONAGA:  Your Honor --

8          THE COURT:  They intend -- as I understand it, as I

9     understand it, the government intends to run its protocol by

10    you.  That may or may not include the ability for you to review

11    documents before they go outside the filter team.  I don't

12    know.  But, in light of the representation that they don't do

13    anything until you have a chance to participate in the

14    development of the protocol or the refining of it, what am I

15    supposed to do right now?

16         MR. KIYONAGA:  Your Honor, I would object to any --

17    any approach that does not include my review of any documents

18    that have been seized prior to their disclosure to the line

19    prosecutors.  And I -- frankly, I don't think that it's proper

20    under these circumstances, particularly the specific

21    circumstances of this seizure, to leave the initial review in

22    the hands of any DOJ attorney, whether or not there's, you

23    know, a firewall between him and her as the prosecution team.

24    I don't think the Court would afford a similar latitude to a

25    defense attorney if there were an issue of good faith

1   compliance and as well as a of lack of transparency in the

2   review.  So I don't think it should -- that sort of latitude

3   should be enjoined by the government.

4         I'm very concern about the fact that they chose to

5   search his cell.  I don't think that was reasonably calculated

6   to shed more light on the dissemination of restricted material,

7   because I don't see how it could.  But I do see it very

8   foreseeably capturing privileged material and I don't think it

9   should be left to a DOJ attorney to make a unilateral call as

10  to what goes to the prosecutors for the prosecution team or

11  not, and certainly not without my for -- review beforehand of

12  anything that's transmitted.

13        But I don't think at this juncture it should be left

14  to the internal devices of the DOD -- I'm sorry the DOJ to

15  segregate documents and review them.  I think that initial

16  review, that filter, if you will, should take place before an

17  independent entity that's not part of the U. S. Government.

18        THE COURT:  Ms. Miller?

19        MS. MILLER:  Your Honor, obviously, as I've already

20  stated, we disagree.  We believe that the use of a filter team

21  is appropriate and standard in this District.  And I hope the

22  Court is prepared to rule that that's accurate today so that we

23  can move forward with discussing the protocols with defense

24  counsel.  And, if not, then I would request an opportunity to

25  brief this matter further.

1              THE COURT:  Well, wait.  So, it seems to me -- what I

2      thought I had heard was you were agreeing not to review

3      anything at this time and then you were going to at least meet

4      and confer, so to speak, with Mr. Kiyonaga to see if agreement

5      could be reached on a protocol, to include a filter team,

6      hopefully, from your perspective, but he may have different

7      views.  I don't know what the results of those discussions are

8      going to be.

9              Why is it not appropriate for me to just say at this

10     time, step one, no documents are reviewed unless and until the

11     parties have had time to see if they can work out what happens

12     with the documents?  If they can work out what happens with the

13     documents, whatever that is, then we have an agreement.  If

14     they can't work out what happens with those documents -- and by

15     the way, those documents are still not being reviewed, in my

16     view, until this happens.  If they can't work out what happens,

17     then the parties can stake out their respective positions in

18     papers filed before me that I can then decide based on the

19     negotiations and the respective positions, including ones that

20     have been articulated on this call by both sides.  I'm not

21     prepared --

22             MS. MILLER:  Yes, Your Honor.

23             THE COURT:  -- to say that the filter team as

24     proposed by the government is proper, since I haven't had a

25     single piece of paper filed in front of me by you or

1    Mr. Kiyonaga on this question.

2              MS. MILLER:  Yes, Your Honor, that is the appropriate

3    way to proceed.  That would be great.

4              MR. KIYONAGA:  I'm sorry, Your Honor.  I'm still

5    confused.  My impression is that -- the government has reached

6    out and asked me to provide any names of additional parties or

7    individuals providing me with advice to Mr. McKellop.  And I

8    have a couple of associates assisting me and their names would

9    certainly be appropriate.  But, I don't know exactly what is

10   the, quote, unquote, filters protocol.

