IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES,          )<br>                         )<br>     v.                  )<br>                         )<br>JEFFREY McKELLOP,        )<br>     Defendant.         )<br>                         ) | Crim. No. 21cr268<br>Hon. Carl J. Nichols |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

Comes now Defendant Jeffrey McKellop, by counsel, and replies to the government's Opposition (Doc 101, "Opp") to his Motion to Compel Disclosure (Doc 98).

The government scoffs at Defendant's Motion to Compel Discovery of all communications between the Department of Justice ("DOJ") and the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee") - but relies on misdirection and *non sequitur* to do so.

**The Instant Motion Does Not Rely on Fed. R. Crim. P 16.**

The government states that Rule 16 does not contemplate the relief sought in the motion. Opp at 3. The motion, however, nowhere relies on Rule 16.

**The Instant Motion Does Not Allege Selective Prosecution.**

The government avers that defendant has produced no evidence of selective prosecution. Opp at 6. The motion, however, alleges a different variant of prosecutorial misconduct – namely, the intentional poisoning of the jury pool. The fact that two different branches of government, the Executive and the Legislative, Opp at 3, may have had a hand in the poisoning does not diminish the damage to Defendant's right to an impartial jury.

The "presumption of regularity" attached to the government's prosecution choices, Opp at 6, quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996), only prevails "in the absence of clear evidence to the contrary." *Id.* Any presumption of regularity in the broader context of prosecutorial misconduct as a whole (e.g., in intentionally poisoning a jury pool) should be no less vulnerable to evidence suggesting a lack of such regularity.

In fact, a prosecutor's poisoning of a jury pool stands among the most egregious examples of prosecutorial misconduct.

> "[Having done so] breached all standards of prosecutorial ethics, gave the government a surreptitious advantage in influencing public opinion, the venire panel, and the trial itself.

*United States v. Bowen*, 799 F. 3d 336, 353 (5th Cir. 2015).

Such conduct by a prosecutor falls within:

> "the category of errors capable of infecting the integrity of the prosecution to a degree warranting a new trial irrespective of prejudice.

*Id.*

The Committee's repeated publication of restricted discovery evidence and its members' express pronouncements of their intention to share the Committee's findings with the DOJ clearly suggest irregular decisions on the part of DOJ and/or the Committee and connote an order of reliability exceeding that of evidence merely "personal" or "anecdotal." Opp at 6, quoting *Armstrong*,

**Neither the Scope of the Committee's Hearings Nor the Breadth of Its Audience Supports a Denial of the Motion.**

The government takes the utterly untenable position that Defendant cannot claim individual prejudice since the Committee's hearings comprised the whole day as opposed to his conduct in particular. Opp at 2. As a member of the group demonized by the

Committee, however, Defendant is unquestionably prejudiced by the Committee's virulent portrayal of the day's protesters as a whole.

The government cites *United States v. Haldeman*, 559 F. 2d 31 (D.C. Cir. 1976) (*en banc*) (*per curiam*), to claim that the Committee's national audience should preclude venue relief. Opp at 1-2. *Haldeman* concerned the hearings of the Senate Watergate Committee. While both the Watergate scandal and the January 6th riot implicate concerns touching the entire nation, only the latter has unique pertinence to this District - being the locus of the mass violence in question and of the onerous security measures imposed for months afterwards.

## CONCLUSION

The government states:

> "The *voir dire* process can thus assure that no one who shares McKellop's view that the Select Committee hearings offer 'emotionally charged and prejudicial descriptions' (Mot 2) in a manner that prevents that person from fairly and impartially considering the evidence is seated on the jury.

Opp at 2-3.

The government appears to be saying that effective *voir dire* will preclude the seating of any venireman sufficiently astute to recognize the inherent bias of the Committee's hearings. Presumably, the government attaches no concern to the seating of veniremen not so endowed. Bias, however, is rarely the province of the astute.

        Respectfully Submitted,

        JEFFREY McKELLOP
        By Counsel

        _____/s/_____
        John C. Kiyonaga

        600 Cameron Street
        Alexandria, Virginia 22314
        Telephone: (703) 739-0009
        Facsimile: (703) 340-1642
        E-mail: john@johnckiyonagaa.com

        Counsel for the Defendant

## Certificate of Electronic Service

    I hereby certify that on July 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

        _____/s/_____
        John C. Kiyonaga