UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-268 (CJN) |
| v. : | |
| : | |
| JEFFREY MCKELLOP, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant, Jeffrey McKellop, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to dismiss the charges pending against him based on recent remarks by President Biden, which, he claims, have "irreparably poisoned the entire nation as a jury pool." ECF No. 114 at 1. McKellop fails to establish that he cannot obtain a fair and impartial trial in this district, much less that he cannot obtain a fair trial anywhere in the entire United States, and this Court should deny his motion.

### BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

1

On January 6, 2021, McKellop entered the restricted grounds of the U.S. Capitol equipped with flagpoles, a helmet, a tactical vest, protective eye wear, and a gas mask. McKellop remained in the area despite the police presence, flash bangs, and an audible dispersal order that played on a continuous thirty-second loop starting at 2:03 p.m. from a nearby amplifier. While on the west side of the Capitol, at approximately 1:02 p.m., 1:12 p.m., and 1:20 p.m., McKellop threw objects at officers protecting the Capitol.

Beginning at approximately 2:26 p.m., McKellop pressed toward the police line near the southwest scaffolding, while wearing his helmet and a gas mask. There, McKellop approached a line of MPD officers, including Sergeant K.M., Officer H.L., and an officer in a lieutenant's uniform. McKellop then assaulted officers by swinging his arms downward and also tried to grab a can of riot-control spray from the lieutenant's hand. Moments later, McKellop picked up a bottle and threw it at the line of officers. Next, he raised his middle finger. McKellop then motioned his hand inward, as though indicating for the officers to "come here." The officers did not, however, leave the line.

At 2:27 p.m., McKellop pressed forward toward the Capitol building, breached the line of MPD and USCP officers, and reached the bottom of the Inauguration scaffolding. There, McKellop grabbed at Officer J.M and pushed and struck Sergeant K.K. McKellop then assaulted Officer H.L. by shoving her to the side. All three officers wore marked uniforms.

A few seconds after apparently assisting an officer who fell to the ground, McKellop assaulted Captain D.A. underneath the Inauguration scaffolding by striking Captain D.A. in the face, causing him to suffer a serious laceration and scarring. McKellop then threw the flagpole, as though it were a spear, at Captain D.A.

At 2:28 p.m., McKellop attacked Officer H.F. from the back as the officer attempted to contain other rioters. Moments later, at approximately 2:32 p.m., McKellop threw another object at the officers protecting the Capitol. Thereafter, McKellop continued to press forward against the police line for several more minutes.

For this conduct, the grand jury charged McKellop with two counts of assaulting, resisting, or impeding officers using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b), and ten counts of assaulting, resisting, or impeding officers, in violation of 18 U.S.C. § 111(a)(1). Second Superseding Indictment, ECF No. 86. McKellop has also been charged with civil disorder, in violation of 18 U.S.C. § 231(a)(3); entering and remaining on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); disorderly and disruptive conduct on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); engaging in physical violence on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and engaging in physical violence within the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F). *Id.*

In March 2022, McKellop moved for a change of venue, ECF No. 53, and that motion remains pending. On July 25, 2022, this Court denied McKellop's motion to compel discovery of communications between the Department of Justice and the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol, discovery that he argued would allow him to supplemental his motion for a change of venue. ECF No. 98; Minute Entry (July 25, 2022).

## ARGUMENT

McKellop now moves to dismiss the Indictment in light of nationally televised remarks by the President of the United States on September 1, 2022, arguing that those remarks "intentionally and irreparably poisoned the entire nation as a jury pool." ECF No. 114 at 1. McKellop's motion fails for several reasons.

As an initial matter, McKellop cites no authority for the proposition that pretrial publicity can disqualify all prospective jurors in the "entire nation" and prevent a defendant from being tried *anywhere* for his crimes. The Supreme Court's and D.C. Circuit's decisions relating to venue provide no support for this extreme position. More than 140 years ago, the Supreme Court observed that "every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits." *Reynolds v. United States*, 98 U.S. 145, 155-56 (1878). And that court has made clear that the "mere existence of any preconceived notion as to the guilt or innocence of an accused, without more," does not require a change of venue. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* There is simply no reason to believe that 12 such jurors cannot be found in this District or in districts throughout the nation.

