Case 1:21-cr-00268-CJN   Document 120   Filed 10/20/22   Page 1 of 10

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     CASE NO. 21-cr-268 (CJN) |
| v. | : |
| | : |
| JEFFREY MCKELLOP, | : |
| | : |
| Defendant. | : |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND EMERGENCY MOTION FOR RELIEF

Defendant, Jeffrey McKellop, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has alleged that the actions of the staff at the D.C. Jail's Central Treatment Facility (CTF) constitute a violation of his Eighth Amendment right to not suffer "cruel and unusual punishment." ECF No. 119. He has therefore moved for this Court to hale before it the Warden of the D.C. Jail to "answer for the conduct of his staff and to assure Defendant is removed forthwith from The Hole if he has not been already." ECF No. 119. Defendant has further moved for this Court to compel the presence of an inmate at CTF, Timothy Hale-Cusanelli,[1] for any hearing regarding this matter. ECF No. 119. McKellop's relief, if any, would be properly sought through another forum. In any event, McKellop's Eight Amendment claim lacks merit.

## BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered

---

[1] Although the defense motion refers to "Timothy Hale Cucinelli" in McKellop's Motion for Relief (ECF No. 119), this is the proper spelling of the inmate witness's name.

outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, McKellop arrived at the outer perimeter of U.S. Capitol grounds after having accompanied a friend to a political rally at the Ellipse.  A United States Army Special Forces veteran with significant combat experience, McKellop was equipped with flagpoles, a helmet, a tactical vest, protective eye wear, and a gas mask.  McKellop remained in the area despite the significant and growing police presence, the deployment of crowd control munitions, including flash bangs and OC spray, and several other clear indications that his continued presence in the area was unlawful.  At approximately 1:02 p.m., 1:12 p.m., and 1:20 p.m. on January 6, 2021, McKellop threw objects at police officers protecting the Capitol.

Beginning at approximately 2:26 p.m., McKellop pressed toward the police line near the southwest scaffolding on the west front of the Capitol, having donned his helmet and a gas mask. There, McKellop approached a line of MPD officers, including Sergeant K.M., Officer H.L., and an officer in a lieutenant's uniform.  McKellop then assaulted officers by swinging his arms downward and also tried to grab a can of riot-control spray from the lieutenant's hand.  Moments later, McKellop picked up a bottle and threw it at the line of officers.  Next, he raised his middle finger and, motioned his hand in an inward wave, as though beckoning for the officers to "come here."  The officers did not, however, leave the protection of the police line to engage him.

At 2:27 p.m., McKellop pressed forward toward the Capitol building, breaching the line of MPD and USCP officers, and reaching the bottom of the Inauguration scaffolding.  There,

McKellop grabbed at Officer J.M and pushed and struck Sergeant K.K. McKellop then assaulted Officer H.L. by shoving her to the side. All three police officers wore marked uniforms.

A few seconds after he appeared to assist an officer who fell to the ground, McKellop assaulted Captain D.A. underneath the Inauguration scaffolding by striking the captain in the face with the butt of his flagpole. This caused Captain D.A. to suffer a serious laceration and scarring. McKellop then threw the flagpole like a spear at Captain D.A. as he retreated.

At 2:28 p.m., McKellop attacked Officer H.F. from behind as the officer attempted to contain other rioters. Moments later, at approximately 2:32 p.m., McKellop threw another object at the officers protecting the Capitol. Thereafter, McKellop continued to press forward against the police line for several more minutes as the officers were overrun and retreating up onto the inaugural stage.

For this conduct, the grand jury charged McKellop with two counts of assaulting, resisting, or impeding officers using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b), and ten counts of assaulting, resisting, or impeding officers, in violation of 18 U.S.C. § 111(a)(1). Second Superseding Indictment, ECF No. 86. McKellop has also been charged with civil disorder, in violation of 18 U.S.C. § 231(a)(3); entering and remaining on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); disorderly and disruptive conduct on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); engaging in physical violence on restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and engaging in physical violence within the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F). *Id.*

A warrant for McKellop's arrest was issued on March 15, 2021, and McKellop self-surrendered with his attorney to FBI's Washington Field Office on March 17, 2021. McKellop has been in pretrial detention for the last 19 months.

While in pretrial detention, McKellop was housed at the D.C. Department of Corrections (DOC) Central Treatment Facility (CTF) in a communal non-restrictive administrative protective setting until October 5, 2022. On October 3, 2022, McKellop approached a group of uniformed and ununiformed visitors to his unit during a routine fire marshal tour of the facility. Shouting towards the group in general while repeatedly pointing his index fingers at the attendees, McKellop said, "… using slave labor to clean this all night long. My attorney's going to hear about it, I'm going to write messages about you guys. You are fucking finished." When asked if he had a mask, he responded, "I don't give a shit about COVID." After initially walking away from the group, McKellop turned around and said, "… fucking trouble." Thereafter, the encounter, which was captured on body worn camera, was reported administratively.

