**UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-268 (CJN)** |
| **v.** | : | |
| | : | |
| **JEFFREY MCKELLOP,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES' MOTIONS IN LIMINE**</u>

The United States moves in limine to preclude testimony and evidence on the following

subjects:

1.  Capitol Police camera locations;

2.  Entrapment-by-estoppel;

3.  Defense of others; and

4.  Officer inaction.

The government also renews its motions in limine regarding testimony on Secret Service

operations (ECF No. 54), improper character evidence (ECF No. 55), and self-defense (ECF No.

56). As described below, testimony on these issues would be irrelevant, prejudicial, or

misleading, and ought to be excluded.

**I.      The Court Should Preclude Testimony On Capitol Police Camera Locations**

To meet its burden of proof at trial, the government will present video evidence from a

variety of sources, including Capitol Police surveillance footage. As detailed in the Declaration of

Thomas A. DiBiase (Exhibit 1), the Capitol Police maintains an extensive closed-circuit video

system which includes cameras inside the Capitol Building, inside other buildings within the

Capitol complex, and outside on Capitol grounds. These cameras captured thousands of hours of

1

footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021.

However, U.S. Capitol Police's surveillance system also serves an important, and ongoing, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and dissemination. *See* Exhibit 1. And, to find relevant footage from the Capitol Police's surveillance system and adequately prepare for trial, one would need to use maps which display the locations of the interior and exterior cameras. The government has therefore provided the defense with maps that display these locations. However, due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.[1]

### a. The Defendant Should Be Precluded From Revealing Capitol Police Maps Of Camera Coverage

Here, the bulk of the government's video evidence will come from sources other than the Capitol Police: body-worn camera footage and videos taken by other members of the crowd. But nonetheless, to establish a violation of 18 U.S.C. § 231(a)(3), the government must prove that a civil disorder occurred. Thus, to prove the defendant's violation that statute the government will offer footage from Capitol Police cameras showing the crowd occupying restricted areas, breaching police lines, and assaulting police. A Capitol Police witness who was present in the

---

[1] These maps have been disclosed to the defendant but, pursuant to the terms of the protective order, have been designated Highly Sensitive. Moreover, these maps have been designated as "Security Information" under 2 U.S.C. § 1979 which forbids their use without the approval of the Capitol Police Board.

Command Center on January 6, 2021 is expected to explain how the Capitol Police monitored and responded to the violent mob.[2]

Evidence about the exact locations of cameras and the maps used to locate the cameras should be excluded in light of the ongoing security needs of the Capitol. The defense can probe what the Capitol Police's cameras show, and what they don't, by asking about the general location of each camera. For example, a camera positioned inside the Lower West Terrace tunnel can be described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all Capitol Police cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security. *See United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial that can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the general public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of

---

[2] The government anticipates that the defendant will not challenge this general evidence about the existence of a civil disorder.

the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

### b. The Government Requests An In Camera Proceeding To Determine The Admissibility Of Certain Evidence

If the defense believes that presentation of the exact locations of the Capitol Police cameras is necessary, or that presentation of the Capitol Police map is necessary, the government requests that the Court conduct a hearing in camera to resolve the issue. As noted, in this case, disclosure of certain information could prove detrimental to the Capitol Police's ability to protect members of Congress, and could affect our national security. Courts have found such considerations justify ex parte, in camera proceedings. *See United States v. Nixon,* 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles,* 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown,* 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same). At any such hearing, the defendant should be required to make "a proffer of great specificity" regarding the need for the evidence and the scope of his questions. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (requiring such proffer where evidence of defendant's belief might have permissible and impermissible purposes, and careless admission would raise issues under Fed. R. Evid. 403).

**II.      The Court Should Preclude Testimony On Entrapment By Estoppel**

The defendant should be prohibited from making arguments or attempting to introduce evidence that law enforcement gave permission to the defendants to enter the U.S. Capitol. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (emphasis added) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

In *Chrestman*, Chief Judge Howell rejected an entrapment by estoppel argument raised by a January 6 defendant charged with, among other things, violations of 18 U.S.C. §§ 1512(c)(2), 1752(a)(1) and (b)(1)(A) and 1752(a)(2) and (b)(1)(A). Although *Chrestman* involved an argument that former President Trump gave the defendant permission to enter the Capitol building, the reasoning in *Chrestman* applies equally to an argument that a member of law enforcement gave permission to the defendants to enter the Capitol building. As Chief Judge Howell explained, "*Cox* unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (quoting *Cox v. Louisiana*, 379 U.S. 559, 569 (1965)).

Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol"

had already been put in place by the United States Capitol Police and the Secret Service. *Id*. at 32. Another judge of this Court ruled in another January 6 case that "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022).

Even if the defendant could establish that a member of law enforcement told him that it was lawful to enter the Capitol building or allowed them to do so, his reliance on any such statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32. Moreover, the defendant's actions—for instance, or his decision to throw a flagpole at an officer—belie any argument that he actually relied on any such statement by law enforcement when they made a decision to unlawfully enter the Capitol building and grounds. Accordingly, the defendant should be prohibited from arguing that his conduct was lawful because law enforcement allegedly told them it was.

**III.   The Court Should Preclude Testimony Regarding Alleged Defense Of Others**

To establish a prima facie case of self-defense on January 6, the defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." "A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g., United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could

not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d

1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-

defense as a justification for an assault."). Here, the defendant will not be able to put forth any

evidence that he had a reasonable belief that his actions were necessary to defend himself or others

against the immediate use of unlawful force. Absent such a proffer of evidence, defendant should

be precluded from making any such arguments to the jury, whether during a jury address or on

cross-examination.

**IV.    The Court Should Preclude Testimony That Alleged Inaction By Law Enforcement
Officers Made The Defendant's Conduct On January 6, 2021 Legal**

The Court should also bar the defendant from arguing that any failure to act by law

enforcement rendered his conduct legal. The same reasoning that applied in *Chrestman* again

applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police

Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her

purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual

from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing

to prevent it. Indeed, another judge of this District expressly reached that conclusion in *Williams*

last week. *Williams*, No. 21-cr-377-BAH, at *3 ("Settled caselaw makes clear that law officer

inaction—whatever the reason for the inaction—cannot sanction unlawful conduct."). It should

apply the same principle in this case. The Court should reach the same conclusion in this case

and should exclude testimony and evidence of any alleged inaction by the police as irrelevant,

except to the extent the defendant shows that he specifically observed or was aware of the

alleged inaction by the police when he committed the offenses charged in the Indictment.

**CONCLUSION**

For these reasons, the United States requests that this court enter an order precluding testimony and evidence on the subjects above.

Respectfully submitted,

DATED: February 27, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Brendan Ballou
Brendan Ballou
DC Bar No. 241592
Special Counsel, detailed to the
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
Brendan.ballou-kelley@usdoj.gov

Ashley Akers
MO Bar No. 69609
Trial Attorney, Detailee
601 D Street NW
Washington, DC 20001
(202) 353-0521
Ashley.Akers@usdoj.gov

Shalin Nohria
United States Attorney's Office
601 D Street NW
Suite Office 6.713
Washington, DC 20001
(202) 344-5763
Shalin.nohria@usdoj.gov