11             But I can certainly tell the Court that if it's a

12   matter of looking at the documents to see whether the names of

13   any of the lawyers are on them, that's not going to keep out

14   privileged information.  I mean, I doubt very much that

15   Mr. McKellop --

16             THE COURT:  I understand.  We're not doing this on

17   the phone right now.  I understand what you're saying.  I

18   understand -- the parties may be very far apart.  It seems to

19   me that both sides, that there is a ships-passing-in-the-night

20   component to this.  And for that very reason I don't want to

21   resolve this on the fly, with the parties not having actually

22   talked to one another, both about specific protocols, exactly

23   what each has in mind, exactly what each other proposes.

24             What you want is you want no review to occur unless

25   and until you've had an opportunity to, you know, attempt to

1    get your protocol in place, perhaps, or object to theirs.  And

2    I am giving you that today.

3            The government is ordered -- it has already agreed to

4    and has committed to, but it is ordered by me not to review any

5    materials seized in Mr. McKellop's cell unless and until two

6    things have happened:  One, the parties have met and conferred

7    over appropriate protocols.  And, two, failing to reach

8    agreement, the parties stake out their respective positions in

9    filings in front of me.  It's pretty simple, that that's what

10   has to happen.

11           MR. KIYONAGA:  Understand, Your Honor.  I didn't mean

12   to speak over you.  But I understand the Court's ruling and I

13   will proceed accordingly.

14           THE COURT:  To be very clear, I am not expressing any

15   view at this time about what protocol or specific sub-protocol

16   issue may or may not be appropriate.  You're going to have the

17   opportunity to argue that traditional filter team protocols

18   aren't adequate in the January 6 context, or at least are

19   inadequate in this contact.  You can make those arguments to

20   the government.  Should they not be responsive to those

21   concerns, you can bring them to my attention, I will resolve

22   them.  I am not doing it here.

23           Conversely, I'm not blessing the government's

24   proposal at this time.  All I know is that we are pausing the

25   review by the government of the documents unless and until

1    those two steps can occur.

2            So, as to the meet and confer, is there any reason

3    why the parties are unable to meet and confer on these

4    questions to see if they can reach agreement by close of

5    business Friday, May 20th?  Is that a problem from the

6    government's perspective?

7            MS. MILLER:  Your Honor, the only problem from my

8    perspective is I am on a beach in the Caribbean and I will not

9    be returning to the continent of the United States until this

10   weekend.  So if we could have until the end of next week, that

11   would be a little bit more feasible for me.

12           THE COURT:  Mr. Kiyonaga, do you object to having

13   until May 27th to try to work this out with the government,

14   recognizing again that there will be no review of documents in

15   the interim?

16           MR. KIYONAGA:  I do not object, sir.

17           THE COURT:  Okay.  So the parties are ordered to meet

18   and confer regarding the protocol of the review of these

19   materials, and to do so no later -- to complete their meet and

20   confer no later than May 27th.

21           Now, because it's possible that the parties might not

22   reach agreement on these issues, do the parties have a problem

23   with filing their respective positions, if agreements have not

24   been reached, filing briefs of no more than ten pages on or

25   before June 1st?  Can the government make that work?  Again,

1    the meet and confer will have concluded the Friday before.

2          MS. MILLER:  Yes, Your Honor.  May I ask, do you want

3    us to submit simultaneous briefs or do you want to set a

4    briefing schedule?

5          THE COURT:  Well, I'm trying to truncate this and I

6    was trying to do simultaneous briefs.  But I'm happy to

7    consider an alternative, if you like.

8          MS. MILLER:  It just might be simpler for us to

9    respond to whatever the complaints about our proposed protocols

10   are, should there be any, by having the defense file first.

11         THE COURT:  Mr. Kiyonaga?

12         MR. KIYONAGA:  I don't object to that, Your Honor.

13         THE COURT:  So why don't you, Mr. Kiyonaga, assuming

14   this works with your schedule, lodge your objections, if any,

15   to the government's protocol position, you lodge those no later

16   than close of business June 1st.  And the government can

17   respond to those objections no later than close of business

18   June 3rd.

19         And then if I decide that I need to have a hearing on

20   those objections, I can do so after seeing the respective

21   positions on paper.  And should the parties work out an

22   appropriate protocol that is acceptable to everyone, I would

23   ask that you inform the Court that you have reached that

24   agreement, and perhaps even the agreement itself, by May 31st.