The D.C. Circuit held that a change of venue was not required in cases arising from the Watergate scandal, despite the fact that some of the publicity was "hostile in tone and accusatory in content." *United States v. Haldeman*, 559 F.2d 31, 61 (D.C. Cir. 1976) (en banc) (per curiam). The court observed that much of the pretrial publicity was "national in . . . reach" and that "[s]candal at the highest levels of the federal government is not simply a local crime." *Id.* at 64

4

n.43 (D.C. Cir. 1976). But the court found that venue was nevertheless appropriate in the District of Columbia, and it did not suggest that national coverage could disqualify all potential jurors across the entire country. *Id.* at 61.

Indeed, McKellop cannot point to a single case in our nation's history that has been dismissed—as opposed to transferred to another venue—because of concerns about juror partiality. In fact, courts have declined even to transfer venue (much less dismiss the charges) in some of the most high-profile prosecutions in recent American history. *See In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) (per curiam) (capital prosecution of Boston Marathon bomber); *Skilling v. United States*, 561 U.S. 358, 399 (2010) (fraud trial of CEO of Enron Corporation); *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) (trial of participant in 1993 World Trade Center bombing); *United States v. Moussaoui*, 43 F. App'x 612, 613 (4th Cir. 2002) (per curiam) (unpublished) (terrorism prosecution for conspirator in September 11, 2001 attacks); *Haldeman*, 559 F.2d at 70 (Watergate prosecution of former Attorney General John Mitchell and other Nixon aides). And even in *United States v. McVeigh*, 918 F. Supp. 1467, 1471 (W.D. Okla. 1996), which involved an act of domestic terrorism that killed 169 people, the district court transferred venue to an adjoining state; it did not dismiss the indictment entirely. McKellop fails to explain how the President's remarks make his case more difficult to obtain an impartial jury than other high-profile cases involving acts of violence.

Additionally, McKellop fails to account for the important role of voir dire in selecting an impartial jury. The primary safeguard of a defendant's right to an impartial jury is "an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (italics omitted). Thus, the best course when faced with a pretrial publicity claim is ordinarily "to proceed to voir dire to ascertain whether the prospective jurors have, in fact, been influenced by pretrial

5

publicity." *United States v. Campa*, 459 F.3d 1121, 1146 (11th Cir. 2006) (en banc).  "[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc) (per curiam).  "[*V*]*oir dire* has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981).  After a careful voir dire, this Court can select a jury from those residents who either did not watch the President's remarks or who, despite having watched the remarks, give adequate assurances of their impartiality.  *See Haldeman*, 559 F.3d at 62 n.35 (rejecting claim of prejudice even though "several jurors" had "seen portions of the televised Senate hearings" related to Watergate).

In addition to having no legal support, McKellop's argument rests on the incorrect factual assumption that the President's remarks have not only reached, but also "irreparably" prejudiced, ECF No. 114 at 1, every eligible juror in a nation of over 330 million people.  He provides no factual support for such a claim, failing to point to any evidence regarding how many people nationwide tuned in to the President's remarks on September 1, 2022.  Moreover, while the President did mention "MAGA Republicans," the only two remarks by the President specific to January 6 attack at the Capitol were regarding those who stormed the Capitol in general and a reference to law enforcement being brutally attacked on January 6, 2021.   There is no reason to believe that the remarks will create such a degree of bias against McKellop throughout the nation that an impartial jury cannot be selected in any district, as McKellop asserts.

6

**CONCLUSION**

WHEREFORE, the Government respectfully requests that the Court deny McKellop's Motion to Dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: */s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov

 */s/ Maria Y. Fedor*
MARIA Y. FEDOR
Attorney, detailed to the
United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823
601 D Street, N.W.
Washington, DC 20530
Maria.Fedor@usdoj.gov