Following that incident, DOC staff decided on October 5, 2022 to move McKellop to administrative restrictive housing[2] at the DOC's Central Detention Facility (CDF). Before moving McKellop, DOC staff performed a housing assessment, during which they determined that McKellop was engaged in what appeared to be repeated and escalating behavior, particularly towards visitors to his communal housing unit. The DOC's program analyst team cited McKellop's unprovoked outbursts, which at times had impeded correctional officers' ability to complete their work, particularly as it relates to COVID-19 mask rules. Jail staff also pointed to a recent "documented report" by defense counsel that stated, "not knowing when he is going to go

---

[2] Although the defense motion refers to McKellop's current housing status as "the hole," while in restrictive administrative housing he is permitted two hours of out-of-cell activities per day, including indoor and outdoor recreation, as well as phone, television, and tablet access

4

to trial has taken a huge toll on McKellop psychologically."[3] Having observed what appeared to be an escalating psychological condition and, mindful of his background, DOC staff determined that McKellop posed an immediate threat to the safety and orderly operation of the facility while housed in an open communal status. In an email dated October 14, 2022, detailing the reasons for this decision, a program analyst supervisor explained that "[t]he plan is to move Resident McKellop . . . back to . . . communal status once it has been determined that his behavior has improved and he does not pose an immediate threat." The email also explained that, "since his relocation," McKellop has had "no disciplinary/behavior issues reported." (Exhibit 1) McKellop therefore appears to be on track to return to a communal non-restrictive administrative protective setting. Additionally, according to DOC's Policy and Procedure, Classification (Program Review), an inmate "may appeal the classification decision in writing to the institution Warden." (Exhibit 2)

## ARGUMENT

McKellop now alleges that his treatment by DOC constitutes a violation of his Eighth Amendment rights and that the staff at CTF overreacted to his behavior at the facility by placing him in administrative segregation. McKellop now moves for this Court to hale before it the Warden of the CTF, to "answer for the conduct of his staff and to assure Defendant is removed forthwith from "the Hole" if he has not been already." ECF No. 119. He has further moved for this Court to compel the presence of an inmate at CTF, Timothy Hale-Cusanelli, as a witness for any hearing regarding this matter. ECF No. 119.

---

[3] Although not involved in or consulted on the jail's decision to change McKellop's housing designation, government prosecutors have also observed the McKellop's erratic behavior in this case, including several outbursts before court hearings which are consistent with observations cited by DOC staff.

### A. *This Court is not the proper venue for McKellop's claim*

McKellop's pending criminal matter is not the appropriate venue to litigate what appears to be primarily administrative and/or Constitutional claims. McKellop's proper recourse would be through an administrative grievance process within the jail or through civil remedies, not through a motion in his criminal prosecution. The Defendant is in the lawful custody of the Attorney General, who has the sole discretion to determine a prisoner's place of confinement. *See* 18 U.S.C. §§ 3142(i)(2), 4042, 4086; 28 C.F.R. § 0.111. The Attorney General, in turn, has delegated the care and custody of federal pre-trial prisoners to the United States Marshal Service (USMS). *See* 28 C.F.R. § 0.111(k) (the Director of the USMS has broad authority for the "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence...."). Pursuant to 18 U.S.C. § 4086, the U.S. Attorney General, "shall provide for the safe-keeping of any person arrested or held under authority of any enactment of Congress pending commitment to an institution." Courts around the country have repeatedly held that, absent a finding of a constitutional violation, the USMS has discretion regarding housing decisions. *See, e.g.*, *United States v. Jones,* 19CR00333-MO-4, 2020 U.S.Dist. LEXIS 122631 \* (D. Oregon, July 13, 2020) (finding the Court lacks authority to order U.S.M.S. to place defendant in any particular facility); *United States v. Wattenbarger*, No. 1:06CVCR0171 OWW, 2007 WL 214565, at \*1 (E.D. Cal. Jan. 25, 2007) ("The Court defers to the United States Marshal's Service, which is charged by law with assuring the security of the Court, pretrial detainees, and all persons appearing in the Court."); *United States v. Bigham*, No. 14-CR-20676, 2016 WL 738045, at \*2 (E.D. Mich. Feb. 25, 2016) ("Defendant has provided no

authority empowering a district court to direct the U.S. Marshals Service to house a criminal defendant at any specific location."); *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994), *aff'd,* 52 F.3d 137 (7th Cir. 1995) (holding that the Marshals Service's discretion would not be limited in selecting the appropriate forum for the pretrial detention of a defendant awaiting trial); *United States v. Rosario*, No. CRIM. 90-00201-01, 1990 WL 106587, at *1 (E.D. Pa. July 23, 1990) ("Absent extraordinary circumstances, the court does not believe it should interfere with the determination of the U.S. Marshals Service and Bureau of Prisons as to where persons in custody should be housed"); *Moyers v. Shudan*, No.3:07-CV-393, 2009 WL 1813969, at *2 (E.D. Tenn. June 24, 2009) (denying the plaintiff's motion to order USMS to house him in a particular institution and noting that the "housing of federal prisoners pending court proceedings is within the discretion of the U.S. Marshals Service and this Court will not interfere with that discretion, absent extraordinary circumstances").