25         So, to be very clear, the government is ordered to

1   not review any of the materials seized in Mr. McKellop's cell

2   at this time, unless and until these protocol issues get worked

3   out.  The parties are ordered to meet and confer on the

4   question of the appropriate protocol and to complete that meet

5   and confer no later than May 27th.  Should the parties reach

6   agreement on protocol, I would like to be so informed by May

7   31st, including very likely what the protocol is.

8           If the parties have been unable to reach agreement on

9   some or all of the protocol, Mr. Kiyonaga/Mr. McKellop shall

10  lodge objections to the -- his continuing objections, whatever

11  they may be, no later than close of business June 1st, and the

12  government shall respond no later than close of business June

13  3rd.

14          In the interim, of course, no materials will be

15  reviewed.  Is that clear enough?  Ms. Miller?

16          MS. MILLER:  Yes.  Your Honor, there's two other

17  matters, and I don't know if the Court would like to address

18  them now.  One is I don't know if the Court -- if this is an

19  appropriate time, if the Court intends to rule on the audit

20  trail motions that we submitted, now that --

21          THE COURT:  It seems to me that that issue is now --

22  has been disclosed to Mr. McKellop, to Mr. Kiyonaga.  And why

23  shouldn't they have an opportunity to respond to the

24  government's motion?

25          MS. MILLER:  I -- anticipating that that might be the

1   Court's position is why I wrote this.  And this might be a good

2   time to discuss an appropriate time for response to that

3   motion, which has also been shared with him.

4           THE COURT:  Yes.  So, Mr. Kiyonaga, obviously we're

5   talking about the motion that was filed ex parte with me, which

6   I have not decided yet, obviously, seeking to get the

7   production of the audit trail.  You now have that motion.

8   Assuming you intend to oppose it, by when could you file an

9   opposition?

10          MR. KIYONAGA:  Your Honor, would the 27th of May be

11   sensible?

12          THE COURT:  Ms. Miller, is that -- to line these up

13   to some extent, does that work?

14          MS. MILLER:  Yes, Your Honor.  If we could do it any

15   sooner, that would be wonderful.  But we can accept May 27th.

16          THE COURT:  Obviously, I'm --

17          MR. KIYONAGA:  Your Honor --

18          THE COURT:  -- in a looming trial date here.  Let me

19   ask you, Mr. Miller, or your colleagues, what, in your view,

20   what effect, if any, do these proceedings have on our early

21   July trial date?

22          MS. MILLER:  I don't think any, because none of this

23   conduct is charged in the current indictment.  So, I think

24   these are moving on two different -- at least for now, these

25   are moving on two different schedules.

```
 1          THE COURT:  Fair enough.  So at least the
 2   government's present intention is to not add these -- or, not
 3   to add any potential charges relating to these issues we've
 4   been discussing today to the currently pending indictment?
 5   That's your present view?  I realize that may change.
 6          MS. MILLER:  That's our present view today.  And
 7   should that change, we'll let the Court know as soon as
 8   possible.  And, of course, there's also the possibility we
 9   might offer some of this evidence at trial, but I would need to
10   confer with the trial team here.  I really just came in to
11   manage the discovery and protective order issues.  And I think
12   we would need to talk about if and how we use this, whether it
13   constitutes, for example, potential 404(b).  And I don't think
14   anybody is ready to make those statements at this time.
15          THE COURT:  So if -- at least under the current
16   intention of the government, what is the problem then with
17   giving Mr. Kiyonaga until May 27th?  I understand you would
18   like to go faster than that, but considering that --
19          MS. MILLER:  Just wanted to move our investigation
20   along, Your Honor, and then to assure our law enforcement
21   partners that we're doing everything that we can to determine
22   the extent of this potential breach of sensitive and highly
23   sensitive material.
24          THE COURT:  So, I'm willing to give you more time,
25   Mr. Kiyonaga, than just a couple days.  But I do think I would
```

1    like a response to that motion on May 25th.  Because it may be

2    that that motion can be resolved on its own terms, even before

3    we worry about any lingering dispute regarding the protocol.

4           So I would like you to respond, Mr. Kiyonaga, by

5    close of business May 25, with any objections you have or

6    opposition you have to the government's motion to have me order

7    production of the audit trail.  Okay?