These cases stand for the unremarkable principle that "with the exception of cases in which the Department of Corrections hampers an inmate's ability to access counsel, discovery, or unlawfully punishes an inmate prior to conviction, the Court is not generally concerned with the day-to-day administration of detention facilities" because "courts are ill equipped to deal with the increasingly urgent problems of prison administration' and it would 'not be wise for [courts] to second-guess the expert administrators on matters on which they are better informed.'" *United States v. Medina*, 628 F.Supp. 2d 52, 55-56 (D.D.C. 2009)(quoting *Bell v. Wolfish*, 441 U.S. 520, 531 (1979)). "As a result, with regard to the everyday administration of pretrial detention facilities, the Court is merely concerned with whether a 'particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective'; if so, the detention facilities practice does not violate due process and thus should generally not concern the court." *Id.* at 55.

7

Should McKellop choose to appeal his current classification, DOC's Policy and Procedure, as discussed above, details the proper administrative avenue for McKellop to pursue at the jail for the relief he seeks.

### B. *McKellop's treatment at CTF does not amount to a constitutional violation.*

Even if this were the appropriate forum for McKellop's claim, that claim is meritless. When a detainee properly raises a claim of unconstitutional conditions of confinement in the correct forum, the claim is evaluated under the Due Process clause of the Fourteenth Amendment. *Bell*, 441 U.S. at 535. To raise such a claim, the detainee must show a restriction that is intended as punishment or that is unrelated to a legitimate governmental objective. *Id*. Here, McKellop's temporary placement in administrative segregation was based on an assessment that McKellop posed a safety risk to himself and to others. Because this is reasonably related to a legitimate governmental interest there is no due process violation.

McKellop's treatment in CTF is also not a violation of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. "Confinement . . . in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685 (1978). Confinement conditions that "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment" violate the Eighth Amendment's ban on cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Eighth Amendment cruel and unusual punishment claims require a showing that 1) the prisoner suffered "sufficiently serious" pain or injury as a result of prison officials' actions and 2) the officials had a "sufficiently culpable state of mind." *See Hunter v. D.C.*, No. 97-1152(GK), 1998 WL 1305543 at 3* (D.D.C. Feb. 12, 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 834

(1994)). A prisoner failed to satisfy the first prong of this test when he was placed in administrative segregation based on erroneous and retaliatory prison official statements suggesting that he posed a danger to himself and others. *See Hunter*, 1998 WL 1305543 at *1-*3. Similarly, a lower court's Eighth Amendment violation finding was unsupported even when double celling resulted in the prison housing 38% more inmates than its design capacity. *See Rhodes*, 452 U.S. at 348-49 ("[T]he Constitution does not mandate comfortable prisons.").

Solitary confinement and punitive isolation alone are not cruel and unusual punishment absent other factors like length of isolation, sanitation, and food adequacy. *See Hutto*, 437 U.S. at 686 ("It is perfectly clear that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual"); *see also Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir. 1987). Prisoners placed in isolation cells where they received fewer than 1000 calories a day and the prisoner population doubled the beds available were subject to cruel and unusual punishment. *See Hutto*, 437 U.S. at 683-85. Although only the remedy was an issue, the principle that the *circumstances* of punitive isolation, rather than the fact of isolation alone, establish a constitutional violation underpinned the Supreme Court's decision that the lower court's remedy was appropriate. *Id.* at 685-86. A prisoner was not subject to cruel and unusual punishment when the prison placed him in solitary confinement for twelve years after he escaped that prison because the prison provided adequate food, clothing, and sanitation. *See Sheley*, 833 F.2d at 1422, 1428-29.

McKellop has failed to put forth sufficient facts to establish either prong required for an Eight Amendment violation analysis. He has failed to establish that he suffered sufficiently serious injury or pain, and in fact has not provided any indicia of injury or pain. Further, McKellop has failed to put forth any evidence of the mental culpability of the officials placing him in

9

administrative segregation, particularly in light of the facts that led to the temporary modification of his housing placement.  Rather, he merely alleges that administrative segregation placement is a "gross overaction" to his threats to the officials on October 3, 2022.  Without more, McKellop's motion falls well short of establishing any basis to conclude that his Eighth Amendment rights have been violated.

## CONCLUSION

WHEREFORE, the Government respectfully requests that the Court deny McKellop's Motion for Emergency Relief.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:   /s/ *Maria Y. Fedor*
MARIA Y. FEDOR
Attorney, detailed to the
United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823
555 Fourth Street, N.W.
Washington, DC 20530
Maria.Fedor@usdoj.gov