8           MR. KIYONAGA:  Understood, Your Honor.

9           THE COURT:  And, Ms. Miller, that sounded like there

10   was perhaps one other topic you would like me to address?

11          MS. MILLER:  Yes, Your Honor.  Thank you.  I just --

12   I wanted to alert the Court, so that the Court and Mr. Kiyonaga

13   could have a chance to confer and give respective positions,

14   but I believe we're very close to reactivating Evidence.com for

15   the inmates at the jail who have otherwise met the requirements

16   for having access to it, including signing attachment A to the

17   protective order and agreeing not to disseminate protected

18   materials outside of the jail.  And given where things are at

19   this point in time, I do not intend to request that

20   Mr. McKellop's account be reactivated.  I think that would

21   probably require some further discussion.  But I wanted to

22   alert the Court that that was our position.

23          THE COURT:  That is not a surprise.  I think -- I

24   appreciate being so alerted.

25          Mr. Kiyonaga, do you have any comment on that?  I

1      suspect that you may.

2              MR. KIYONAGA:  Your Honor, it's already -- it's

3      already extremely difficult to navigate the discovery, much

4      less review it.  We do have a looming trial date.  I do not

5      want to ask at this juncture for more time.  The Court has the

6      motion that I filed on Monday, seeking reconsideration of the

7      Court's earlier bond decision.  But as a practical matter, it's

8      very hard for me to see how I'm going to accomplish any

9      meaningful review of discovery if Mr. McKellop's Evidence.com

10     account is not -- is not reopened.

11             Until I try, it's hard to say.  But I've had a very,

12     very hard time accomplishing anything with Mr. McKellop in that

13     jail.  The jail seems to go out of its way to make what would

14     ordinarily be normal attorney-counsel (sic) interaction very,

15     very difficult.  And that's particularly true with the

16     discovery, as I mentioned earlier.  I didn't manage to convey

17     the discovery to him until the third attempt, and even then it

18     took over two weeks for it to get from the person I delivered

19     it to to Mr. McKellop.

20             So with that sort of track record it's very hard to

21     see how a meaningful review involving both Mr. McKellop and

22     myself can happen in a timeframe suitable for an early July

23     trial.

24             THE COURT:  These issues are obviously all

25     interrelated because to the extent that your client has a hard

1    time in the future reviewing documents because of inappropriate

2    past conduct -- not saying that's the case, I'm just saying

3    imagine that is the case -- that seems to be a different

4    question altogether than one in which your client has acted

5    altogether consistently with a protective order.  But it,

6    nevertheless, presents the question of how does one try a case

7    if the defendant, for whatever reason, is unable to review

8    relevant evidence?

9            And I think the government is appropriately -- and

10   from my perspective I appreciate them doing so -- alerting us

11   to the fact that this may very well be an issue, at least in

12   the near term.  And I suspect it may be the case that if it is

13   not willing to restore his access to Evidence.com, that that

14   might require some workaround.  But, at least no such

15   workaround is being proposed now.

16           So what I am going to do is I am going to take

17   this -- and thank Ms. Miller for the heads-up -- and hope,

18   perhaps, with too much optimism, that this is something that

19   might be able to get worked out by the parties, as well.

20           MR. KIYONAGA:  Your Honor, if I could just briefly --

21           MS. MILLER:  Thank you, Your Honor.

22           MR. KIYONAGA:  -- suggest that the simplest

23   workaround would be to release Mr. McKellop so that he can meet

24   with me in my office and discuss this.  I don't mean to segue

25   into another issue, it's beyond the purview of today's hearing.

1     But it is very, very hard to accomplish anything while he's at

2     CTF.

3             THE COURT:  And I absolutely appreciate that,

4     Mr. Kiyonaga.  But as you can imagine, it is not the only

5     consideration that is relevant to the question of detention,

6     which I have, obviously, passed on before and will take up very

7     soon, it seems to me, again.

8             MS. DOHRMANN:  And, Your Honor, this is AUSA Mary

9     Dohrmann.  If we could also address the bond review motion

10    deadlines?

11            THE COURT:  Sure.

12            MS. DOHRMANN:  Given when Mr. Kiyonaga's motion was

13    filed, the government's response would be due May 30th.

14    Speaking for myself, I have a few other filing deadlines in

15    that immediate timeframe.  And I can also represent that, as

16    we've stated before to Your Honor and to the defense, we do

17    anticipate a superseding indictment reflecting some additional

18    conduct.

19            For those reasons, the government would request that

20    its opposition deadline be extended by at least a week.  And,

21    accordingly, the defense deadlines extended as well.

22            THE COURT:  Ms. Dohrmann, the superseding indictment

23    will include additional conduct of the kind already charged and

24    not, I take it, consistent with what Ms. Miller said earlier,

25    not include conduct of the kind that we've been talking about

1    earlier in this hearing?

2         MS. DOHRMANN:  Yes, Your Honor.

3         THE COURT:  Okay.  Mr. Kiyonaga, what say you?  And I

4    should note that it is not as if this is the first time I will

5    have passed on the detention motion.  In a sense, this is a

6    motion for re-reconsideration.

7         MR. KIYONAGA:  I'm aware of that, sir.  My position

8    is it's -- the longer Mr. McKellop is detained pretrial, the

9    harder it is to justify being detained.  If there's a

10   superseding indictment -- it certainly sounds like there will

11   be -- it's almost certain it's going to have the effect of

12   augmenting the time necessary to prepare for trial.  That's

13   a -- a unilateral decision the government suggests, it's going

14   to have the practical effect of confining him further.

15        So I would oppose -- I would cite that as an

16   additional reason for his release.  But I don't -- it's hard

17   for me to see how -- I'm seeing a new indictment and as it

18   doesn't exist yet, it's hard for me to speculate at this moment

19   how much more time I'll need.  And certainly within the realm

20   of likely possibility that I'll need more time than I currently

21   have.  And I return to the point that that should be a factor

22   considered by the Court when it considers my latest motion

23   for -- my motion for reconsideration.

24        THE COURT:  Thank you.  Actually, the fact that I've

25   already passed on the detention question before, recognizing

1    that there are lots of related issues here, I do think it's

2    fine, in my view, for the government to have an extra week.  I

3    want to make sure that I continue to get this right.  The

4    government's opposition to that motion is now due, instead of

5    May 30 or 31, is due June 6th.  And, Mr. Kiyonaga, that would

6    give you until June 13th to reply.

7         Obviously, I will convene a hearing on that motion

8    should I decide it's warranted, as well as on all the other

9    issues that we've been discussing today.  But unless and until

10   I have the papers, I intend not to calendar a hearing.

11        And I recognize very well, Mr. Kiyonaga, your

12   position that on the one hand Mr. McKellop has been detained

13   for a long time and would like not to be.  And on the other,

14   that some of the -- some of the events, whether it's discovery-

15   related or superseding indictment-related or others may make a

16   trial in July very difficult and that would be related or at

17   least relevant to the detention question.  So, I'll have to be

18   thinking about all those things.  But for present purposes, I

19   think the government's opposition may be next and then you

20   reply no later than June 13th.

21        Are there other topics we should discuss today from

22   the government's perspective, Ms. Dohrmann or Ms. Miller?

23             MS. MILLER:  Not from me, Your Honor.

24             MS. DOHRMANN:  No, Your Honor.  Thank you.

25             THE COURT:  Mr. Kiyonaga?

1          MR. KIYONAGA:  Nothing here, Your Honor.  Thank you.

2          THE COURT:  Thank you, Counsel.

3          MS. MILLER:  Thank you, Your Honor.

4          MR. KIYONAGA:  Thank you, sir.

5                              *   *   *

6

7

8

9                CERTIFICATE OF OFFICIAL COURT REPORTER

10

11      I, JANICE DICKMAN, do hereby certify that the above and

12   foregoing constitutes a true and accurate transcript of my

13   stenographic notes and is a full, true and complete transcript

14   of the proceedings to the best of my ability.

15                    Dated this 13th day of June, 2022

16

17

18             _____

19             Janice E. Dickman, CRR, CMR, CCR
               Official Court Reporter
20             Room 6523
               333 Constitution Avenue, N.W.
21             Washington, D.C.  20001

22

23

24

25